1                  UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF CALIFORNIA

3                     --oOo--

4 UNITED STATES OF AMERICA,    ) Case No. 19CR00107-KJM
                         )
5        Plaintiff,     ) Sacramento, California
                         )
6    vs.               ) Wednesday,
                         ) July 10, 2019
7 BRANT DANIEL and MICHAEL     ) 2:00 p.m.
TORRES,                   )
8                          )
        Defendants.     )
9 _____)

10

11       TRANSCRIPT OF ARRAIGNMENT/INITIAL APPEARANCE
       BEFORE THE HONORABLE CAROLYN K. DELANEY
         UNITED STATES MAGISTRATE JUDGE

12

13 APPEARANCES:

For the Plaintiff:         JASON HITT, ESQ.
14                     United States Attorney's
                       Office
15                     501 I Street, Suite 10-100
                    Sacramento, California
16                        95814
                    (916) 554-2751
17

                    ROSS PEARSON, ESQ.
18                     United States Attorney's
                     Office
19                     2500 Tulare Street
                    Suite 4401
20                     Fresno, California 93721
                    (559) 497-4045
21

22

23

24
  Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

ii

1  APPEARANCES:   (Cont'd.)

2  For Defendant Daniel:          TIMOTHY E. WARRINER, ESQ.
                                  455 Capitol Mall, Suite 802
3                                 Sacramento, California 95814
                                  (916) 443-7141
4
   For Defendant Torres:          MICHAEL TORRES, PRO PER
5
                                  MICHAEL E. HANSEN, ESQ.
6                                 711 Ninth Street, Suite 100
                                  Sacramento, California 95814
7                                 (916) 438-7711

8  Court Recorder:                Jonathan Anderson
                                  United States District Court
9                                 Eastern District of California
                                  Robert T. Matsui Federal
10                                   Courthouse
                                  501 I Street, Room 4-200
11                                Sacramento, California 95814

12 Transcriber:                   Crystal Thomas
                                  Echo Reporting, Inc.
13                                2160 Fletcher Parkway
                                  Suite P
14                                El Cajon, California 92020
                                  (858) 453-7590
15

16

17

18

19

20

21

22

23

24

25

1

1    SACRAMENTO, CALIFORNIA  WEDNESDAY, JULY 10, 2019 2:00 PM

2                        --oOo--

3        (Call to order of the Court.)

4            THE CLERK:  Calling criminal matter 19-107, United

5    States versus Brant Daniel and Michael Torres on for

6    arraignment/initial appearance.

7            MR. HITT:  Good afternoon, your Honor.  Jason Hitt

8    and Ross Pearson on behalf of the United States.

9            THE COURT:  Good afternoon.

10           MR. HANSEN:  Good afternoon, your Honor.  Mike

11   Hansen on behalf of Michael Torres.  He's present in custody

12   and I'm seeking appointment.  I have completed a financial

13   affidavit, he does appear to qualify for appointed counsel.

14           THE COURT:  All right, thank you.

15           DEFENDANT TORRES:  Your Honor, I'd like to go pro

16   per though.

17           THE COURT:  All right.  Well let me address you in

18   a minute.

19           Mr. Warriner?

20           MR. WARRINER:  Yes, good afternoon, your Honor.

21   Tim Warriner, present with Mr. Daniels, who is here in

22   custody.  He has completed a financial affidavit which he's

23   going to sign and I'm seeking employment.

24           THE COURT:  All right.

25           All right, gentlemen, you each have the right to

2

1  counsel throughout these proceedings.  This includes the
2  right to retain counsel of your own choosing, or to have
3  counsel appointed for you if you are unable to afford to
4  hire your own.
5          As to Mr. Daniel, I understand that that is your
6  circumstance and I will appoint Mr. Warriner to represent
7  you.
8          Mr. Torres, I've heard your request that you wish
9  to proceed representing yourself.
10          DEFENDANT TORRES:  Yes, I do, your Honor.
11          THE COURT:  All right.  Before I can allow you to
12  do that, there are a number of questions that I must ask
13  and, let me say straight off the bat that I'm recommending
14  against that and I'm willing to appoint Mr. Hansen at no
15  cost to you; do you understand that?
16          DEFENDANT TORRES:  Yes, I do.
17          THE COURT:  All right.  Well let me go through --
18  all right.  Mr. Torres, you have the right to be represented
19  by an attorney at all stages of these proceedings and, as
20  I've said, if you are unable to hire one of your own, the
21  Court will appoint an attorney to represent you at no cost
22  to you; do you understand?
23          DEFENDANT TORRES:  Yes, I do.
24          THE COURT:  You also have a constitutional right
25  to represent yourself, but it's almost always unwise to do

3

1  so and chances are, if you represent yourself, you're going

2  to get yourself convicted; do you understand that?

3         DEFENDANT TORRES:  Yes, I do.

4         THE COURT:  Mr. Torres, have you studied law?

5         DEFENDANT TORRES:  Yes, I have.

6         THE COURT:  And have you ever represented yourself

7  or any other defendant in a criminal action?

8         DEFENDANT TORRES:  I've represented myself.

9         THE COURT:  And when did you do that, sir?

10        DEFENDANT TORRES:  Around 2003 to 2007.

11        THE COURT:  And what happened in that criminal

12 matter?

13        DEFENDANT TORRES:  It went to trial and I got

14 found guilty.

15        THE COURT:  You were found guilty?

16        DEFENDANT TORRES:  Yes.

17        THE COURT:  And what sentence are you currently

18 serving?

19        DEFENDANT TORRES:  Six life sentences.

20        THE COURT:  It appears to me that representing

21 yourself didn't turn out so well for you, so why do you want

22 to represent yourself now?

23        DEFENDANT TORRES:  Because I'd like to exercise my

24 right to do so.

25        THE COURT:  All right.  You understand that if

4

1   you're found guilty in this case, you face a sentence of a

2   minimum of ten years to life in prison, a fine of

3   $10,000,000 and supervised release of five years to life; do

4   you understand that?

5           DEFENDANT TORRES:  Yes, I do.

6           THE COURT:  And that most likely would be -- well,

7   I guess if you're six life sentences, it might be concurrent

8   but it could well be consecutive to any sentence you're

9   receiving; do you understand that?

10          DEFENDANT TORRES:  Yes, I do.  All of my life

11  sentences are consecutive.

12          THE COURT:  All right.  Are you familiar with the

13  Federal Rules of Evidence?

14          DEFENDANT TORRES:  Yes, I am.

15          THE COURT:  And was your underlying criminal case

16  that you represented yourself in, was that a state case or a

17  federal case?

18          DEFENDANT TORRES:  It was state.

19          THE COURT:  All right.  So what have you done to

20  familiarize yourself with the Federal Rules of Evidence?

21          DEFENDANT TORRES:  I've ridden (sic) books on it.

22          THE COURT:  And what books have you read?

23          DEFENDANT TORRES:  Federal Rules of Criminal

24  Procedure.

25          THE COURT:  You've read that book?

*Echo Reporting, Inc.*

5

1          DEFENDANT TORRES:  Yes.

2          THE COURT:  Okay, that's the book on how things

3  work in Federal Court --

4          DEFENDANT TORRES:  Yes.

5          THE COURT:  -- but have you read the Federal Rules

6  of Evidence?

7          DEFENDANT TORRES:  Not yet.

8          THE COURT:  All right.  Do you understand that if

9  you represent yourself, the judge will hold you to the same

10 standard as an appointed lawyer?

11         DEFENDANT TORRES:  Yes.

12         THE COURT:  That is you'll be expected to

13 understand what evidence can be admitted and what evidence

14 can't be admitted; do you understand that?

15         DEFENDANT TORRES:  Yes, I do.

16         THE COURT:  You've told me that you have read the

17 Federal Rules of Criminal Procedure, do you understand then

18 how a criminal case must be tried in Federal Court?

19         DEFENDANT TORRES:  Somewhat, yes.

20         THE COURT:  Mr. Hansen can certainly advise you on

21 those things if you'd allow me to appoint him to represent

22 you; would you allow me to do that?

23         DEFENDANT TORRES:  Represent me, no.  I would like

24 to represent myself.

25         THE COURT:  All right.  AS I've already advised

6

1  you, in my opinion it would be far better to have your case

2  defended by a trained and experienced attorney, which Mr.

3  Hansen is.  He's appeared in this court many many times; do

4  you understand that?

5          DEFENDANT TORRES:  Yes.

6          THE COURT:  How far did you go in school?

7          DEFENDANT TORRES:  I graduated.

8          THE COURT:  Graduated from what?

9          DEFENDANT TORRES:  High school.

10         THE COURT:  All right.  And when was that?

11         DEFENDANT TORRES:  In '83.

12         THE COURT:  1983.  And have you attended any

13 college classes?

14         DEFENDANT TORRES:  I just started.

15         THE COURT:  When did you start?

16         DEFENDANT TORRES:  I submitted the application

17 last month.

18         THE COURT:  All right.  So have you actually

19 attended any classes yet?

20         DEFENDANT TORRES:  Not yet.  No.

21         THE COURT:  You understand that the prosecution

22 will be represented by skilled and trained professional

23 attorneys who will give you no breaks because you're

24 inexperienced; do you understand that?

25         DEFENDANT TORRES:  Yes, I do.

7

1          THE COURT:  Do you understand that if you

2  misbehave or become disruptive, if you are allowed to

3  represent yourself, that right could be revoked; do you

4  understand that?

5          DEFENDANT TORRES:  Yes, I do.

6          THE COURT:  Now one option that I will give you,

7  Mr. Torres, is to appoint Mr. Hansen as, essentially, your

8  confidante, your assistant, your -- to provide standby

9  assistance; would you accept that?

10          DEFENDANT TORRES:  Yes, I would.

11          THE COURT:  You would.  All right.

12          Mr. Hansen, would you be willing to accept such an

13  appointment?

14          MR. HANSEN:  Yes.

15          THE COURT:  All right.  You understand, Mr.

16  Torres, that while Mr. Hansen will be advising you that if

17  you are allowed to represent yourself, whatever happens as a

18  result of your self-representation, if you get yourself

19  convicted, which it seems to me is likely, you will not be

20  able to complain on appeal that you made a bad decision, or

21  that your self-representation was inadequate; do you

22  understand that?

23          DEFENDANT TORRES:  Yes, I do.

24          THE COURT:  Do you understand everything that I've

25  said here today?

8

1          DEFENDANT TORRES:  Yes, I have.

2          THE COURT:  Do you have any questions of that?

3          DEFENDANT TORRES:  Not at this time.

4          THE COURT:  All right.  In light of all of the

5    difficulties of self-representation that I've pointed out

6    for you, and in light of the penalties if your convicted, is

7    it still your desire to represent yourself?

8          DEFENDANT TORRES:  Yes, it is.

9          THE COURT:  Do you give up your right then to be

10   represented by an attorney?

11         DEFENDANT TORRES:  Yes, I do.

12         THE COURT:  Is this decision entirely voluntary on

13   your part?

14         DEFENDANT TORRES:  Yes, it is.

15         THE COURT:  Are you currently under the influence

16   of any medication?

17         DEFENDANT TORRES:  No, I am not.

18         THE COURT:  Are you currently under the influence

19   of alcohol or any other drugs?

20         DEFENDANT TORRES:  No, I am not.

21         THE COURT:  Do you understand what's happening

22   here today?

23         DEFENDANT TORRES:  Yes, I do.

24         THE COURT:  All right.  Is there anything you wish

25   me to inquire about, Mr. Hitt?

9

1          MR. HITT:  Your Honor, the only other concern I

2  would potentially raise with Mr. Torres is the discovery in

3  this case is going to go through a coordinator and will be

4  somewhat difficult in his pro se condition to review and

5  access because much of it will be digital.  There are

6  wiretap calls.  There are a lot of materials that I think

7  Mr. Hansen would be uniquely able to help Mr. Torres prepare

8  with.  And if he's thinking that a discovery coordinator

9  will send that directly to Folsom Prison, where he's being

10 kept, that is not likely to happen and it may be even more

11 difficult than the normal self-representation case.  That

12 would be the only additional advisement in this particular

13 case.

14         THE COURT:  Do you understand that, Mr. Torres?

15         DEFENDANT TORRES:  Yes, I do.  It can be

16 transcribed, can't it?

17         THE COURT:  Not at the Government's expense.

18         DEFENDANT TORRES:  Then --

19         THE COURT:  They're not going to transcribe all of

20 the calls.  There may be certain calls that they transcribe,

21 maybe some of them are -- have been transcribed preliminary.

22 But I can't represent to you that every single call is going

23 to be completely transcribed.  Much of the evidence will be

24 in digital format and I don't know that you'll be able to

25 review it at Folsom State Prison; do you understand that?

10

1        DEFENDANT TORRES:  Yes, but I get a recorder to

2   listen to it.

3        THE COURT:  Not necessarily.  I don't know what

4   Folsom State Prison is going to allow you to have.  There

5   are institutional security considerations that I don't have

6   any control over.

7        DEFENDANT TORRES:  What kind of digital machine

8   would I need?

9        THE COURT:  Mr. Hitt?

10       MR. HITT:  Well there's -- there's lots of

11  different types.  So there would be, for example, the review

12  of the digital Cellibrite report from a dump of a cell

13  phone.  That would require a fairly high powered updated

14  laptop.  Digital audio files would require a laptop capable

15  of playing wav files.  There are hundreds, if not thousands

16  of pages, of toll records that were produced by various

17  phone companies in digital format.  So it would be like an

18  Excel spreadsheet that goes on for thousands of pages, which

19  would be require a computer.  And they're not going to be

20  produced in hard copy.  Everything will be done through a

21  lawyer who is a national expert out of Seattle.  He'll be

22  coordinating with lawyers here in Sacramento to make sure

23  that everyone gets it in a format that they can use.

24       And the Court's response is exactly right.  There

25  will be very few transcripts, if any, provided of the calls

11

1  unless and until we're set for trial, because of the

2  enormous expense.  I think in the affidavit we drop a

3  footnote that indicates -- our estimate is we were on

4  wiretaps for 91 days and I think there's over 1800 pertinent

5  calls that we believe are relevant under Rule16.  There are

6  very few transcripts made of those calls.

7          THE COURT:  Mr. Torres, things have changed since

8  you've been incarcerated, in terms of how discovery is

9  provided and how the Government receives discovery.  It is

10  almost all electronic now, and because of your incarceration

11  in Folsom State Prison, or frankly in any prison, it

12  wouldn't matter if it were a federal prison, state prison,

13  local jail, they're simply not going to allow you to have

14  unfettered access to the electronic equipment that is

15  required to look at this type of discovery.  That's why I

16  think you're making a terrible mistake in trying to

17  represent yourself in this matter.

18          If Mr. Hansen represents you, at least he can get

19  all of the discovery, he can sort through it, and then he

20  can meet with you to go through in a format that you're able

21  to see, what discovery applies to you; do you understand

22  that?

23          MR. HANSEN:  May we have a moment, please your

24  Honor?

25          THE COURT:  Sure.

12

1          Am I correct that Mr. Torres is not charged in

2  Count 1?

3          MR. HITT:  Yes, your Honor.

4          THE COURT:  Okay, thank you.

5          MR. HANSEN:  Thank you, your Honor.

6          THE COURT:  All right.  So Mr. Torres, what do you

7  think?

8          DEFENDANT TORRES:  I would still like to go pro

9  per.

10          THE COURT:  All right.

11          So let me go through the arraignment, now that

12  we've partially resolved that.

13          You each have the right to remain silent in these

14  proceedings and you are not required to make any statement

15  here today.  Anything you do say today may be used against

16  you.

17          Mr. Torres, have you received a copy of the

18  indictment or had it reviewed with you?

19          DEFENDANT TORRES:  Just right now.

20          THE COURT:  Do you -- excuse me --

21          DEFENDANT TORRES:  And it's been reviewed with me

22  with the attorney.

23          THE COURT:  Do you waive a full reading?

24          DEFENDANT TORRES:  Yes.

25          THE COURT:  All right.  Mr. Warriner, on behalf of

13

1 Mr. Daniel, have you received a copy of the indictment and

2 reviewed it with him, and do you waive a full reading?

3          MR. WARRINER:  Yes, I do, your Honor.

4          THE COURT:  All right.  Mr. Daniel, let's see --

5 did I already appoint you Mr. Warriner?  I got sidetracked

6 with Mr. Torres.  If I haven't, I appoint you to represent

7 Mr. Daniel.

8          Mr. Daniel, you've been charged in this indictment

9 with conspiracy to participate in a racketeer-influenced

10 corrupt organization, in violation of Title 18 US Code

11 Section 1962(d).  If convicted of this charge, you face

12 maximum penalties of life in prison, a term of supervised

13 release of three years, a fine of $250,000 and a special

14 assessment of $100.

15          Mr. Torres, as I've already indicated to you,

16 you've been charged in this case with a conspiracy to

17 distribute at least 50 grams of methamphetamine, actual, and

18 at least one kilogram of heroin, all in violation of Title

19 21, US Code Sections 846 and 841(a)1 with possible penalties

20 of at least ten years in prison and up to life in prison, a

21 fine of $10,000,000, supervised release of at least five

22 years and up to life, and a $100 special assessment.

23          As to both of you, the indictment also contains a

24 forfeiture allegation, such as the Government seeks --

25 forfeits certain properties listed in the indictment.

14

1        Mr. Warriner, does your client wish to enter a

2 plea of not guilty and demand for jury trial?

3        MR. WARRINER:  Yes, your Honor.

4        THE COURT:  All right.  That will be entered onto

5 the record.

6        Mr. Torres, I'm giving you one last chance to

7 accept my offer of appointing Mr. Hansen to represent you.

8 Will you accept that offer?

9        DEFENDANT TORRES:  Not at this time.  No, your

10 Honor.

11        THE COURT:  All right.  You understand that should

12 you change your mind at anytime, we will appoint Mr. Hansen

13 to represent you completely, and in fact, you may well have

14 to go through this colloquy again with Judge Mueller.  I'll

15 be informing her that you have exercised your right to self

16 representation.

17        I do find that you have knowingly and voluntarily

18 waived your right to have an attorney appointed on your

19 behalf and that you are exercising your constitutional right

20 to represent yourself against my recommendation, but I am

21 appointing Mr. Hansen to represent you as standby counsel

22 for you to consult with and assist.

23        Knowing the charge against you, Mr. Torres, do you

24 wish to enter a plea of not guilty and demand for jury

25 trial?

15

1          DEFENDANT TORRES:  Yes, I do.

2          THE COURT:  All right.  I assume that the matter

3  of detention is moot in that they're both detained; is that

4  right, Mr. Hitt?

5          MR. HITT:  Your Honor, just for the record, we

6  would make the motion, but I believe that would be the case

7  given the circumstances of each Defendants' life sentences.

8          THE COURT:  All right.  Mr. Warriner, do you have

9  anything to say, as to detention?

10          MR. WARRINER:  He's in CDCR custody.  I'll submit.

11          THE COURT:  All right.  So I think for record

12  keeping purposes then, I will still make the finding that

13  Mr. Daniel has not overcome the presumption that he is a

14  danger to the community and is unlikely to appear for future

15  court proceedings if he were released and therefore I'll

16  order him detained on that basis and remanded to the custody

17  of the Marshals.  Based on the nature of the charges and his

18  current status, I'm going to order full shackling at all

19  times.

20          In terms of a status conference as to Mr. Daniel,

21  I understand the other defendants' have been set for August

22  26, 2019 at 9:00 a.m.  Do you wish that date as well, Mr.

23  Warriner?

24          MR. WARRINER:  Yes, your Honor.

25          THE COURT:  And do you agree that based on the

16

1 voluminous discovery in this matter that the ends of justice

2 are served by the granting of an exclusion of time under the

3 Speedy Trial Act and that such ends of justice outweigh the

4 best interests of the public and the Defendant in a Speedy

5 Trial?

6            MR. WARRINER:  Yes, your Honor.

7            THE COURT:  All right.  Mr. Hitt, any further

8 record on that point?

9            MR. HITT:  No, your Honor.  I would incorporated

10 my earlier comments when we were discussing the discovery

11 with Mr. Torres as to the volume and nature of it.  I'm

12 currently in the process of redacting the first batch of

13 digital discovery and it appears to be somewhere in the

14 ballpark of 20,000 items and there's much more of that to

15 come, in addition to the lengthy volume of the wiretap

16 materials that I referenced.

17            THE COURT:  All right, thank you.  I will make

18 that finding then and exclude time from today's date until

19 August 26th, 2019 under the Speedy Trial Act under Local

20 Code (t)4, based on the stipulation of the parties.

21            Now let's take you up, Mr. Torres.  The Government

22 is also moving for detention as it relates to Mr. Torres,

23 for the same reasons?

24            MR. HITT:  Yes, your Honor.

25            THE COURT:  Mr. Torres, is there anything you want

17

1  to say to me about that?

2            DEFENDANT TORRES:  No.

3            THE COURT:  All right.  Based on the information

4  currently before me, I find that there are no conditions or

5  combinations of conditions that can reasonably assure the

6  Defendant's appearance at future court proceedings, or the

7  safety of the community.  I order you detained on both basis

8  and remanded to the custody of the Marshals.  Again, based

9  on the nature of the charges in the allegations, I do find

10 that full shackling is appropriate when in Court, and

11 therefore that will be the order.

12            As to the status conference that is currently set,

13 Mr. Torres, the other Defendants are set for August 26th,

14 2019, is that date convenient to you as well?

15            DEFENDANT TORRES:  Yes, it is.

16            THE COURT:  All right.  And do the parties agree

17 that the ends of justice are served by the granting of an

18 exclusion of time under the Speedy Trial Act and that such

19 ends of justice outweigh the best interest of the public and

20 the Defendant in a Speedy Trial?

21            DEFENDANT TORRES:  Yes.

22            MR. HANSEN:  Yes, your Honor.

23            THE COURT:  You do, Mr. Torres?

24            DEFENDANT TORRES:  Yes.

25            THE COURT:  All right.  I will make that finding

18

1   of time between today's date and August 26th, 2019 at 9:00

2   a.m. will be excluded from the Speedy Trial Act based on the

3   stipulation of the parties and the findings that I've made

4   and Mr. Hitt has represented regarding discovery.

5           Is there anything further today, Mr. Hitt or Mr.

6   Pearson?

7           MR. HITT:  No, your Honor.  Thank you.

8           THE COURT:  Anything further, Mr. Torres?

9           DEFENDANT TORRES:  No, your Honor.

10          THE COURT:  Mr. Hansen?

11          MR. HANSEN:  No.

12          THE COURT:  All right.  Mr. Warriner?

13          MR. WARRINER:  Just one issue.  The Court issued a

14  shackling order.

15          THE COURT:  Yes.

16          MR. WARRINER:  I'm informed that the shackles he

17  has on are actually CDCR shackles.  They're very confining.

18  They cut into his hands.  I don't know if we're prepared to

19  address it right now, but if the Court issues an order maybe

20  without prejudice, we could bring this up --

21          THE COURT:  That would be fine.

22          MR. WARRINER:  -- at a later time?

23          THE COURT:  Yes.

24          MR. WARRINER:  It could be problematic later on.

25          THE COURT:  All right.  Well at this point, I'm

19

1 going to leave the order as is.

2          MR. WARRINER:  Okay.

3          THE COURT:  And then if it becomes an issue at a

4 later point -- I think they're just bringing him -- them in

5 and out for court proceedings; is that right?

6          MR. WARRINER:  Yes, that's my understanding.

7          MR. TORRES:  I move for the same motion, your

8 Honor.

9          THE COURT:  Okay.  Thank you.  I'll take it under

10 submission.  You can raise it at another day.

11          Anything further?

12          MR. WARRINER:  Not right now, your Honor.  Thank

13 you.

14          THE COURT:  Anything further, Mr. Hitt?

15          MR. HITT:  No, your Honor.  Thank you.

16          THE COURT:  Okay.  Thank you.

17      (Proceedings concluded.)

18

19

20

21

22

23

24

25

20

1           I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Crystal Thomas                8/10/19
  Transcriber, AAERT CERT *654    Date

6

7 FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8

9 /s/L.L. Francisco
  L.L. Francisco, President
10 Echo Reporting, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25