UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2: 19-CR-00107-KJM |
| Plaintiff, | |
| v. | TENTATIVE RULING & ORDER |
| RONALD YANDELL, et al., | |
| Defendants. | |

The court heard argument on October 23, 2019, on defendants' motion challenging their conditions of pretrial confinement, ECF No. 189. Broadly, the government in this case charges an alleged drug distribution conspiracy by members of the Aryan Brotherhood incarcerated in the California prison system. The government also charges certain defendants committed murder in furtherance of the conspiracy. Indictment, ECF No. 25. These defendants are Jason Corbett, Ronald Yandell, Daniel Troxell, William Sylvester, Travis Burhop, Donald Mazza, Pat Brady, Samuel Keeton, Michael Torres and Justin Petty, and are the movants here. Five of these defendants potentially face the death penalty: Yandell, Sylvester, Daniel, Brady, and Corbett.

Defendants argue the conditions of their confinement at the Sacramento County Jail deny them their constitutional rights to effective assistance of counsel and due process, in that they are being denied adequate access to meetings with their attorneys and review of discovery.

Defendant Brant Daniel joins in the motion, alleging similar violations of his rights at California State Prison—Sacramento. ECF No. 194. The government argued, and defendants conceded, that certain matters they raise here are conditions of confinement not susceptible of resolution by this court at this time; rather they must be raised after exhaustion of administrative remedies in a *Bivens* action. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). An example of one of these conditions is defendant Daniel's housing in administrative segregation. Daniel Joinder, ECF No. 194 at 3. After discussion with the court, the parties agreed at hearing the court could address conditions of defendants' confinement to the extent they interfere with the right to effective assistance of counsel. To facilitate the court's addressing these conditions, the parties agreed to meet and confer and, in order to clarify the record and narrow disputes to the extent possible, file a joint statement addressing each alleged barrier to effective assistance. At hearing, the court indicated it would tentatively identify for the parties the standards the court currently has identified as applicable to conditions of defendants' confinement to ensure effective assistance of counsel and related pretrial rights, which it does below. To the extent any party disagrees with these standards, that party shall register and explain its disagreement in the joint statement.

### A. Attorney Visitation and Discovery Review

The defendants assert they can only meet with their attorneys in a single visitation booth wide enough only for a single person on each side. Mot. at 2. The government disputes this characterization. Opp'n at 12, ECF No. 215. Defense attorneys say they can only run a laptop in the booth for the duration of its battery life; there is no electrical outlet in the booth. Mot. at 2-3. Because discovery includes extensive digital information, defendants propose the jail either rewire the booth to allow longer periods of time for review of discovery, or provide the defendants with approved devices so that they can review discovery themselves in their cells. Mot. at 8-9.

"The right to effective assistance of counsel is […] the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656 (1984). "The core of this right has historically been, and

remains today, 'the opportunity for a defendant to consult with an attorney and have him investigate the case and prepare a defense for trial.'" *Kansas v. Ventris,* 556 U.S. 586, 590 (2009) (citing *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)). "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983) (citation omitted). The Sixth Amendment does not guarantee a meaningful relationship with counsel. *Id.* at 13–14.

As particularly relevant here, the Supreme Court has "consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding." *Strickland v. Washington*, 466 U.S. 668, 704 (1984) (Brennan, J., concurring).

The caselaw provides no per se rules delimiting what physical attributes of visitation satisfy or violate the right to assistance of counsel for an incarcerated defendant. However, given that five defendants may face death charges with the corresponding need for careful procedural safeguarding of their right to counsel, their confinement must meet the following standards:

First, attorneys must be allowed to schedule visits with their clients of sufficient length to review discovery and discuss its implications with counsel, and if necessary, an investigator. The prosecution's case undoubtedly will rely on extensive evidence; to subject that case to "the crucible of meaningful adversarial testing," discoverable evidence must be subject to meaningful investigation, including input from defendants. Attorneys may not be prevented from meaningfully consulting with their clients at the Jail or Prison; they must be allowed access.

Second, defendants must be allowed to make unmonitored phone calls to counsel during normal business hours. *Weatherford v. Bursey,* 429 U.S. 545, 554 n.4 (1977).

This court can find no authority to support a constitutional right for the defendants to physically possess discovery materials. Thus, for example, the court does not anticipate requiring that electronic devices be given to the defendants to review discovery in their cells.

/////

Although the Ninth Circuit has identified a Fourteenth Amendment right to contact visits, *see Ching v. Lewis*, 895 F.2d 608, 610 (9th Cir. 1990), a legitimate penological policy restricting that right appears valid under *Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, the court does not anticipate requiring that contact visits be allowed at this time.

At this time the court also does not anticipate ordering rewiring of visiting booths or the provision of internet access. No case law exists suggesting either is constitutionally required for effective assistance of counsel.

### B. Confidential Communications

The defendants assert the visiting booths at the Sacramento County Jail are not soundproof and thus not confidential. Mot. at 2. They claim deputies have been seen reading defendants' legal documents. Mot. at 5. Defendant Daniel's joinder describes attorney visiting booths at CSP—Sacramento as open to guards who sit ten to fifteen feet away, within earshot. Joinder at 2, ECF No. 194.

The Sixth Amendment protects the right of an inmate to communicate confidentially with his attorney. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1195–96 (9th Cir. 2017) (reviewing case law requiring prisoners to be present for prison officials opening of their legal mail to ensure it is not read.); *see, e.g., Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) ("A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense. In American criminal law, the right to privately confer with counsel is nearly sacrosanct.") (holding that a single instance of a prison guard reading legal mail stated a claim for Sixth Amendment violation). The right of confidential communication with attorneys is also protected by the First Amendment to prevent a "chilling effect" on attorney-client communications. *Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1208 (9th Cir. 2017). As noted above, inmates have a similar right to unmonitored phone calls with their attorneys. *Weatherford v. Bursey,* 429 U.S. at 554 n.4.

/////
/////
/////

Accordingly, attorney-client confidentiality must meet the following standards:

- In-person visits with attorneys must be conducted in a way that the content of conversations is not audible outside the visitation booth. This includes statements by both parties to the conversation.
- Phone calls to attorneys must not be recorded.
- Defendants must be allowed to make phone calls to their attorneys in a way that prevents third parties from overhearing them.
- Legal mail must be opened and inspected in front of the defendants, but not read for content, as provided by *Nordstrom,* 762 F.3d at 910. If legal papers must be inspected for contraband, the inspection must happen in the presence of the defendant to allow verification that the papers are not being read for content.

Again, the above are standards the court has tentatively identified to facilitate the process of fairly and transparently resolving defendants' motion. The court may actually apply different standards in its final order, after hearing from the parties again. The parties' joint statement is due on or before December 6, 2019. The joint statement shall contain separate sections addressing conditions challenged at Sacramento County Jail and those at California State Prison–Sacramento.

IT IS SO ORDERED.

DATED: October 30, 2019.

_____
UNITED STATES DISTRICT JUDGE