John R. Manning, SBN 220874
Attorney at Law
1111 H Street, # 204
Sacramento, CA 95814
Telephone:  916-444-3994
Facsimile:   916-447-0931
Email:  jmanninglaw@yahoo.com

Marcia A. Morrissey, SBN 66921
11400 W. Olympic Blvd., Suite 1500
Los Angeles, CA 90064
Telephone:  310-399-3259
Facsimile:   310-392-9029
Email:  morrisseyma@aol.com

Attorneys for Defendant
PATRICK BRADY

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITES STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　vs.<br>PATRICK BRADY,<br>　　　　　　　　Defendant. | CASE NO. 2-19-CR-00107-KJM<br><br>**PATRICK BRADY'S MOTION FOR AUTHORIZATION TO USE LAPTOP COMPUTER TO REVIEW DISCOVERY; REQUEST FOR A HEARING**<br><br>Date:   October 21, 2021<br>Time:   2:00 p.m.<br>Court:  Hon. Kendall J. Newman |

　　　　Defendant Patrick Brady, by his counsel, John R. Manning and Marcia A. Morrissey, move the Court to authorize him to possess and use a laptop computer to review discovery during the pendency of this case.  This motion is made because the ability to review discovery on a computer is necessary to effectuate the right to counsel, to participate in the preparation of the defense and to ensure the required heightened degree of reliability in fact-finding in a capital case, as guaranteed by the Fifth, Sixth and Fourteenth Amendments.

**PATRICK BRADY'S MOTION FOR AUTHORIZATION TO USE LAPTOP
COMPUTER TO REVIEW DISCOVERY; REQUEST FOR A HEARING**

1

## I. Statement of Relevant Facts

On June 14, 2019, the defendants were indicted on allegations that between October 2011 and June 2016, members of the Aryan Brotherhood and associates thereof conspired to engage in drug distribution and other racketeering activity, including murder, in the California prison system. The indictment includes eleven special sentencing factors; five allege murders and three allege conspiracy to commit murder. (ECF 25.) Ronald Yandell, William Sylvester, Brant Daniel, Pat Brady and Jason Corbett are charged with crimes for which the death penalty may be imposed and each of them has been appointed Learned Counsel (18 U.S.C. § 3005).

On September 11, 2019, the defendants filed a Motion re: Conditions of Pretrial Confinement (ECF 189), which was opposed by the government (ECF 215). The Court heard argument on the motion on October 23, 2019. Thereafter, a tentative ruling was filed that directed the parties to (1) meet and confer to narrow the issues and (2) file a joint statement identifying matters in dispute. (ECF 274.) On December 6, 2019, a Joint Statement of the Parties Regarding Conditions of Confinement was filed. (ECF 320.) Among the issues in dispute was "Discovery Review." *Id.,* at 3. Counsel for the accused voiced concern about their clients' ability to review thousands of pages of discovery, listen to 7,775 minutes (approximately 130 hours) of audio recordings, and view the photographs and videos provided by the government. The defense proposed that discovery be loaded onto electronic tablets designed for use in institutional settings so that the accused can review it while in custody. *Id.,* at 3-4. The government's position was that the defendants do not have a constitutional right to physically possess discovery materials. *Id.,* at 4 (citing ECF 274, at 3). The government also urged that because Booth Q has a USB port, the defendants are able to plug headphones into a USB port in Booth Q and listen to audio that their attorneys play to them.[1] *Id.,* at 5. Finally, the government disputed the defense statement that

---

[1] Booth Q has since been converted into a social visit; it is not available for confidential visits.

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**2**

there are 1,800 hours of audio recordings; it described the audio material as consisting of "'more than 1,856 pertinent conversations.'" *Id.,* at 5 (quoting *United States v. Yandell, et al.,* Case No. 2:19-MJ-0080-CDK, Docket No. 1, at 23 n. 3).

On July 8, 2020, this Court issued an Order which states, in relevant part, that there is "no authority providing that [the Sixth Amendment right to reasonable access to law books, witnesses, or other tools to prepare a defense] extends to the physical possession of discovery by custodial defendants who are represented by counsel" and that the "right to 'other tools to prepare a defense,' including discovery, 'must be balanced against the legitimate security needs or resource constraints of the prison.'" (ECF 510 at 12 (quoting *United States v. Sarno*, 73 F. 3d 1470, 1491 (9th Cir. 1995)). The Court subsequently ruled that the failure of the Sacramento Jail and CSP-Sacramento to "provide the defendants internet-equipped tablets, [ ] is not a constitutional injury necessitating court intervention." *Id.,* at 13.]

## II.     The Court Has the Authority to Order the Provision of Computers for Discovery Review

This Court has previously recognized it has wide discretion to make appropriate orders concerning "conditions of confinement that impinge [a defendant's] ability to consult with counsel or exercise other trial rights." (ECF 510, at 7). The Sixth Amendment right to assistance of counsel cannot be limited to participation in a trial and "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton,* 474 U.S. 159, 170 (1985). *See also United States v. Salerno,* 481 U.S. 739, 746 (1987); *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Counsel respectfully submits that the Court should exercise its discretion to ameliorate the conditions of confinement that impinge on Mr. Brady's ability to consult with counsel and fully exercise his rights under the Fifth, Sixth and Eighth Amendments.

Here, the inability of the accused to review and understand the content of the discovery and to

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**3**

consult with counsel regarding both discovery and investigation due to (1) the sheer volume of discovery, (2) the fact that discovery consists not only of paper, but also video and audio recordings, (3) the effect of the COVID pandemic on the ability of counsel to visit with their clients and let them listen to the discovery, view videos and photographs, etc., and (4) the cost to the Court of defense team members having to be present when a client reads, listens to or watches discovery could be largely eliminated by providing Mr. Brady access to the discovery on a laptop computer.

**III. The Provision of Electronic Devices Containing Discovery to Federal Pretrial Detainees Is Widely Accepted by District Courts**

On October 25, 2016, the Joint Electronic Technology Working Group ("JETWG") published a paper entitled *Guidance for the Provision of ESI[2] to Detainees*.[3] Exhibit A.  This report states that "provision of e-discovery to pretrial detainees – inevitable in any event – will result in greater efficiency, reduced delay, and cost savings for the entire criminal justice system." *Id.,* at 1.  It analyzed identified concerns involved in providing ESI to detainees raised by the defense, budgeting issues voiced by CJA and FDO, as well as the views of the Court, detention facilities, the U.S. Marshals Service and the Government.  *Id.,* at 2-4.  Finally, the report discussed the "overwhelming number of potential file formats" for discovery (*id.,* at 9) and commercial viewers and players that can support those file formats (*ibid.*).  *See also* Technical Appendices to the report, discussing software, laptop configuration suggestions, BOP specifications, common file types and review applications and supported file formats.  *Id.,* at 11-19.  Since the publication of the JETWG

---

[2]   "ESI" refers to electronically stored information.

[3]   Members of the JETWG subcommittee who authored this report include United States Magistrate Judges Laurel Beeler (N.D. Cal.) and Jonathan W. Feldman (W.D.N.Y.); the Administrative Office of the U.S. Courts; Defender Services Office; Bureau of Prisons Assistant General Counsels Corrine Nastro and Monya Phillip; U.S. Marshals Service Prisoner Operations Division Chief Heather Lowry;  Associate Deputy Attorney General and National Criminal Discovery Coordinator Andrew Goldsmith; Assistant U.S. Attorneys John Haried; John McEnany (S.D.N.Y), Fred Sheppard (S.D. Cal.), David Joyce (D. Me.) and the U.S. Attorney's Office Litigation Support Manager Craig Bowman (W.D.N.Y.).

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**4**

report, courts around this country have issued orders providing pretrial detainees with access to discovery in digital form, in both capital and non-capital cases. *See, e.g.,* Exhibit B (allowing access to discovery through an electronic device issued in the Middle District of Pennsylvania); Exhibit C (same); Exhibit D (order granting access to ESI discovery in the District of Kansas); Exhibit E (same); Exhibit F (order granting motion to possess and resume use of Microsoft-enabled laptop computer issued by Military Commissions Trial Judiciary, Guantanamo Bay, Cuba); Exhibit G (order re access to electronic discovery at Metropolitan Detention Center issued in the Southern District of New York); Exhibit H (order granting defendants' motion to allow personal laptop computer/tablet while in pretrial detention issued in the District of New Mexico); Exhibit I (protective order directing the government to provide each defendant with a password protected tablet, laptop computer or its substantial equivalent issued in District of New Mexico); Exhibit J (order permitting use of digital tablet by defendant issued in the Northern District of California); Exhibit K (procedures for provision of computers to pretrial detainees adopted by the Northern District of California); Exhibit L (order granting motion for computer issued in the District of Hawaii).[4]

### III. The Present Restrictions on Defendants' Ability to Review Discovery

#### A. The Voluminous and Wide-Ranging Nature of the Discovery

There were discovery productions by the government on August 19, 2019, and November 13, 2019. The discovery produced was substantial, and included 35,274 pages of PDF documents, over 143 hours of audio recordings, over thirteen (13) hours of video footage, 6,178 location data coordinates, data from wiretap interceptions from three target telephones and forensic reports for eight (8) mobile devices.

---

[4] This is by no means an exhaustive list of cases in which orders granting federal detainees access to ESI have been granted.

*(cont'd)*

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**5**

On July 25, 2021, the court-appointed Coordinating Discovery Attorney received the third production of discovery. The third production of discovery is substantial; the index of that production is 596 pages in length.

A fourth production of discovery is expected to be provided to the defense under a protective order. It is unknown at this point what the volume of this production will be, but it is expected to be sizeable.

### B. The Present Restrictions on the Ability of the Accused to Review Discovery

The only way an accused who is in custody can review discovery is at a jailhouse meeting with an attorney, paralegal or investigator who is equipped with a laptop computer loaded with discovery; the defendants are not permitted t a laptop to read, listen to or view discovery out of the presence of a member of the defense team

Given the volume of the discovery, it is impractical and unduly expensive, from a CJA standpoint, for members of the defense team to take the discovery to the jail or prison and read the contents of each page, line-by-line, to his or her client. It is also expensive and impractical for counsel for each defendant to generate a copy of discovery that can be reproduced in this manner and to provide a copy of such discovery to his or her client. It is impractical and quite burdensome to task the Sacramento jail with housing, securing and managing the defendants' access to the veritable storage unit worth of paper that would result from providing each defendant with a copy of printable discovery. The audio and video recordings in the discovery in this case cannot be reduced to paper form and require an electronic device to hear and see. Requiring members of the defense teams to take audio discovery to the jail so that their client can listen to each recording will entail a significant amount of time and translate into a substantial expenditure of CJA funds. As

---

(cont'd from previous page)

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**6**

for the video recordings, the present configuration of Booth R, which is the sole legal visiting booth on 8 West,[5] makes the viewing of videos by a client extremely difficult. A glass partition separates the visitor and inmate in this booth, but there is an approximately five (5) inch metal barrier at the bottom of the glass. This means that a visitor must lift a laptop up so it clears the metal barrier and the video is viewable by the inmate. The further the laptop is lifted, the more difficult it is to hear any audio that accompanies a video recording.

It is respectfully submitted that the present limitations on the defendants' access to the discovery in this case unconstitutionally interferes with their ability to consult with counsel, review and comprehend the evidence the government intends to introduce at trial, and meaningfully participate in the preparation of the defense to the charges in this case.

**C.  The Effect of the COVID-19 Pandemic on Access to Discovery**

On March 19, 2020, a mandatory stay-at-home directive was issued in this State to slow the spread of COVID-19. To this day, California has not returned to "normal" and it remains unclear when, and if, we will be able to live as we did before the pandemic. What is most significant for the purpose of this motion is the fact the pandemic has had a profound effect on the ability of defense teams to meet with clients and to allow the clients to review discovery.

The standard of care for effective assistance in a capital case is described in the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003) ("Guidelines") and the Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases (2008) ("Supplementary Guidelines").[6]   The Guidelines

---

[5]  The other visiting booth on 8 West, which is currently used for legal VTC visits, is known as a "pass through booth" and the accused in this case are not allowed any in-person visits in this booth.

[6]  The ABA Guidelines repeatedly have been recognized by the Supreme Court as the "prevailing norms of practice." *See, e.g., Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010) ("We long have recognized that '[p]revailing norms of practice as reflected in American Bar

*(cont'd)*

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**7**

establish a national standard of practice to ensure "high quality legal representation" in all capital cases. Guideline 1.1.A. Due to the "extraordinary complexity and demands of capital cases," defense counsel in capital cases "have duties and functions definably different from those of counsel in ordinary criminal cases" and must make 'extraordinary efforts on behalf of the accused.'" *Id*. at 921, 923 (citing ABA Standards for Criminal Justice: Defense Function, Standard 4-1.2(c), ABA Standards for Criminal Justice: Prosecution Function and Defense Function (3d ed. 1993).) The Guidelines apply "from the moment the client is taken into custody and extend to all stages of every case. . . ." Guideline 1.1.B. at.   The Guidelines require counsel to conduct a thorough and independent investigation relating to guilt, regardless of any admission or statement by the client concerning the facts of the crime charged or overwhelming evidence of guilt. Guideline 10.7, at 1015.  In The Commentary to Guideline 10.7 cites inadequate investigation by defense counsel as a prime contributor to wrongful convictions in capital and non-capital cases (*id*., at 1017) in explaining counsel's "duty to take seriously the possibility of the client's innocence, to scrutinize carefully the quality of the state's evidence, and to investigate and re-investigate all possible defenses." *Id.,* at 1018 (footnotes omitted).  Counsel cannot fulfill his or her obligations to investigate guilt without adequate consultation with the client about the facts the prosecution will present to support the charges, as set forth in the discovery provided to the defense.

Capital defense counsel's ability to provide the legal representation required by the Guidelines has been severely compromised by the circumstances of the pandemic.  Because of COVID concerns, defense teams were unable to visit the client regularly, in person, in a confidential setting for over one year.   Although in-person visiting has in theory been available at the Sacramento Jail, availability was and is not the only factor that counsel must weigh in deciding

---

(cont'd from previous page)
Association standards and the like . . . are guides to determining what is reasonable.") (citing *Strickland v. Washington*, 466 U.S. at 688); *Wiggins v. Smith,* 539 U.S. 510, 524 (2003) (same).
*(cont'd)*

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**8**

whether to visit a client.  There have been numerous reports about the rapid spread of the virus in detention facilities at rates far higher than in the general population. *See, e.g.,* Timothy Williams et al., *Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. Times, June 16, 2020.   A defense team member contemplating a visit with a client in jail during the pandemic must consider that such visits pose serious health risks to clients, other inmates, correctional officers, his or her family and the community at large.  This is particularly true for high-risk clients and defense team members who are themselves particularly vulnerable to the virus or who live with others who are at high risk.

## IV.  Argument

In this case, access to an electronic device to review discovery is necessary to afford Mr. Brady his right to effective assistance of counsel, the tools necessary to prepare and present a defense, to adjudicatory competence and to a fair and reliable determination of guilt and penalty, as guaranteed by the Fifth, Sixth and Eighth Amendments to the United States Constitution.

### A.  Effective Assistance of Counsel

A criminal defendant's entitlement to the effective assistance of counsel under the Sixth Amendment requires counsel to undertake an adequate investigation guided by informed professional judgment.  *Wiggins v. Smith,* 539 U.S. 510, 527 (2003); *Strickland v. Washington,* 466 U.S. 668, 690 (1984).  There is no distinction between the right of a defendant to effective assistance of counsel at guilt phase and the right to such assistance in "capital sentencing proceedings."  *Strickland,* 466 U.S. at 686.   Among the most important sources of information counsel must consider in making professionally sound decisions regarding the conduct of pretrial investigation is obtained through consultation with his or her client. *Strickland,* 466 U.S. at 691.

---

(cont'd from previous page)

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**9**

The Supreme Court has stated "perhaps the most critical period of the proceedings" in a capital case is the time between arraignment and trial, "when consultation, through on-going investigation and preparation were vitally important." *Powell v. Alabama,* 287 U.S. 45, 57 (1932).

At any critical state of a criminal proceeding, the government may not interfere with the defendant's ability to communicate and consult with counsel. *See, e.g., Deck v. Missouri,* 544 U.S. 622, 631 (2005) (shackling a defendant risks, *inter alia,* the ability to communicate with counsel); *Riggins v. Nevada,* 504 U.S. 127, 137 (1992)(involuntary administration of psychotropic medication risked interference with ability to communicate with counsel); *Geders v. United States,* 425 U.S. 80, 91 (l976) (precluding consultation between a defendant and counsel during overnight recess in trial constituted impermissible "barrier to communication between a defendant and his lawyer." The Supreme Court consistently has "held that a defendant's right to the effective assistance of counsel is impaired when he cannot cooperate in an active manner with his lawyer." *Riggins,* 504 U.S. at 144 (Kennedy, J., concurring).

### B. Basic Tools Necessary to Prepare a Defense

The Fifth Amendment due process guarantee requires an accused be afforded access to the "raw materials" and "basic tools" necessary to prepare and present a defense. *Ake v. Oklahoma,* 470 U.S. 68, 79 (1985). In *Ake,* the Court concluded that a state was required to provide an indigent defendant with access to and the assistance of a "competent psychiatrist" to "conduct an appropriate examination" whenever mental health issues were of significance to the case. *Ake* acknowledges the principle that the defense is constitutionally entitled to access to the means of developing available evidence reasonably required to prepare a defense. In this case, that right requires access to basic tools necessary to assess and organize evidence in an effective manner. The government must not be allowed to deny the accused in this case access to the tools needed to prepare a defense with the help of their counsel.

### C. Adjudicatory Competence

The right of a defendant to meaningfully participate in the preparation of a defense is well established. The Supreme Court's holdings in cases such as *Dusky v. United States,* 362 U.S. 402 (1960), and *Drope v. Missouri,* 420 U.S. 162 (1975), recognize that the bedrock of adjudicatory competence is the client's ability to understand the process and provide his or her lawyers with relevant information. *See Dusky,* 362 U.S. at 402 (competence requires "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding"); *Hoffman v. Arave,* 455 F. 3d 926, 937 (9th Cir. 2006), *overruled on other grounds, Arave v. Hoffman,* 522 U.S. 117 (2008) (competence requires "the mental acuity so see, hear and digest the evidence to prepare an effective defense"); *Blazak v. Ricketts,* 1 F.3d 891, 894 (9th Cir. 1993) (quoting *Dusky*). Mr. Brady cannot reasonably be expected to comprehend and effectively utilize the voluminous discovery material without the benefit of electronic document review and management.

### D. Reliable Determination of Guilt and Penalty

The Supreme Court has demanded a heightened requirement of reliability in decision making by the court and the jury during the course of a capital trial. *See, e.g., Woodson v. North Carolina,* 428 U.S. 280, 304-05 (1976) (Constitution requires individualized sentencing determination in capital cases even though there is no parallel requirement in non-capital cases); *Thomson v. Oklahoma,* 487 I/S. 815, 856 (1988) ("Under the Eighth Amendment, the death penalty has been treated differently from all other punishments."). The requisite heightened degree of reliability and accuracy in decision making mandates adherence to the guarantees of effective counsel, basic litigation tools and meaningful, interactive communication between the accused and counsel. Indeed, the constitutional adequacy of pretrial and trial procedures is measured by whether they can "be relied on as having produced a just result." *Strickland,* 466 U.S. at 675. Conversely, a risk to the fairness and reliability of a trial's outcome may be constitutionally impermissible given the ease with which that risk could have been alleviated or minimized. *See,*

*e.g., Turner v. Murray,* 476 U.S. 28, 36 (1986) (failure to voir dire on racial animus in cross-racial capital murder case).

## V. Proposed Specifications of the Laptop Computers

The computers to be provided the defendants will be consistent with the JETWG laptop configuration specifications set forth in Exh. A, at pp. 11-12.  They will be locked down to prevent access to the internet and any and all wireless communications, including but not limited to WiFi, LTE, 4G, etc.

A built-in SD Card Reader is required to view the discovery.   The computer will have an SD card or micro-SD card with a maximum capacity of 64 GB.

In order to run programs such as Cellebrite (which is used for downloading the content of cellular phones) or body camera footage, the computers must have the Windows operating system installed, because such specialized programs will not run-on android devices.

Earbuds will be required if the electronic discovery includes audio/visual material.  The earbuds must not have the volume control on the cord or microphone.

The computer, and any media storage device provided to be installed on the computer, such as a SD or micro-SD card, shall contain no image or files other than discovery and statutory and case law relevant to the criminal case. The defendant's counsel will be responsible for loading discovery and relevant statutes and case law onto an SD card that counsel will insert into the computer before it is presented at the jail.  As additional discovery is provided, updated SD cards may be installed in the computer.  Counsel may not load the SD cards or micro-SD cards directly onto the device without going through Sacramento Jail staff and may not provide digital media directly to the defendant.

Before computers are distributed to the in-custody defendants they will be submitted for any inspection that may be ordered by this Court or required by the Sacramento County Sheriff's Department.

The computer is to be stored and charged using a device that the jail presently uses for the charging tablets it distributes to inmates for educational and recreational purposes.   Specifically, the jail uses rolling charging stations, which are manufactured by Carrier and sold under the name "LocknCharge."[7]   These carts store, secure, charge and carry up to ten (10) or fifteen (15) devices. The computer loaded with discovery would be provided to the inmates without power cords and returned to the cart at the end of the day for charging and storage, much like the tablets that are already in use at the jail.

**VI. Conclusion**

For the reasons set forth above, counsel respectfully requests that the Court grant this motion and order that Mr. Brady have access to the discovery in this case on a computer

Dated:   October 7, 2021                                        Respectfully submitted,


*/s/ John R. Manning*
JOHN R. MANNING

*/s/ Marcia A. Morrissey*
MARCIA A. MORRISSEY

Attorneys for Defendant
PATRICK BRADY

---

[7]   See https://www.lockncharge.com/products/carrier-charging-stations/

**Patrick Brady's Motion for Authorization to Use Laptop Computer to Review Discovery**
**13**

**PROOF OF SERVICE**

I, Marcia Morrissey, declare:

That I am over the age of 18, employed in the County of Los Angeles, California, and not a party to the within action; my business address is 11500 West Olympic Blvd., Suite 1500, Los Angeles, California 94102.

On today's date, I served the within document entitled:

**PATRICK BRADY'S MOTION FOR AUTHORIZATION TO ACCESS TO LAPTOP COMPUTER TO REVIEW DISCOVERY**

(X) By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Los Angeles, CA, addressed as set forth below:

> Sacramento County Board of Supervisors
> 700 H Street, Suite 2450
> Sacramento, CA  95814
>
> Michael Torres
> F-96964
> California State Prison, Sacramento (290066)
> P.O. Box 290066
> Represa, CA  95671-0066

(X) By electronically transmitting a true copy thereof through the Court's ECF system.

Dated October 7, 2011                           */s/ Marcia A. Morrissey*
                                                MARCIA A. MORRISSEY