[prepared by]
Kresta Nora Daly, SBN 199689
**BARTH DALY LLP**
P.O. Box F
Winters, CA 95694
Telephone: (916) 440-8600
Facsimile: (916) 440-9610
Email:  kdaly@barth-daly.com

Richard G. Novak, SBN 149303
**Richard G. Novak, APLC**
P.O. Box 5549
Berkeley, CA 94705
Telephone: (626) 578-1175
Facsimile: (626) 685-2562
Email: richard@rgnlaw.com

Attorneys for Defendant
JASON CORBETT

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL, et al.<br><br>Defendants. | ) Case No. 2:19-CR-00107-KJM<br>)<br>) **JOINT DEFENSE STATUS REPORT RE.**<br>) **THE SETTING OF A TRIAL DATE AND**<br>) **THE STATUS OF THE DEATH PENALTY**<br>) **PROTOCOL**<br>)<br>) **HEARING DATE: JAN. 5, 2022**<br>) |

Defendants Pat Brady, Jason Corbett, Brant Daniel, Danny Troxell, William Sylvester, and Ronald Yandell, by and through their respective counsel of record, hereby file this Joint Defense Status Report for the Court's consideration prior to the status conference to be held in this matter on January 5, 2022.

Dated: December 29, 2021    Respectfully submitted on behalf of these defendants,

By ____/s/ Richard G. Novak_____
    KRESTA NORA DALY
    RICHARD G. NOVAK
    Attorneys for Jason Corbett

Joint Defense Status Report                                    2:19-cr-00107-KJM

**JOINT DEFENSE STATUS REPORT RE. THE SETTING OF A TRIAL DATE**

**AND THE STATUS OF THE DEATH PENALTY PROTOCOL**

This Joint Status Report is filed on behalf of defendants Mr. Brady, Mr. Corbett, Mr. Daniel, Mr. Troxell, Mr. Sylvester, and Mr. Yandell.

**The Setting of a Non-Capital Trial Date for Six Defendants Charged with Crimes of Violence**

On October 26, 2021, this Court issued an order setting forth its intention to set two deadlines in this matter: 1) a deadline of April 22, 2022 for the United States to file a superseding indictment, and 2) a deadline of September 23, 2022 for the Attorney General to provide notice as to whether or not the government will seek the death penalty against any defendant in this matter.  (Doc. No. 910)

On November 8, 2021, five of these six defendants, excluding Mr. Yandell whose representation was in transition at that time, filed a response to that Order informing the Court that they do not object to the court setting those dates.  (Doc. No. 919) Mr. Yandell is now represented by counsel, and he now joins in that response.  On November 8, 2021 the government also filed its own response. (Doc. No. 921)

The response of the five defendants also encouraged the court to set a trial date in early 2023 for them, with the understanding that it would be a *non-capital* trial, subject to two caveats.  First, the Court may determine that it is not practicable or consistent with the defendants' rights to a fair trial to try all of the defendants charged with crimes of violence in a single trial.   Second, one or more of the defendants may move for severance for one or more reasons.  (Doc. No. 919 at 2-3)

At the status conference held in this matter on December 8, 2021, this Court directed the parties to meet and confer about the setting of such a trial date. (Doc. No. 954) During that status conference, the Court indicated that it intends to set a trial date at the status conference on January 5, 2023.

Counsel for the six defendants, including new counsel for Mr. Yandell, have conferred amongst themselves and with their clients, and specifically request that the Court set a *non-capital*

1  trial date for them of March 20, 2023.[1] Counsel for Mr. Brady informed the government on

2  December 13, 2021 that these six defendants propose a non-capital trial date of March 20, 2023.  The

3  government acknowledged that communication but has not yet communicated to defense counsel its

4  own views concerning the setting of a trial date.

5          **The Status of the Capital Case Protocol**

6          At the status conference on October 13, 2021, the government represented to the Court that by

7  the end of November it would send letters to counsel for those defendants from whom the United

8  States Attorney requests a "submission" under Title 9-10.080 of the Justice Manual.  The government

9  also made certain representations as to what would be included in those letters, ostensibly to obviate

10  the need for timely return of a superseding indictment.  (Tr. 10/13/2021 at 15-16, attached hereto as

11  Exhibit A)

12          Counsel for defendants Mr. Brady, Mr. Corbett, Mr. Daniel, and Mr. Sylvester did receive a

13  letter from the government on November 30, 2021, but it did not provide any information as to what

14  capital offense(s) the government may charge against each defendant and did not identify any

15  eligibility factors or statutory or non-statutory aggravating factors that the government presently

16  believes may justify seeking the death penalty.  The letter received by defense counsel does not

17  contain any of the information that the government represented to this Court it would provide to the

18  defendants.  The letter received by counsel for Mr. Corbett is attached hereto as Exhibit B and is

19  representative of the letters received by counsel for Mr. Brady, Mr. Daniel, and Mr. Sylvester.

20          Counsel for those four defendants (Mr. Yandell's counsel did not receive such a letter) met

21  and conferred concerning the government's letter and on December 11, 2021 sent to the government

22  a letter in response, attached here as Exhibit C.  The letter does not indicate that the defendants

23  _____

24

25  [1] The *Joint Defense Response to This Court's Order to Show Cause* specifically urged the Court to

26  set a non-capital trial date in January 2023.  At the time of that filing, the status of Mr. Yandell's

27  representation was in flux.  The proposal here of a non-capital trial date of March 20, 2023 was

28  agreed upon by counsel for all six defendants, including Mr. Yandell's new counsel.

1  decline to make the submission contemplated in the Capital Case Protocol.  It asks the government to

2  provide additional information so that each defendant's submission can competently address those

3  issues that may be of importance to the United States Attorney, the Capital Case Committee, the

4  Deputy Attorney General and, ultimately, the Attorney General.

5      The government's response to the letter from defense counsel was received on December 27,

6  2021, and is attached hereto as Exhibit D.  Counsel for the four defendants who received this letter

7  will need to decide what, if any, response is appropriate, but we do *not* intend to ask this Court to

8  extend the February 25, 2022 deadline set by the government for submissions, nor should the

9  government have any reason to believe that our joint letter of December 11, 2021 signaled a decision

10  by any of the defendants to decline or waive the opportunity to make a submission by February 25,

11  2022.

12      It should be noted that if the government were to file a superseding indictment a reasonable

13  period of time prior to the February 25, 2022 submission deadline it has unilaterally selected, or if the

14  government had set the submission deadline a reasonable period of time after the April 22, 2022

15  deadline for return of a superseding indictment that the Court has indicated it may impose, then the

16  government's failure to provide the information promised during the hearing on October 13, 2021

17  would be of little moment, as the superseding indictment would provide the defendants with at least

18  minimal notice of the capital charge(s), the eligibility factors, and one or more aggravating factors

19  that the grand jury found to be true.

20  **Conclusion**

21      The defendants encourage the Court to set three dates which, in combination, are well within

22  the Court's authority to manage its docket:

23  1)  A *non-capital* trial date of March 20, 2023 for the six defendants charged with crimes of

24      violence, subject to severances or groupings the Court may later determine are necessary;

25  2)  A deadline of September 23, 2022 for the Attorney General to provide notice as to

26      whether or not the government will seek the death penalty as to any defendant in this

27      matter, and

28

Joint Defense Status Report                                                    2:19-cr-00107-KJM

1         3)   A deadline of April 22, 2022 for the government to obtain and file any superseding

2             indictment that may charge an offense punishable by death.

3

4 Dated: December 29, 2021         Respectfully submitted on behalf of these defendants,

5                      By     /s/ Richard G. Novak

6                            KRESTA NORA DALY
                           RICHARD G. NOVAK

7                            Attorneys for Jason Corbett

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joint Defense Status Report                                                               2:19-cr-00107-KJM

# EXHIBIT A

1

```
1                    IN THE UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF CALIFORNIA
2            BEFORE THE HONORABLE KIMBERLY J. MUELLER, CHIEF JUDGE

3     UNITED STATES OF AMERICA,

4                        Plaintiff,
      vs.                               Sacramento, California
5                                       No. 2:19-CR-00107-KJM
                                        Wednesday, October 13, 2021
6     RONALD YANDELL, ET AL.,           9:05 a.m.

7                        Defendant.
      _____/
8                                 --oOo--

9                   REPORTER'S TRANSCRIPT OF PROCEEDINGS

10                        RE: STATUS CONFERENCE

11                                --oOo--

12    APPEARANCES:

13    For THE GOVERNMENT:        United States Attorney's Office
                                 By: Jason Hitt
14                                   David Spencer
                                 501 I Street, Suite 10-100
15                               Sacramento, CA 95814
                                 Assistant U.S. Attorneys
16

17    For THE DEFENDANT          Ronald Yandell, appearing pro se
      RONALD YANDELL:
18                               Nathan D. Chambers, LLC
                                 Nathan D. Chambers (Stand-by Counsel)
19                               Attorney at Law
                                 303 16th Street, Suite 200
20                               Denver, CO 80202

21
      (Appearances continued on following page.)
22    ///

23

24

25
```

2

1                           **APPEARANCES CONTINUED**

2

3     For **THE DEFENDANT**          **Law Office of Timothy E. Warriner**
      **BRANT DANIEL:**              By:  **Timothy E. Warriner**
                                     455 Capitol Mall, Suite 802
4                                    Sacramento, CA  95814

5                                    **Law Office of John P. Balazs**
                                     By:  **John Paul Balazs**
6                                    Attorney at Law
                                     916 2nd Street, Suite F
7                                    Sacramento, CA  95814

8     For **THE DEFENDANT**          **Michael Torres, appearing pro se**
      **MICHAEL TORRES:**
9                                    **Law Offices of Michael E. Hansen**
                                     **Michael E. Hansen (Stand-by Counsel)**
10                                   711 Ninth Street, Suite 100
                                     Sacramento, CA  95814
11
      For **THE DEFENDANT**          **LAW OFFICE OF TODD D. LERAS**
12    **DANIEL TROXELL:**            By:  **Todd David Leras**
                                     Attorney at Law
13                                   455 Capitol Mall, Suite 802
                                     Sacramento, CA  95814
14
      For **THE DEFENDANT**          **Law Office of Hayes H. Gable, III**
15    **WILLIAM SYLVESTER:**         By:  **Hayes H. Gable, III**
                                     1001 G Street, Suite 104
16                                   Sacramento, CA  95814

17                                   **MARK FLEMING, PHV**
                                     By:  Mark Fleming
18                                   Pro Hac Vice
                                     1470 Encinitas Boulevard, Suite 133
19                                   Encinitas, CA  92024

20    For **THE DEFENDANT**          **Law Office of John R. Manning**
      **PAT BRADY:**                 By:  **John R. Manning**
21                                   Attorney at Law
                                     1111 H Street, Suite 204
22                                   Sacramento, CA  95814

23                                   **Law Office of Marcia Morrissey**
                                     By:  **Marcia Ann Morrissey**
24                                   Attorney at Law
                                     11400 West Olympic Boulevard, #1500
25                                   Los Angeles, CA 90064

3

1                          **APPEARANCES CONTINUED**

2

   For **THE DEFENDANT**          **Law Offices of Richard Novak**
3   **JASON CORBETT:**          **By:  Richard G. Novak**
                             Attorney at Law
4                             P.O. Box 5549
                             Berkeley, CA  94705-9991
5

                             **Barth Daly, LLP**
6                             **By:  Kresta Nora Daly**
                             Attorney at Law
7                             2810 5th Street
                             Davis, CA  95618
8

9   For **THE DEFENDANT**          **Law Office of Shari G. Rusk**
   **KEVIN MACNAMARA:**          **By: Shari G. Rusk**
10                             Attorney at Law
                             559 Jones Way
11                             Sacramento, CA  95818

12   For **THE DEFENDANT**          **Dina L. Santos**
   **JUSTIN PETTY:**          **A Professional Law Corp.**
13                             By:  Dina Lee Santos
                             Attorney at Law
14                             455 Capitol Mall, Ste. 802
                             Sacramento, CA  95814
15

   Other Appearances:          **M.E.Greenberg,** Mitigation Investigator
16

   Official Reporter:          Tiphanne G. Crowe
17                             CSR No. 10958
                             501 I Street
18                             Sacramento, CA  95814

19   *Proceedings recorded by mechanical stenography.  Transcript*
   *produced by computer-aided transcription.*
20

21

22

23

24

25

4

SACRAMENTO, CALIFORNIA, WEDNESDAY, OCTOBER 13, 2021, 9:05 A.M.

**(In open court.)**

--oOo--

THE CLERK:  Calling criminal case 19-CR-107-KJM;
United States v. Ronald Yandell.  This is on for a status
conference.

THE COURT:  All right.  Good morning.  Appearances for
the government.

MR. HITT:  Good morning, your Honor, Jason Hitt and
David Spencer on behalf of the United States.

THE COURT:  All right.  Good morning to each of you.
And appearing for those defendants who are here in person, Mr.
Chambers you are present.

MR. CHAMBERS:  Good morning, your Honor. Nathan
Chambers.

THE COURT:  All right.  And I realize we have a status
of counsel matter.  We'll address that when we come to it.

And Mr. Yandell representing himself.

DEFENDANT YANDELL:  Ronald Yandell present, your
Honor.

THE COURT:  All right.  Good morning to you.

For Mr. Daniel.

MR. BALAZS:  Good morning, your Honor.  John Balazs
and Tim Warriner for Mr. Daniel who is present in court.

THE COURT:  All right.  Good morning to each of you,

5

1    and Mr. Daniel is present.

2            DEFENDANT DANIEL:  Good morning.

3            THE COURT:  Good morning to you.

4            And, Mr. Torres, you are present --

5            DEFENDANT TORRES:  Present, your Honor --

6            THE COURT:  -- being assisted by stand-by counsel, Mr.

7    Hansen.

8            MR. HANSEN:  Good morning, your Honor.  Mike Hansen on

9    his behalf.

10            THE COURT:  All right.  Good morning to each of you.

11    For those defendants whose appearance is waived, appearing for

12    those defendants here this morning, Mr. Sylvester.

13            MR. GABLE:  Hayes Gable and Mark Fleming for

14    Mr. Sylvester, your Honor.

15            MR. FLEMING:  Good morning, your Honor.

16            THE COURT:  Good morning to each of you.

17            For Mr. Brady.

18            MR. MANNING:  Good morning, your Honor.  John Manning

19    and Marcia Morrissey on behalf of Mr. Brady.

20            MS. MORRISSEY:  Good morning, your Honor.

21            THE COURT:  Good morning to each of you.

22            For Mr. Corbett.

23            MS. DALY:  Good morning, your Honor.  Kresta Daly and

24    Richard Novak for Mr. Corbett.

25            MR. NOVAK:  Good morning, your Honor.

6

1          THE COURT:  Good morning to each of you.

2          For Mr. Troxell.

3          MR. LERAS:  Good morning, your Honor.  Todd Leras

4    appearing for Mr. Troxell.

5          THE COURT:  Good morning, Mr. Leras.

6          For Mr. MacNamara.

7          MS. RUSK:  Good morning, your Honor.  Shari Rusk

8    appearing for Mr. MacNamara who has an appearance waiver on

9    file.

10          THE COURT:  Good morning, Ms. Rusk.

11          And for Mr. Petty.

12          MS. SANTOS:  Good morning, your Honor.  Dina Santos

13    appearing on behalf of Mr. Petty.  He also has a waiver on

14    file.

15          THE COURT:  All right.  Good morning, Ms. Santos.

16          This is on for a status.  The Court wants to discuss

17    the setting of a date by which the government will make a

18    decision regarding whether or not it is going to file capital

19    charges and hear from the parties as to whether or not there is

20    any other status.

21          I believe I've resolved all pending motions.  There

22    are two that may not be on the docket yet, but the motion for

23    an industrial hygienist I've resolved, and the -- Mr. Daniel's

24    motion for transfer I've resolved.

25          So those will be on the docket today, if they aren't

7

1   already there.  So I think then I have resolved all pending

2   motions, but if someone feels differently, they should let me

3   know.

4        And then once we're done with all of the other

5   business, there's a status of counsel in Mr. Yandell's matter,

6   but we can excuse everyone else, I believe, for me to address

7   that.

8        So anything else -- let's just first talk about the

9   agenda.  Anything else the government believes we should cover

10  today, Mr. Hitt?

11       MR. HITT:  No, your Honor.

12       THE COURT:  Who's serving as lead for the defense?

13       MR. BALAZS:  John Balazs on behalf of Mr. Daniel, not

14  that I'm lead, but with respect to Mr. Daniel, if the Court has

15  resolved his amended motion to transfer, the only other issue

16  we have remaining, that we set forth in our status conference,

17  is the Court's prior order on discovery that was issued July

18  16th.  We've asked the Court to set a deadline for the

19  government to provide the discovery the Court ordered.

20       THE COURT:  All right.  And remind me, are you

21  proposing a specific deadline based on what you understand is

22  realistic?

23       MR. BALAZS:  I think it should be done within -- it's

24  been over three months, so our suggestion would be 14 days.

25       THE COURT:  All right.  Is there any defendant who

8

1   does not join in that request, Mr. Yandell?

2           MR. YANDELL:  I would join in that, your Honor.

3           THE COURT:  Mr. Torres?

4           MR. TORRES:  Yes.

5           THE COURT:  Is there any represented defendant who

6   does not join in that request, if so, let me know, or propose

7   an alternate time period.

8           All right, so we'll talk about discovery.  Any other

9   agenda item that any defendant wishes the Court to address

10  today?  First for represented defendants.  I see no raised

11  hands.

12          Mr. Yandell, apart from status of counsel, anything?

13          DEFENDANT YANDELL:  Nothing, your Honor.

14          THE COURT:  All right.  Mr. Torres?

15          MR. TORRES:  Nothing, your Honor.

16          THE COURT:  All right.  Well, let's talk about

17  discovery then.

18          Mr. Hitt, 14 days?

19          MR. HITT:  Your Honor, I've been in contact -- I would

20  ask for 30, and I think Mr. Balazs' request is reasonable.  I

21  just know from speaking to -- so the government -- the United

22  States Government does not possess the materials ordered

23  produced by the Court.

24          I have been in touch a couple of months ago, or a

25  month and a half ago with -- the California Attorney General's

9

1     office has a representative lawyer that is working with the

2     order and is looking for responsive materials within CDCR's

3     possession.  That process, I think, has been ongoing.

4            I did note that we had a status conference today.

5     I'll check back in with them, but I think given the amount of

6     records they need to search to make sure they are compliant,

7     because I think one of the categories they we're concerned

8     about, there was -- one of the categories had a fairly broad --

9     it talked about e-mails, memoranda, I think that's the search

10    that's taking quite a bit of time.

11           And they may have some privilege to assert as to

12    certain materials.  So I would ask, on their behalf, for 30

13    days, because I think they have a lot to look through.

14           THE COURT:  All right.  Can that be a rolling time

15    period, so as materials become available, they are produced?

16           MR. HITT:  Um, I -- I can't speak for them, but I

17    can -- I mean, I can relay that if they have responsive

18    materials, those should be produced before the 30 days, that

19    they don't object to producing.

20           THE COURT:  All right.  With that explanation, Mr.

21    Balazs.

22           MR. BALAZS:  I don't have anything further to add.  We

23    are anticipating filing additional motions for discovery, and

24    we need to kind of review the materials we're given before we

25    kind of make decisions on how to proceed with those motions.

10

1          So the sooner the better from our perspective.

2          THE COURT:  All Right.  Given Mr. Hitt's explanation,

3     I'm prepared to set 30 days as the date by which all discovery

4     ordered by the Court will be produced with the understanding

5     that as traunches become available, they'll be produced during

6     that 30-day period.  But 30 days as an outside, that's a bench

7     order.

8          All right.  I understand the parties have talked about

9     a January date for the next status.  The Court's tentative plan

10    is to set that date, which is -- I believe is January 5th; is

11    that correct, Ms. Schultz?

12          THE CLERK:  Yes, your Honor, at 9:00 a.m.

13          THE COURT:  Set that date as the date by which the

14    government will make a determination regarding the filing of

15    criminal charges -- of capital charges.

16          Mr. Hitt.

17          MR. HITT:  Your Honor, I -- the government objects to

18    the Court setting a deadline in the fashion that it described.

19    I think we would -- I can file some briefing on the matter.  I

20    think the defense in the status report also indicated that it

21    is not seeking the Court to impose a deadline for reasons

22    stated in the status report.

23          So with that objection noted, I understand the Court's

24    order.

25          THE COURT:  Is someone speaking on this?  The point

11

1     is, this affects the discovery.  There's a case management

2     issue here, and the sooner this issue is resolved, the better,

3     particularly given the time that has passed.

4          So I think -- I can issue an order to show cause and

5     have the parties brief the matter in detail.

6          Mr. Novak.

7          MR. NOVAK:  Thank you, your Honor.  I don't know

8     whether I have a proxy from the other defendants who are

9     punitively death-eligible, if I can put it that way, based on

10    the way Count 1 is pled at this point.  But if anybody

11    disagrees with me, I'm sure they'll let the Court know.

12         What we said in our publicly filed status report is

13    that we think it is premature for the Court to set a deadline

14    for the death penalty protocol under the justice manual.  I

15    think that the question that the Court addressed to the

16    government was a deadline for returning a superseding

17    indictment, and those are really two separate issues.

18         And I'm not sure that it's necessary for the defense

19    to weigh in on the Rule 6 issue.  I think our experience is

20    that sometimes we go through the protocol with an indictment

21    that clearly sets forth which offenses, if any, a defendant may

22    be facing the death penalty.

23         That is certainly easier for us to get a handle on

24    what the issues are, as opposed to what I would call a

25    preindictment case where it's not really clear what the scope

12

1    of the charges may be, and we're in this kind of weird hybrid

2    situation here where we have a racketeering conspiracy that

3    charges multiple homicides.

4         We have discovery which addresses at least one other,

5    which is not set forth in the indictment, and so we don't

6    really know exactly what -- there's a little bit of

7    shadowboxing, if I might put it that way.

8         So I think our experience -- those of us who have been

9    through this -- is it's much more productive to respond to an

10   indictment that actually sets forth not only the capital

11   charges, but at least the aggravating factors that are -- or

12   the eligibility factors, and usually statutory aggravators,

13   that are part of the grand jury return.

14        And so I think the question of whether the Court needs

15   to set an OSC as to the return of the superseding indictment,

16   is a little bit different from when will the defense be

17   prepared to make a presentation to either the United States

18   Attorney or the Attorney General, if necessary, and I hope I'm

19   being clear --

20        THE COURT:  I understand all of that.

21        MR. NOVACK:  Okay.

22        THE COURT:  So what's the schedule you would propose,

23   if the goal is to get maximum clarity as soon as possible under

24   the circumstances?

25        MR. NOVACK:  If the Court's goal is to get maximum

13

1    clarity as soon as possible, what I would say, as soon as we

2    see a superseding indictment, and we know who is charged with

3    what death-eligible offenses, we can then be very clear about

4    how much additional time is necessary to prepare for a local

5    presentation, which is usually the first stop if there's going

6    to be a request for a local presentation.

7         But until I see an indictment, like I said before,

8    it's a little bit difficult to know what we need to address,

9    because not only is it hypothetically the noncase specific

10   mitigating factors that I need to address, but it's also the

11   strength of the evidence, a particular client's role in any

12   particular charge, and so what are the charges?

13        And, you know, we have some discovery on some of the

14   alleged homicides.  I think it's fair to say that we're missing

15   discovery on some of the alleged homicides.

16        So I think the superseding indictment is the first

17   place to start, and what I'm committing to the Court is, if I

18   see a superseding indictment that charges my client with one or

19   more death-eligible offenses, I can tell the Court when we

20   would be ready to make a local presentation.

21        And I also just want to say very parenthetically that

22   the sealed supplemental status report raised an issue about our

23   ability to go forward with the mitigation investigation, and so

24   that's also a timing issue.

25        I was also -- we were served yesterday with the sealed

14

1   order --

2            THE COURT:  Yes, unfortunately delayed.

3            MR. NOVACK:  Understood, so I think that's part of

4   the -- so I look forward to seeing a superseding indictment.

5   If there's going to be one -- we'd be happy to hear that there

6   isn't going to be one, and that this is not a capital case --

7   but if there is going to be one, we would rather see it before

8   the Court sets a deadline for the protocol.

9            THE COURT:  All right.  And any defendant feel

10  differently?  Starting with represented defendants.

11           MR. FLEMING:  On behalf of Mr. Sylvester, your Honor,

12  we join in all of the comments made by co-counsel.

13           THE COURT:  All right.

14           MS. MORRISSEY:  Your Honor, on behalf of Patrick

15  Brady, we join in those comments.

16           THE COURT:  All right.  Anyone else wish to state

17  their position for the record?

18           MR. BALAZS:  On behalf of Mr. Daniel, we agree too.

19           THE COURT:  All right.  Is there anyone who disagrees

20  with what we just heard from Mr. Novak?

21           I see no disagreements.

22           Mr. Yandell.

23           DEFENDANT YANDELL:  I join.

24           THE COURT:  You join.  All right.

25           DEFENDANT TORRES:  I join as well, your Honor.

15

```
1            THE COURT:  All right.

2            And, Mr. Hitt, so I mean do you have anything to say

3     for the record now, or do you just wish to respond to an order

4     to show cause?  I have to think about how I would word the

5     order to show cause, but my plan is to move this along and to

6     try to help bring focus from where I sit as the presiding judge

7     given my case management.

8            MR. HITT:  Understood, your Honor.  And I don't mean

9     to be an obstructionist.  I just think the legal principles at

10    stake are very significant in the separation of powers --

11           THE COURT:  I understand that.

12           MR. HITT:  -- and you've read the cases.

13           So here's what I can offer the Court, and I would -- I

14    guess from the government's perspective, an OSC would be very

15    problematic, because it may require steps to supercede that may

16    or may not -- that may be accelerated.

17           In other words, it may cause the government, if

18    there's a hard deadline, and we're responding to an order to

19    show cause, to simply supersede, and let the chips fall where

20    they may.

21           The in between stuff that Mr. Novak and I discussed at

22    the last hearing that I'm exploring, and I intend to do before

23    the January date, is to offer specific crimes to specific

24    defense counsel, and their -- their clients that may be

25    death-eligible.
```

16

1   Send a letter that formally lays out:  Here's our

2   theory.  Here's the crimes that you have discovery on that we

3   believe are -- could be the subject of a superseding, and

4   invite a local U.S. attorney presentation for mitigation prior

5   to indictment.

6   The efficiency I see there from the government's

7   perspective, is it gives counsel something to present to our

8   U.S. Attorney, and that may influence whether some or all of

9   the defendants are indicted in a superseding indictment.

10   In other words, they could persuade, at least as to

11   certain defendants, that, no, I don't want to move forward on

12   that case.  But that would be an informal process, and the

13   Court wouldn't have it in front of it, but I think that would

14   be the sort of in between step that I would request, at least

15   the Court knowledge.

16   If we can get that done before the January status,

17   that would provide the clarity and focus that Mr. Novak

18   understandably says is missing without a concrete superseding

19   charge.

20   And once he explained that, and I found that there is

21   this other path, it appealed to me, because it seemed like a

22   very smart way to sort of let's have the discussion without

23   having the formal pressure of charges pending.

24   THE COURT:  So all of that can be exhausted by January

25   5th, that process that you are describing?

17

1    MR. HITT:  At least the letters going out, and I

2    think --

3    THE COURT:  I'm not talking about just the letters

4    going out.  I'm talking about the discussions then that would

5    follow.

6    MR. HITT:  No.  I'm not going to commit to that.  I

7    can't.  There's -- the Court and the government have different

8    roles when it comes to what process.  I have an acting U.S.

9    Attorney.  We have a new Attorney General.  There's no way I

10   can commit to the Court that the people in D.C. that have final

11   authority over this would make a final decision or respond to

12   whatever the Court is asking by January 5th.

13   THE COURT:  What -- what's a reasonably period of time

14   for that process -- presuperseding indictment process to play

15   out?

16   MR. HITT:  The letters would be approved by the U.S.

17   Attorney, so that wouldn't take very long.  I would hope to get

18   those out by November.  The response by defense counsel is what

19   they have previewed takes quite a bit of effort on their part

20   because they have to build not only the mitigating factors

21   specific to their clients, but also lay out their arguments of

22   why the evidence on certain homicides is not as strong as the

23   government views.

24   So I can't speak for that side of the equation.  I

25   think on my side preparing letters and having them approved

18

1    shouldn't take -- it certainly can be accomplished well before

2    January 5th.  That's my hope.

3          THE COURT:  So Mr. Novak, if you are serving as a

4    spokesperson on this point, if the letters are transmitted by

5    November, how much time then would the defense contemplate to

6    prepare responses?

7          MR. NOVACK:  I can't speak for everybody, and I'm not

8    even sure I can speak for Mr. Corbett on this, and I want to be

9    clear about what was said in the status report which reflected

10   conversations that I had with government counsel after the last

11   hearing.

12         After the last hearing, what government counsel said

13   is, is it was their preference to invite -- I don't want to

14   overstate it -- it was their preference to figure out -- so let

15   me back up.

16         Actually the steps that we understood would occur

17   would be -- this is just subsequent to the last hearing, and

18   I'm not trying to be obtuse, or go around the Court's

19   question -- was that we would have production 3, and then we

20   would shortly have the protective order for production 4, and

21   then we would have production 4.

22         Then what the government informed me is once

23   production 4 was out, the government would internally turn to

24   the question of which of the five punitively eligible --

25   death-eligible defendants it would like to offer the

19

1    opportunity for a local presentation.

2              And now I'm going to tell the Court what I think that

3    means, and I don't mean to put words in the government's mouth,

4    where the government believes that it's appropriate to make an

5    expedited recommendation to the Attorney General, that the

6    government not seek the death penalty against a particular

7    defendant, then there is no local presentation.

8              THE COURT:  Understood.

9              MR. NOVACK:  Protocol says that if the government is

10   thinking about recommending seeking the death penalty, then the

11   defense has to be given an opportunity for a local

12   presentation.

13             So what I understood from that conversation was before

14   the government wanted to supersede, it wanted to figure out

15   which of the defendants it may or may not recommend that the

16   Attorney General seek the death penalty.

17             So we don't have production 4 yet, and I did not

18   really feel like it was necessary for me to tell the government

19   we refuse to participate until you do a superseding indictment.

20   I don't really think that that's the kind of conversation that

21   is productive.

22             So what I hear the Court saying is:  The government

23   needs to make some decisions, sooner rather than later.

24             THE COURT:  Well, to the extent I have that authority.

25   I'm -- the question is what authority do I have as the

20

1    presiding judge with case management abilities?  That's the --

2              MR. NOVACK:  I understand the question.  It's both

3    under *W.R. Grace,* and in terms of when is it too late in terms

4    of case management to be announcing an intention to seek the

5    death penalty.

6              I am not talking about anybody in particular, but I

7    think it is highly unlikely that a letter in November is going

8    to result in anybody making what we would consider a single

9    comprehensive ready-to-go mitigation presentation in the near

10   future.

11             And that is both a result of matters that have been

12   pending before the court, the impact of COVID, the lack of

13   confidentiality to date at the jail.  The fact that many other

14   prisons around the country are still not permitting visits.

15             I just tried to schedule -- for a different matter --

16   visits at two federal prisons, and I was told there are no

17   visits at those federal prisons right now, just as an example.

18             So I'm not prepared to make any commitment at this

19   point, and I would ask the Court not to set a deadline for the

20   defense to make a presentation.

21             And I -- I respect, you know, counsel's advocacy on

22   behalf of the government, but the government doesn't want a

23   deadline for a superseding indictment.  You know, we may offer

24   some -- some briefing on that issue, but I -- I don't think

25   that the Court's -- which I agree with the Court -- if we're

21

1    going to have a superseding indictment, let's have it.  That

2    should not be turned into, okay, when can you make your

3    presentation?

4         And I think that that's what the government is trying

5    to do, is instead of the government having a deadline, it's now

6    being shifted to, okay, when can the defendants make their

7    presentation, and -- and I think that we should -- I -- I would

8    ask the Court to stay on the path that the Court is on.

9         You know, because we can have a superseding indictment,

10    even if the government feels pressured, that's not the same as

11    an authorization by the Attorney General.

12         I have been involved in at least 20 cases where the

13    indictment alleged an offense punishable by death, and I still

14    haven't had to go to trial on a capital case.

15         THE COURT:  All right.  I'm going to think about

16    whether or not I issue an OSC, and if I do, how that's worded.

17    But is there a way to concretize the schedule going forward

18    between now and January, and also thinking to the next six

19    months?

20         Is there some stipulated schedule that would pin down

21    some of these dates?  Is there a firm date for production

22    number 4 at this point?

23         MR. HITT:  We did submit the protective order, and

24    my -- anticipating the Court would sign it, our staff is

25    preparing it with Bates numbering, so I don't think that that

22

1   will take much time.  I think within a week or two of today's

2   date, the fourth production should be done, and that is the --

3           THE COURT:  A week or two of today?

4           MR. HITT:  From today.

5           THE COURT:  From today.  I have signed the order, so

6   that should hit the docket too.

7           MR. HITT:  So in anticipating that, we've been

8   uploading it into the system and Bates numbering it and then

9   preparing it for Mr. Ellis.

10          And that discovery pertains -- that's the entire

11  District Attorney file for the Hugo Pinell murder, and so that

12  will hopefully go out very quickly once we get it all prepared

13  for Mr. Ellis.

14          THE COURT:  All right.  So we have remaining discovery

15  under past production, 30 days.  production 4 within 14 days.

16  Can I confirm in the minutes, at least for this meeting,

17  letters by November, Mr. Hitt?

18          MR. HITT:  I think by the end of November would be

19  safest, and hopefully I can do this before that.  That would be

20  my goal.

21          THE COURT:  All right.  Any other schedule that could

22  be in a stipulation presented to the Court to keep minds

23  focused between now and January 5th?

24          MR. HITT:  Not that I'm aware of.

25          THE COURT:  Does any defense attorney feel differently

23

1    and want to let me know a counterproposal?

2         Mr. Novak?

3         MR. NOVACK:  I think it's premature, again just

4    speaking on behalf of Ms. Daly and myself for Mr. Corbett, it's

5    premature to suggest that we could stipulate as to some date by

6    which some response would be to this letter, because the

7    question is:  What is in the letter?  What type of response do

8    we deem to be in our client's best interest?  What is in the

9    discovery?

10        I mean, I could go on with rhetorical questions, so I

11   think the short answer is it's premature.

12        THE COURT:  All right.  Well, I'm going to memorialize

13   the dates we've just reviewed in the minutes of this meeting

14   and treat those as firms dates.

15        So the 14 days for production 4.  The 30 days for

16   outstanding discovery.  The government to provide letters by

17   the end of November.

18        And can you articulate, again, exactly what those

19   letters -- how would you characterize them so that I can make

20   certain the minutes properly memorialize.  Of course, the

21   transcript will --

22        MR. HITT:  Right.

23        THE COURT:  -- but for the minutes.

24        MR. HITT:  An invitation to present mitigation

25   evidence to the U.S. Attorney in the Eastern District of

24

1    California with respect to specific defendants who would be

2    subject to a superseding charge carrying the death penalty.

3                THE COURT:  All right.  And that would be up to five

4    defendants?

5                MR. HITT:  Yes.

6                THE COURT:  All right.

7                All right.  Is there anything else we need to discuss

8    before we turn to Mr. Yandell's status of counsel issue?

9                MR. HITT:  Not from the government, your Honor.

10               THE COURT:  All right.  Any defense attorney?

11   Anything we have not discussed that you wish to bring to the

12   Court's attention?  I'm prepared to confirm January 5th, 9:00

13   a.m., so that's clear.

14               MR. HITT:  We'd ask that time be excluded under the

15   appropriate Local Codes T2 and T4 from the Speedy Trial Act.

16               THE COURT:  All right.  Is there any represented

17   defendant who does not join in excluding time between now and

18   January 5th based on Local Code T4?  If so, please let me know

19   now.

20               All right.  Let me just ask two questions.

21   Mr. Yandell, anything else besides your status of counsel you

22   believe we should discuss today?

23               DEFENDANT YANDELL:  The situation with the --

24   the visiting rooms in county jail.

25               THE COURT:  All right.  And is that separate --

25

1          DEFENDANT YANDELL:  Your Honor, we can't -- I mean, we

2     can't really go over our case in that setting, and we just got

3     52,000 documents on production, and there's really no way to go

4     over it in the county jail.

5          THE COURT:  All right.  Hold that thought.

6          Anything else, Mr. Torres?  Any business item you want

7     to discuss?

8          DEFENDANT TORRES:  No, your Honor.

9          THE COURT:  Mr. Torres says no.

10         Mr. Torres, do you join in excluding time between now

11    and January 5th based on Local Code T4 giving counsel time to

12    prepare?

13         DEFENDANT TORRES:  Yes, I do, your Honor.

14         THE COURT:  All right.

15         Mr. Yandell, do you join in excluding --

16         DEFENDANT YANDELL:  Yes.

17         THE COURT:  All right.  Mr. Yandell also joins in the

18    request to exclude time, so time is excluded between now and

19    January 5th based on Local Code T4 giving counsel additional

20    time to prepare given the nature of the case.  It's also a

21    complex case.  The record here supports the exclusion of time.

22         On Mr. Yandell's issue, before we turn to the status

23    of counsel, will this be an issue regardless of whether or not

24    you have counsel, Mr. Yandell?

25         DEFENDANT YANDELL:  Yes, because I do believe -- I

26

1    think you are going to appoint another stand-by, right?

2              THE COURT:  Well, I'm not getting there yet.

3              DEFENDANT YANDELL:  All right then.

4              THE COURT:  It's tied to -- I mean, let's just --

5    regardless, are there specific impediments the Court previously

6    hasn't addressed to your having access to materials in the

7    jail?

8              DEFENDANT YANDELL:  No, your Honor.

9              THE COURT:  All right.  All right.  Well, let me --

10   I'm going to discuss that once we get through the status of

11   counsel with you.

12             DEFENDANT YANDELL:  Okay.

13             THE COURT:  I don't believe anyone but the government,

14   Mr. Chambers, Mr. Yandell need to remain at this point; agreed

15   Mr. Hitt?

16             MR. HITT:  I think that's right, your Honor, yes.

17             THE COURT:  Does any defense attorney, other than Mr.

18   Chambers, feel differently?  If so, please let me know.  I see

19   no one disagreeing.

20             So all those -- we'll give you a moment -- all those,

21   except Mr. Chambers, court staff, Mr. Yandell and marshals, as

22   necessary, are excused.

23             MR. CHAMBERS:  Your Honor, our investigator, M.E.

24   Greenberg is here.  Can she stay?

25             THE COURT:  All right.  Ms. Greenberg may stay, yes.

27

1      MS. MORRISSEY:  Your Honor, I'm sorry, I --

2      THE COURT:  I'm sorry, wait, wait, wait.  I didn't

3  understand, you have something to bring to the Court's

4  attention?

5      MS. MORRISSEY:  Yes, your Honor.  Marcia Morrissey for

6  Mr. Brady.  Perhaps I --

7      THE COURT:  Wait, wait.  I didn't understand Ms.

8  Morrissey has something to say to the Court, so we need to roll

9  back for a minute.

10      MS. MORRISSEY:  If the Court intends to address issues

11  of the confinement in the county jail, I would ask that the

12  rest of the lawyers who represent people who are in the

13  Sacramento County jail be allowed to be present, because

14  they -- this is an ongoing issue that involves everybody there,

15  not just Mr. Yandell.

16      THE COURT:  Well, I'm not going to address it

17  generally.  I think the question is depending on what I do on

18  the status of counsel, it may create a new situation for

19  Mr. Yandell.  Otherwise, the parties -- I've issued orders.

20  The parties can let me know if there's -- the orders aren't

21  being complied with, or if there's a new motion, I can consider

22  a new motion.

23      MS. MORRISSEY:  All right.  Thank you very much, your

24  Honor.

25      THE COURT:  Now all but government counsel, Mr.

28

1   Chambers, Ms. Greenberg, court staff are excused.

2           All right.  The courtroom has been cleared.  Let me

3   make one clarification.  So the Court is joined by its law

4   clerk, who is subject to the same restrictions that the Court

5   is, understands to the extent we have any in-camera session,

6   which I anticipate, that that is to be treated completely

7   confidentially.

8           The Court also has an extern, a law student.  I need

9   to make certain Mr. Yandell hears this.  There in the

10  courtroom, in the audience, Ms. Greenberg is there, the

11  investigator, but also there's a court extern who's a law

12  student, and --

13          DEFENDANT YANDELL:  I have no problem with anybody

14  staying, your Honor.

15          THE COURT:  All right.  Even during an in-camera

16  session?

17          DEFENDANT YANDELL:  Yes.

18          THE COURT:  All right.  Does anyone object to the

19  extern remaining for primarily pedagogical purposes?  The

20  extern does occasionally help with research.

21          Any problem with the extern remaining in the

22  courtroom?  Mr. Hitt?

23          MR. HITT:  No, your Honor.

24          THE COURT:  Mr. Chambers?

25          MR. CHAMBERS:  No, your Honor.

29

1          THE COURT:  All right.  Then the extern will remain.

2          All right.  This is on for status of counsel.  I

3     understand that you are requesting that Mr. Chambers be

4     relieved in his current capacity, correct, Mr. Yandell?

5          DEFENDANT YANDELL:  Correct, your Honor.

6          THE COURT:  And Mr. Chambers, you are also requesting

7     to be relieved; is that correct?

8          MR. CHAMBERS:  Yes, your Honor.

9          THE COURT:  All right.  So I believe I do need to have

10    a protected conversation with Mr. Yandell and Mr. Chambers, so

11    I would ask government counsel now to step outside the

12    courtroom.  We'll let you know when we're ready to call you

13    back.

14          MR. HITT:  Thank you, your Honor.

15          **(Whereupon, in-camera proceedings began at 9:41 a.m.**

16                **and concluded at 10:31 a.m.)**

17    **(In open court.)**

18          THE COURT:  All right.  From this point on, the

19    transcript will be unsealed, to the extent it's not covered by

20    the special protections for an in-camera session with

21    Mr. Yandell.

22          Mr. Hitt, we need to reconvene to follow up on what

23    the Court has learned, and so the Court is looking at either

24    Wednesday the 20th at 10:00 a.m. or Friday the 22nd at 10:00

25    a.m.  At this point probably slight preference for the 22nd,

30

1    given that Mr. Chambers may have a conflict on the 20th.

2              Would Friday the 22nd at 10:00 a.m. be available?

3              MR. HITT:  Not at 10:00 a.m.  I have a Ninth Circuit

4    oral argument at 9:30 that I'll be doing for my office, and I

5    don't know how long the calendar is, but if we said maybe 11:00

6    might be safe.

7              THE COURT:  All right.

8              MR. HITT:  The 22nd.

9              THE COURT:  Ninth Circuit does tend to put the clock

10   on attorneys.

11             MR. HITT:  They do, and sometimes I'm done within 15,

12   20 minutes, and other times there's a matter that is longer in

13   front of me so it can go longer, but I think 11:00 would be

14   safe.

15             THE COURT:  All right.  That work for you, Mr.

16   Chambers?

17             MR. CHAMBERS:  Yes, your Honor.

18             THE COURT:  All right.  Let's plan on Friday the 22nd

19   at 11:00 a.m.  I would anticipate we could -- an hour could get

20   done what the Court needs to get done.  I would anticipate

21   calling the matter, excusing the government.  Having a further

22   in-camera, and then figuring out where we're going from here.

23             All right.  I believe we're now concluded.  Anything

24   further, Mr. Hitt?

25             MR. HITT:  No, your Honor.

31

1          THE COURT:  Mr. Yandell?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Mr. Chambers?

4          MR. CHAMBERS:  No, your Honor.  Thank you for

5     indulging me with that long narrative.

6          THE COURT:  It's important to get the narrative

7     straight.

8          All right.  We'll see you on the 22nd at 11:00.

9          THE CLERK:  Court is in recess.

10          (The proceedings adjourned at 10:34 a.m.)

11                           --oOo--

12     I certify that the foregoing is a correct transcript from the

13     record of proceedings in the above-entitled matter.

14                          /s/ Tiphanne G. Crowe

15                          _____
                            TIPHANNE G. CROWE
16                          CSR No. 10958

17

18

19

20

21

22

23

24

25

# EXHIBIT B



**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney*
*Eastern District of California*

*Phillip A. Talbert*
*Acting United States Attorney*

---

| 501 I Street, Suite 10-100 | Phone | 916/554-2700 |
| Sacramento, CA 95814 | Fax | 916/554-2900 |
| | TTD | 916/554-2855 |

November 30, 2021

<u>E-MAIL and U.S. MAIL</u>

Kresta N. Daly, Esq.
Barth Daly LLP
P.O. Box F
Winters, California 95694

Richard G. Novak, Esq.
Law Offices of Richard Novak
P.O. Box 5549
Berkeley, California 94705-9991

> Re:   *United States v. Yandell, et al.*,
>        Case No. 2:19-cr-107 KJM
>        **Invitation to Submit Information to the United States Attorney Bearing on the
>        Decision Whether to Seek the Death Penalty Against Mr. Corbett**

Counsel:

The United States believes that your client could be charged with an offense subject to the death penalty, specifically a violation of Title 18 United States Code Section 1959(a)(1), murder in aid of racketeering.

This letter is to inform you that the United States Attorney is contemplating requesting authorization to seek the death penalty against your client. The United States Attorney believes that it would be useful to the decision-making process to receive a submission from you with information that may bear on the decision of whether to seek the death penalty. *See* Justice Manual § 9-10.080. If you wish to provide us with a submission, please do so by delivering a written submission to our office no later than February 25, 2022.

If we wish to meet with you in person to discuss your submission, we will contact you at a future date to arrange for a time to do so.

Please feel free to contact us if you have any questions.

Sincerely,

PHILLIP A. TALBERT
Acting United States Attorney

By: _____

JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys

2

# EXHIBIT C

LAW OFFICES OF
RICHARD G. NOVAK

65 N. Raymond Ave., Suite 320
Pasadena, CA 91103

December 11, 2021

Mr. Jason Hitt
Mr. Ross Pearson
Mr. David Spencer
Assistant United States Attorneys
Eastern District of California
509 I Street, Suite 10-100
Sacramento, CA 95814

   Re.: *United States v. Yandell, et al.*, Case No.  2:19-CR-00107-KJM

Dear Counsel,

We write in response to your letters of November 30, 2021, inviting counsel for Mr. Brady, Mr. Corbett, Mr. Daniel, and Mr. Sylvester to each provide you with a written submission by February 25, 2022, setting forth information which may bear on the decision of whether to seek the death penalty.  Since there are common concerns among counsel for the four defendants about our ability to meaningfully participate in the capital case protocol without further disclosures from the government and/or a superseding indictment having been returned, we thought it most efficient to communicate those concerns in a single letter.

As you know, the present indictment does not charge any of our clients, nor Mr. Yandell, with any offense punishable by death.  Instead, the indictment charges a racketeering conspiracy in violation of 18 U.S.C. § 1962(d), which includes several alleged homicides and homicide conspiracies, and there are multiple separate VICAR murder conspiracy charges.  Moreover, the indictment, returned on June 14, 2019, followed the filing of a criminal complaint on May 21, 2019 which also charged a racketeering conspiracy and numerous VICAR murder conspiracy charges.  There are some differences, as you know, between the conspiracy and the indictment as to who is alleged to have participated in each charged crime of violence.

You have suggested to us and to the court that the government presently prefers to not seek a superseding indictment until *after* the Attorney General decides whether to seek the death penalty as to any defendant.  However, we strongly believe that to require a defendant to make a written presentation under section 9-10.080 of the Justice Manual *before* a grand jury has actually returned a charge punishable by death creates a very serious risk that we will fail to address many of the factors that the Attorney General can be expected to consider and that we must be able to address in order to competently perform our constitutional function as counsel for defendants at risk of a capital prosecution.

We also note that at the hearing in this matter on October 13, 2021, Mr. Hitt represented to the court that the letter(s) we would receive from the government by the end of November 2021 would clearly disclose the "specific crimes to specific defense counsel and their clients that may be death-eligible".  He represented that the government would "formally lay[] out … our theory." "Here's the crimes that you have discovery on that we believe are -- could be the subject of a

superseding."  (The transcript is attached as a courtesy; please see pages 15-16) Your letters, frankly, make no effort to set forth that which you represented to the court you would communicate to the defendants at issue.

If this were a purely pre-indictment matter in which one defendant or a very small number of defendants were at risk of being indicted for a single homicide, a situation we usually only see in relation to investigations of homicides within federal prisons where the suspect is not on the verge of release, then it would be reasonable to ask counsel to make a written presentation before indictment.  However, the numerous potential capital offenses known to the government are identified in the complaint filed over 30 months ago, and there is at least one additional uncharged homicide addressed in detail in the discovery provided to date.  Thus, we do not think it is reasonable or consistent with the Justice Manual for the government to refrain from seeking, obtaining, and unsealing a superseding indictment in this type of matter until after counsel have made a mitigation presentation, absent the detailed letter you represented to the court we would each receive.  The letters do not identify the specific offense(s) as to which the government may seek death as to any defendant, they do not identify the eligibility factors, and they do not identify the statutory aggravators.  At a minimum, a superseding indictment would set forth these matters.  Superseding indictments charging death-eligible offenses often set forth non-statutory aggravators that the government may also seek to prove in penalty phase.

Additionally, as you know, one of the statutory mitigators that is set forth in the Federal Death Penalty Act addresses equally culpable defendants as to whom the government has decided not to seek the death penalty. 18 U.S.C. §3592(a)(4).  In a case such as this, relative culpability is a complex matter because not only are there individuals not charged in this case who may be viewed by a jury as equally culpable as to the murders that occurred pursuant to the charged RICO conspiracy, but there are already defendants in this case who may be viewed by a jury as equally culpable as to whom the government will not seek the death penalty.  We cannot address this important mitigating factor in our presentations to you based on the discovery provided to date.  We do not have a complete disclosure of the criminal records for each of the charged defendants in this matter, nor do we have the criminal records for individuals who are not charged in this case but who have been or who are presently charged in state court or other federal proceedings with homicides that fall within the scope of the racketeering conspiracy charged here.  We need those materials before we can fulfill our obligations to our clients in a competent manner.

As you know, we have informed the court that we agree with its inclination to set a deadline for a superseding indictment, a deadline for a decision by the Attorney General, and a non-capital trial date.  Without the information you promised to provide, as well as the additional information described above, it is very difficult for each of us to competently make a comprehensive mitigation presentation prior to the return of a superseding indictment.

LAW OFFICES OF
RICHARD G. NOVAK

65 N. Raymond Ave., Suite 320
Pasadena, CA 91103

We look forward to hearing from you concerning these important issues.

Very truly yours,

Richard G. Novak, on behalf of all
counsel for Pat Brady, Jason Corbett,
Brant Daniel, and William Sylvester

RGN: Encl.

cc:     Kresta Daly, Marcia Morrissey, John Manning,
        John Balazs, Tim Warriner, Mark Fleming, Hayes H. Gable, III

# EXHIBIT D



**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney*
*Eastern District of California*

*Phillip A. Talbert*
*United States Attorney*

---

| | |
|---|---|
| 501 I Street, Suite 10-100 | Phone  916/554-2700 |
| Sacramento, CA 95814 | Fax      916/554-2900 |
| | TTD   916/554-2855 |

December 27, 2021

E-MAIL and U.S. MAIL

| | |
|---|---|
| Marcia Ann Morrissey, Esq. | John R. Manning, Esq. |
| Law Office of Marcia Morrissey | Law Office of John R. Manning |
| 11400 West Olympic Blvd., Suite 1500 | 1111 H Street, Suite 204 |
| Los Angeles, California 90064 | Sacramento, California 95814 |
| Kresta N. Daly, Esq. | Richard G. Novak, Esq. |
| Barth Daly LLP | Law Offices of Richard Novak |
| P.O. Box F | P.O. Box 5549 |
| Winters, California 95694 | Berkeley, California 94705-9991 |
| John P. Balazs, Esq. | Timothy E. Warriner, Esq. |
| Law Office of John P. Balazs | Law Office of Timothy E. Warriner |
| 916 2nd Street, Suite F | 455 Capitol Mall, Suite 802 |
| Sacramento, California 95814 | Sacramento, California 95814 |
| Hayes H. Gable, III, Esq. | Mark Fleming, Esq. |
| Law Office of Hayes H. Gable, III | Attorney at Law |
| 1001 G Street, Suite 104 | 1470 Encinitas Blvd., Suite 133 |
| Sacramento, California 95814 | Encinitas, California 92024 |

Re:   *United States v. Yandell, et al.,*
        Case No. 2:19-cr-107 KJM
        **Response to Joint Defense Letter Dated December 11, 2021**

Counsel:

Thank you for your letter dated December 11, 2021.  In the letter, you write:

> You have suggested to us and to the court that the government presently prefers to
> not seek a superseding indictment until *after* the Attorney General decides
> whether to seek the death penalty as to any defendant. However, we strongly
> believe that to require a defendant to make a written presentation under section 9-
> 10.080 of the Justice Manual *before* a grand jury has actually returned a charge
> punishable by death creates a very serious risk that we will fail to address many of
> the factors that the Attorney General can be expected to consider and that we must

be able to address in order to competently perform our constitutional function as counsel for defendants at risk of a capital prosecution.

Joint Defense Letter, dated Dec. 11, 2021, at 1 (emphasis in original).

Given this position, the United States interprets each defense counsel as declining or waiving the opportunity for each capital-eligible defendant to provide a pre-indictment submission of information that may bear on the United States Attorney's decision of whether to seek the death penalty. *See* Justice Manual § 9-10.080.

If any counsel decides to take an alternative approach and provide a submission, the deadline for any such written submission to our office remains February 25, 2022.

Please feel free to contact us if you have any questions.

Sincerely,

PHILLIP A. TALBERT
United States Attorney

By: _____

JASON HITT
ROSS PEARSON
DAVID SPENCER
Assistant United States Attorneys

2