UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:19-cr-00107 KJM |
| Plaintiff, | |
| v. | ORDER |
| RONALD DEAN YANDELL, | |
| Defendant. | |

Defendant's motions for pretrial discovery, ECF Nos. 1023 and 1040, came on for hearing before the undersigned on May 4, 2022. Both motions were fully briefed. See ECF Nos. 1141 (opposition to ECF No. 1023), 1154 (reply); 1138 (opposition to ECF No. 1040), 1152 (reply). Assistant United States Attorneys Jason Hitt and David Spencer appeared for the United States; Bradley Levenson and Peter Arian appeared and argued for the defendant. Co-defendants Daniel Troxell, William Sylvester, Brant Daniel, Pat Brady, Jason Corbett and Justin Petty have each joined at least one of the motions; all were present along with their counsel. See ECF No. 1166. Having considered the briefs and arguments presented by the parties, the court now rules.

I.     BACKGROUND

Defendant Ronald Yandell and fourteen others have been charged with participating in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). The government alleges that defendant, a California state prisoner, is an Aryan Brotherhood ("AB") member who orchestrated drug trafficking and murders while incarcerated. During investigation of the case, the government

1

sought authorization for a wiretap on phones used by co-defendant Jeanna Quesenberry, who was not in custody at the time but was believed to be communicating with incarcerated AB members who possessed contraband cell phones. The wiretap was authorized by the district judge in July of 2016. Communications thereafter intercepted pursuant to the wiretap order included those between Quesenberry and Yandell.

Defendants were initially charged by criminal complaint on May 21, 2019. ECF No. 1. The 143-page affidavit in support of the complaint described various intercepted Yandell communications, detailed Yandell's alleged role in the AB's drug trafficking and alleges that he ordered other AB members to commit murders on behalf of the AB, detailed the alleged roles of other defendants in the conspiracy, and sets forth the government's theory of the AB as a criminal enterprise. Id. The grand jury returned an indictment on June 14, 2019. ECF No. 25.

Defendant's motion at ECF No. 1023 seeks discovery related to the wiretap affidavit referenced above. The motion at ECF No. 1040 seeks discovery related to the affidavit in support of the criminal complaint.

II.  STANDARDS GOVERNING DISCOVERY IN CRIMINAL CASES

A. Rule 16

Under Federal Rule of Criminal Procedure 16, the government must provide a criminal defendant with discovery of materials which are "within the government's possession, custody or control" and which are "material to preparing the defense." Rule 16(a)(1)(E), Fed. R. Crim. P. As the Ninth Circuit has stated:

> Rule 16 permits discovery that is relevant to the development of a possible defense. United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984). To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984). Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense. See Little, 753 F.2d at 1445; Cadet, 727 F.2d at 1466-68.

United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990). See also United States v. Zone, 403 F.3d 1101, 1107 (9th Cir. 2005).

With respect to the defendant's burden of making a prima facie showing of materiality in support of the request for discovery under Rule 16, it has been observed as follows:

> The materiality requirement…is not a "heavy burden"; rather, evidence "is material as long as there is a strong indication that … the evidence will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" United States v. Liquid Sugars, Inc., 158 F.R.D. 466, 471 (E.D. Cal. 1994). "[R]equests which are designed to generally cast for impeachment material…are not material. Such requests are instead simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful." Id. at 472.

United States v. Bergonzi, 216 F.R.D. 487, 501 (N.D. Cal. 2003). Nonetheless, where the government has shown that complying with a criminal defendant's discovery request under Rule 16 would be unduly burdensome, "it is incumbent on the district court to consider the government interests asserted in light of the materiality shown." Mandel, 914 F.2d at 1219 (citing United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984)). In the absence of the required factual showing from the defense, there is no basis upon which the court to exercise any discretion it has to order discovery. Id.

      B.  Constitutional Requirements

Under Brady v. Maryland, 373 U.S. 83, 86 (1963), the prosecution has a constitutional obligation to reveal exculpatory evidence when such evidence is "material" to the defense and in the possession of the government. While the Brady rule is to be interpreted broadly to encourage prosecutors to carry out their duty, it does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant. Smith v. Secretary, Dept. of Corrections, 50 F.3d 801, 823-24 (10th Cir. 1995) (citing Moore v. Illinois, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.")) Brady's disclosure requirement, grounded in the government's due process obligations, extends to potential impeachment information regarding witness credibility or bias. Giglio v. United States, 405 U.S. 150 (1972).

////

III.     DISCOVERY GOING TO WIRETAP AUTHORIZATION

A. Overview

The motion at ECF No. 1023 seeks documentation related to the factual allegations of the affidavit that was submitted in support of the wiretap application.  Defendant argues that this information is material both to preparation and litigation of a potential motion to suppress, and to general preparation of a defense to the charges.  The motion specifies 76 requests for production, many of which contain multiple subparts.  ECF No. 1023 at 10-20.[1]  The government counts 114 total requests.  ECF No. 1141 at 1.

B. Discovery Related to Suppression Issues

1. Authority for Discovery Related to Pretrial Matters

To the extent that defendant seeks information related to a potential suppression issue, the government argues first that Rule 16 does not contemplate or permit discovery related to pretrial issues.  The government relies on United States v. Armstrong for the proposition that Rule 16 is limited to discovery supporting "the defendant's response to the Government's case-in-chief." 517 U.S. 456, 462 (1996).  The Ninth Circuit Court of Appeals, however, whose interpretation of Supreme Court precedent is binding on this court, has clearly held that "Rule 16(a)(1)(E) permits discovery to determine whether evidence in a particular case was obtained in violation of the Constitution and is thus inadmissible" and that Armstrong does not require otherwise.  United States v. Soto-Zuniga, 837 F.3d 992, 1000-01 (9th Cir. 2016).  The court rejects the government's attempt to limit Soto-Zuniga to the immigration checkpoint context.

Moreover, Armstrong itself indicates that even without recourse to Rule 16, a defendant may rely on due process standards to seek discovery related to a potentially case-dispositive pretrial motion, assuming the defense can demonstrate the predicate for bringing such a motion. Armstrong, 517 U.S. at 465-66 (noting that defense could seek discovery related to selective prosecution claim on due process grounds, after making a strong initial showing of selective prosecution).  The Ninth Circuit has recognized that the government's due process obligation to

---

[1] Citations to documents filed in this case refer to the page numbers assigned by the court's electronic docketing system and not those assigned by the parties.

disclose exculpatory evidence extends to material that would be helpful to the defense regarding the suppression of evidence. See United States v. Gamez-Orduna, 235 F,.3d 453, 461 (9th Cir, 2000). For all these reasons, the undersigned concludes that Mr. Yandell may rely on Rule 16 as well as fundamental due process principles in seeking discovery related to the legality of the wiretap.

### 2. Standing to Bring Fourth Amendment Challenge to Wiretap

The government argues that defendant does not have standing to bring a suppression motion because he had no reasonable expectation of privacy in the contraband cell phone whose transmissions were intercepted. Because the exclusionary rule applies to violations of the Fourth Amendment right to privacy, a defendant can seek suppression on Fourth Amendment grounds only where a reasonable expectation of privacy has been invaded by the government. See Katz v. United States, 389 U.S. 347 (1967); Smith v. Maryland, 442 U.S. 735, 740 (1979) (applicability of Fourth Amendment turns on whether defendant can claim a justifiable, reasonable, or legitimate expectation of privacy). Accordingly, a defendant bears the burden of establishing a reasonable expectation of privacy in order to bring a challenge under the Fourth Amendment to a search or seizure. See United States v. Reyes-Bosque, 596 F.3d 1017, 1026 (9th Cir. 2010).

It is well established that incarcerated persons lack any protected privacy interest in their cells and personal property. See Hudson v. Palmer, 468 U.S. 517, 525-26 (1984) (no privacy interest in cell and its contents). Accordingly, the Fourth Amendment's warrant requirement and reasonableness standard do not apply to cell searches or the seizure of inmate property. Id. Several courts in the Ninth Circuit and elsewhere, applying Hudson, have concluded that prisoners have no reasonable expectation of privacy in using contraband cellphones and therefore cannot maintain Fourth Amendment claims based on seizure of the phones or their contents. See, e.g., Shea v. United States, 2016 U.S. Dist. LEXIS 194920, 2016 WL 3750975, at *5 (D. Nev. Apr. 16, 2016), adopted by 2018 U.S. Dist. LEXIS 133733, 2018 WL 3747282 (D. Nev. Aug. 7, 2018); Hayes v. Cal. Dep't of Corr. & Rehab., 2019 U.S. Dist. LEXIS 216049 at *4, 2019 WL 9362650 (C.D. Cal. Dec. 16, 2019); United States v. Bash, 2021 U.S. Dist. LEXIS 143002 at *10, 2021 WL 3207252 (E.D. Cal. Jul. 29, 2021).

Basic Fourth Amendment principles compel the same result in the context of intercepted communications using contraband cellphones. California Penal Code section 4576 prohibits a prisoner from possessing a cellular telephone. Because cellphones are contraband, California inmates can have no reasonable or legitimate expectation of privacy in communications that take place using them. See United States v. York, 2017 WL 5068143 at *4 (E.D. Cal. Sept. 29, 2017) (in light of Cal. Pen. Code § 4576, defendant "could have no reasonable expectation of privacy in communications that took place over his contraband cellular telephone" and thus lacked standing to challenge wiretap); United States v. Rodriguez, 2015 WL 468358 at *1 (S.D. Cal. Feb. 3, 2015) ("No court has ruled that a prison inmate has a reasonable expectation of privacy for communications he makes by cellular telephone.").

Defendant attempts to avoid the same result here by arguing that many of the cases cited by the government involved physical searches of contraband phones, and therefore do not apply to his claim of an expectation of privacy in the conversations he had using a phone. He implies that various cited wiretap decisions take Hudson too far given the distinction between physical devices and communications that are not stored on a device. Defendant draws a distinction without a difference. There can be no reasonable expectation of privacy in conversations conducted by means of a device illegally possessed by an incarcerated person. The question for Fourth Amendment purposes, whether the inquiry involves tangible objects or intangible communications, is whether the defendant's subjective expectation of privacy is one that society is prepared to recognize as reasonable—in other words, whether the individual's expectation is objectively justifiable under the circumstances. See Kyllo v. United States, 533 U.S. 27, 33 (2001); Smith, 442 U.S. at 741. Here the answer to that question, however phrased, is no.

Because inmate possession of cellphones is prohibited by law, any subjective expectation of privacy in conversations conducted on them is inherently unreasonable and illegitimate. Moreover, inmates well know that their permitted communications with people outside the prison, using permitted means, are subject to monitoring. This is true of prison social visits, of phone calls made from institutional landlines, and of non-legal mail. In this context, the use of a contraband phone clearly implies an intention to evade surveillance—which suggests a subjective

expectation of privacy, to be sure, but one which is entirely illegitimate. The unreasonableness of any expectation of privacy necessarily defeats any Fourth Amendment claim.

For these reasons, the court agrees with the government that Mr. Yandell lacks standing to bring a Fourth Amendment challenge to the wiretap. There is accordingly no basis for him to seek discovery that might be material to a Fourth Amendment claim.

### 3. Standing to Bring Challenge Under the Wiretap Act

Defendant argues in the alternative that he has standing to bring a statutory challenge to the wiretap as an "aggrieved person." Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq. ("The Wiretap Act") establishes elaborate provisions for the authorization of wiretaps in criminal investigations. See United States v. King, 478 F.2d 494, 498 (9th Cir. 1973). The Wiretap Act also provides as follows:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . of the United States . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that–
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

§ 2518(10)(a).

Mr. Yandell's phone was not the target of the wiretap, but his communications were intercepted and are being used against him. Accordingly, he is an "aggrieved person" who may challenge the validity of the wiretap order. See § 2510(11) (defining "aggrieved person" to include a party to an intercepted communication). However, this does not entitle defendant to the wide-ranging discovery he seeks. Having the status necessary for standing to bring a motion does not mean that defendant has any grounds for such a motion or any basis for related discovery. Section 2518(10)(a)(ii) allows for a substantive challenge to the facial sufficiency of the order authorizing the wiretap, making extrinsic facts utterly immaterial. Section 2518(10)(a)(iii) addresses discrepancies between the order of authorization and the interception at issue, but

defendant has identified no such alleged discrepancies. Nor has he demonstrated how any of the requested discovery is material to the interceptions' conformity with the order of authorization. This leaves section 2518(10)(a)(i)'s provision for a challenge to "unlawful interceptions" as the only possible basis for a suppression motion under the Act.

Defendant's theory of unlawfulness appears to incorporate his assertion that the wiretap, even if properly issued as to the target phone, violated his own Fourth Amendment rights. This theory fails because he had no protected Fourth Amendment privacy interests in the conversations, for the reasons already explained. This is not a situation in which a warrant legitimately issued as to one individual (or their residence, car, or communications devices) resulted in a search or seizure which violated the independent Fourth Amendment rights of a third party. Mr. Yandel had no independent Fourth Amendment rights in the communications. Defendant acknowledges in his reply brief that "Mr. Yandell's Title III suppression rights apply only if he has a reasonable expectation of privacy in not having his words or conversation overheard." ECF No. 1154 at 21.[2] This court's resolution of the Fourth Amendment issue thus defeats the Wiretap Act theory for discovery as well, despite defendant's theoretical standing to challenge the order of authorization.

    4. <u>Discovery in Search of a Franks Violation</u>

Defendant argues that even if he cannot challenge the interception of his communications as a Fourth Amendment violation, he may bring a motion under <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978), asserting that the wiretap affiant made false statements related to probable

---

[2] Defendant's briefing is internally inconsistent on this point, also arguing that cases denying statutory wiretap challenges for lack of a reasonable expectation of privacy are wrongly decided. See ECF No. 1154 at 23. These conflicting arguments appear at times to confuse issues of standing with substantive issues of lawfulness under the Fourth Amendment. In the context of a freestanding Fourth Amendment suppression claim, the absence of a reasonable expectation of privacy *both* defeats standing *and* demonstrates the absence of unlawful government action. In the context of a motion under the Act, however, standing to make the motion as an aggrieved party is one thing and the lawfulness of the interception is another. The statutory standing issue is independent of any expectation of privacy, and independent of the merits of a motion. As to the substantive suppression issue, however, an interception that has been properly authorized by a judicial officer pursuant to the Act can only be suppressed as "unlawful" if it exceeds constitutional limits. Without a reasonable expectation of privacy, there is no such unlawfulness.

cause. A Franks motion is certainly cognizable in the wiretap context, see United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir. 1985), but there is no such motion pending in this case. Defendant has not identified any allegedly false statements in the wiretap affidavit that might support such a motion, nor explained which of his 114 discovery requests are material to the veracity of a particular disputed assertion. It is well established that a defendant's general assertion that information might be material does not entitle the defense to an unlimited search of the government's files. Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987).

Defendant's theory of materiality on Franks grounds is entirely speculative. Neither Rule 16 nor due process principles entitle him to wide-ranging discovery in search of the basis for a Franks motion. See United States v. Lam, 2008 U.S. Dist. LEXIS 7729 at *7-8, 2008 WL 191420 at *2-3 (N.D. Cal. Jan. 22, 2008) (denying discovery into Franks issue because assertions of materiality speculative); United States v. Dossman, 2006 U.S. Dist. LEXIS 77272 at *5-6, 2006 WL 2927484 at *2 (E.D. Cal. Oct. 12, 2006) (denying discovery related to potential Franks motion where there been no substantial showing of entitlement to Franks hearing, and noting that defendant "cannot just guess at what the evidence might show and contend that it may be material if his guess is correct.").

5. Generalized Assertions of Materiality are Insufficient

As the government has emphasized, defendant's motion addresses the materiality of his many discovery requests both collectively and in highly general terms. This amounts to little more than an assertion that the requested information might be material, an assertion which does not require the prosecution to effectively open its files to the defense. Ritchie, 480 U.S. at 59. This issue is addressed at greater length below, as both of defendant's motions fail to provide more than conclusory allegations of materiality. Insofar as defendant seeks information with which to challenge the wiretap, his failure to articulate the materiality of his individual discovery requests in case-specific terms constitutes an alternative and independent basis for denial of the motion.

////

////

    C.  Wiretap-Related Discovery as General Rule 16 Discovery

To the extent that defendant seeks wiretap-related information not for purposes of challenging the validity of the wiretap but for the general defense purposes specified in Rule 16, the analysis merges with that which applies to the motion at ECF No. 1040. The court now turns to that motion.

    IV.    DISCOVERY INTO GOVERNMENT'S INVESTIGATION AND EVIDENCE GENERALLY

The motion at ECF No. 1040 seeks documents relevant to the factual allegations of the affidavit that was submitted in support of the criminal complaint. The motion specifies 17 categories of materials sought, each of which contains multiple individual requests. ECF No. 1040 at 8-23. The government counts 138 total requests. ECF No. 1138 at 1. Some of these requests identify particular documents or videos, others seek any and all materials related to broad categories of information. As with the wiretap motion, defendant seems to seek whatever evidence the affiant relied on (or disregarded) in making every factual allegation in the affidavit that involves Mr. Yandell's potential criminal culpability.

The court need not attempt to sort through the thicket of defendant's individual requests and the government's individual objections, because defendant's theory of materiality is conclusory throughout. "Neither a general description of the information sought nor conclusory allegations of materiality suffice" under Rule 16. United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995) (quoting Mandel, 914 F.2d at 1219). It is not enough to argue that the vast universe of information sought will help the defense prepare for trial because it all relates to the government's investigation of the case. See Cadet, 727 F.2d at 1468. That is doubtless true as a general proposition, but it is insufficient to trigger the court's obligation to balance the defense need for discovery against the burden imposed on the government.

It is defendant's obligation in the first instance to provide specific facts that demonstrate the prima facie materiality of its specific requests to specific trial issues. See United States v. Stever, 603 F.3d 747, 753 (9th Cir. 2010) (finding discovery appropriate where defendant made factual showing that evidence existed to support a specific affirmative defense); Cadet, 727 F.2d

at 1468 (finding discovery unavailable where defense requests were far-ranging and sought all material relevant to the case).  Mr. Yandell has not satisfied that burden.  See Mandel, 914 F.2d at 1219 (in the absence of the required factual showing from the defense, there is no basis upon which the court to exercise any discretion it has to order discovery).

V.     OTHER ISSUES

In light of the court's rulings on matters addressed above, the other issues raised by the parties—including the applicability of the informant's privilege and the propriety of early disclosure of Giglio and Jenks Act materials—need not be addressed.  The court notes that the government has been ordered pursuant to Rule 5(f), Fed. R. Crim. P., to produce all exculpatory evidence it is obliged to disclose under Brady v. Maryland, supra, and progeny.  ECF No. 1166. There is nothing more for the court to do in this regard.

VI.    CONCLUSION

For the reasons explained above, IT IS HEREBY ORDERED that defendant's motions for discovery (ECF Nos. 1023 and 1040) are DENIED without prejudice.

DATED: May 19, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11