# EXHIBIT "A"

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 18-02719-TUC-RCC (BGM) |
| Plaintiff, | |
| v. | **ORDER** |
| Ryan Phillip Schlesinger, | |
| Defendant. | |

**IT IS ORDERED** Defendant's Motion to Submit Proposed Order (Doc 408) is GRANTED.

**IT IS HEREBY ORDERED** that the Clerk's Office make records pertaining to this district's grand jury selection process available to the defense and its expert.

**IT IS FURTHER ORDERED** that access to records of the Clerk of Court regarding the jury selection process, including but not limited to the following materials:

1.  **Jury plan.** The jury plan for the District of Arizona currently in effect, as well as the jury plan for the District of Arizona in effect at the time grand jurors returned the superseding indictment[1] (ECF No. 192) in this case. This plan is believed to be In the Matter of Jury Selection Plan, General Order 18-22.

2.  **COVID-19 Jury Plan**. Any temporary Juror Selection Plan or Order utilized to accommodate the ongoing COVID-19 pandemic.

3.  **Administrative Forms**. Any forms created that relate to the district and Tucson Division master jury wheels and qualified jury wheels used to summon grand jurors who returned the superseding indictment in this case. *See* 28 U.S.C. § 1863(a). This includes Form AO-12.

---

[1] This order relates only to information and materials related to composition of the grand jury that returned the superseding indictment on September 30, 2020. ECF No. 192.

4. **Data**. Any statistical or demographic analysis produced to ensure the master jury wheels and qualified jury wheels used to summon grand jurors in this case comply with the district's current jury plan, Jury Selection and Service Act, and constitutional requirements. This includes any audits or inquiries made by the district judges or Clerk.

5. **Wheel refill date**. The date when the master jury wheel was used to summon grand jurors in this case was last refilled.

6. **General notice**. The general notice explaining the process by which names are periodically and randomly drawn.

7. **Purge procedures**. A description of the procedures used to purge duplicate records.

8. **Purge information**. Any report or analysis of the procedures used to purge duplicate records.

9. **Proportionality calculations**. The equation used to ensure proportional county representation in the grand jury. The grand jury in this case could have been created from a divisional pool (Tucson division), combined divisional pool, or entire district pool.

10. **Procedures for non-responses.** The procedures implemented to address prospective grand jurors who do not respond to a juror qualification form or have their juror qualification form returned by the postal service as undeliverable.

11. **Information on supplemental draw.** Any report or analysis on implementing the supplemental draw.

12. **Information on failure-to-submit**. Any reports or analysis on the failure to submit a juror qualification questionnaire.

13. **Summons date**. The date when grand jurors were summoned in this case.

2

14. **Grand jury basis**.  The basis (divisional, combined, or entire district) for the grand jury in this case.

15. **Division or combined ratio**.  If the grand jury is impaneled in combined divisions or in the entire district, the calculation of the ratio and number of grand jurors from each division.

16. **Numbers summoned**.  The number of persons summoned from the qualified jury wheel to be considered as grand jurors in this case.

17. **Master wheel data**.  Master jury wheel data on the following: juror number, race, gender, ethnicity, birth year, zip code, city, county, and jury division.  The date should be in electronic and accessible form.

18. **Qualified wheel data**.  Qualified jury wheel data on the following: juror number, race, gender, ethnicity, birth year, zip code, city, county, and jury division.  The data should be in electronic and accessible form.

19. **Status codes**.  Status codes for potential jurors who were selected from the master jury wheel for qualification who either had their qualification form returned by the postal service, did not respond, or were disqualified or exempted from jury service.  The date should be in electronic and accessible form and should include the following information: juror number, whether the form was returned undeliverable, whether the form was not returned, reason for disqualification, race, gender, Hispanic ethnicity, birth year, zip code, city, county, and jury division.

20. **Replaced juror numbers**.  The juror numbers (not name or address) of persons whose qualification notice/forms were replaced as part of the supplemental draw.

21. **Replacing juror numbers**.  The juror numbers (not name or address) of persons who were selected to replace an undeliverable or unanswered qualification notice as part of the supplemental draw.

3

22. **Failure to appear or submit**.  The juror numbers of persons summoned to appear for either failure to submit a juror qualification questionnaire or appear.

23. **Grand juror numbers**.  The juror identification numbers for persons selected as potential grand jurors in this case.

24. **Grand jury data sources**.  The data sources, such as the voter registration list, in electronic form for the master jury wheel used to summon grand jurors in this case.  The data should include the following: race, gender, ethnicity, birth year, zip code, city, county, and jury division.  No personal information, such as name or address, should be shared.

25. **Other Forms**.  The juror qualification and summons forms for persons summoned to potentially become grand jurors in this case.  The personal information of the juror can be redacted here.

26. **Disposition for each juror**.  The disposition of each summoned potential grand juror in this case as to excusal, deferment, disqualification, or selection.  The personal information of the juror can be redacted here.

27. **COVID-19 adjustments.**  Any policies and procedures enacted for summoning and enlisting grand jurors due to the COVID-19 pandemic.

28. **COVID-19 related orders.**  Any court orders entered for summoning and enlisting grand jurors due to the COVID-19 pandemic.

29. **The information will be provided by the Jury office within 30 days.**

Dated this 9th day of March, 2022.

_____

Honorable Raner C. Collins
Senior United States District Judge

4

# EXHIBIT "B"

# EXHIBIT "B"

2021 WL 1662441
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

UNITED STATES of America, Plaintiff,

v.

Miguel RAMIREZ-ORTIZ, Defendant.

Case No.: 20-CR-2667-GPC
|
Signed 04/28/2021

**Attorneys and Law Firms**

Nicholas Jordan Hernandez, Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for Plaintiff.

Federal Defenders, Public Defender, Zainab Khan, Public Defender, Federal Defenders of San Diego, San Diego, CA, for Defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ACCESS TO GRAND JURY AND JUROR RECORDS

[ECF No. 32]

Gonzalo P. Curiel, United States District Judge

### INTRODUCTION

**\*1** Defendant Miguel Ramirez-Ortiz ("Defendant" or "Ramirez") moves for access to jury selection records and grand jury materials. ECF No. 32. The Government has filed its response in opposition, ECF No. 34, and Defendant filed a reply. ECF No. No. 35. Hearings were held on the motion on March 17 and April 14, 2021. Upon review of the pleadings and consideration of the arguments of counsel and the applicable law, Defendant's motions are GRANTED in part and DENIED in part.

### A. BACKGROUND

On September 1, 2020, during the COVID-19 pandemic, a grand jury returned an indictment against Ramirez, charging him with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841 (a)(1). The grand jury that returned the indictment was impaneled on November 19, 2019. On March 17, 2020, due to the COVID-19 pandemic, Chief Judge Larry Alan Burns issued an order suspending grand jury proceedings until April 16, 2020. (Order of the Chief Judge ("OCJ") #18.) On April 15, 2020, Chief Judge Burns issued an order extending the suspension of grand jury proceedings until May 16, 2020. (OCJ #24.) On May 14, 2020, Chief Judge Burns provided grand jurors a Letter with attached COVID-19 Precautions. On May 15, 2020, Chief Judge Burns issued an order that permitted grand jury proceedings to resume starting on May 20, 2020, stating that the grand jury proceedings "may be conducted subject to limitations imposed by the Court in consultation with the United States Attorney's Office." (OCJ #27.)

On March 16, 2021, Defendant filed a motion seeking 23 categories of documents relying on the Jury Selection and Service Act of 1968 and the Sixth Amendment. ECF No. 32. As an initial matter, Mr. Ramirez-Ortiz declares that he intends to use the records produced to "determine whether [there is] a potentially meritorious jury challenge" under the JSSA. *Id.* at 7. However, it appears that the motion is primarily prompted by concerns that the Clerk and Court would have responded to the pandemic in ways that denied the Defendant his Sixth Amendment right to a representative grand and petit jury. *Id.* at 1. He also seeks records that are described as "ministerial" which bear on grand jury procedures under Federal Rule of Criminal Procedure 6. *Id.*

### B. LEGAL STANDARD

The Jury Selection and Service Act of 1968 (the "JSSA"), 28 U.S.C. §§ 1861–67, implements "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." *Id.* § 1861. This policy is consistent with the Sixth Amendment guarantee of "a jury drawn from a fair cross section of the community." *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1158-59 (9th Cir. 2014). At the same time, a defendant is not entitled to a jury of any particular composition. *United States v. Mitchell*, 502 F.3d 931, 951 (9th Cir. 2007) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975))

**\*2** Under the JSSA, each district must "devise and place into operation a written plan for random selection of grand and petit jurors" that complies with the JSSA's procedural and

substantive requirements. 28 U.S.C. § 1863(a). At the time that the indictment was returned in this case, the Southern District of California had implemented its Jury Plan in Civil Rule 83.10. See Civil Rule 83.10 Jury Selection Plan (adopted November 19, 2019). The grand jury that indicted Defendant was impaneled November 19, 2019 prior to the pandemic. With respect to the petit jury panel in this case, a jury trial has not been set and it is unknown whether the Jury Plan will be affected, if at all.

As an enforcement mechanism, the JSSA permits a criminal defendant to "move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury." 28 U.S.C. § 1867(a). Such a motion may be brought to establish either a violation of the basic fair cross section right, see *United States v. Patel*, 996 F.2d 1229 (9th Cir. 1993), or a "substantial failure to comply" with specific procedures required by the Act, *see United States v. Erickson*, 75 F.3d 470, 477 (9th Cir. 1996). The JSSA bars access to "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process" while a case is pending, except "as may be necessary in the preparation or presentation of a motion" by a party claiming a violation of the JSSA. 28 U.S.C. § 1867(f). The defendant "shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." *Id.*

The U.S. Supreme Court has observed that, under § 1867(f), "a litigant has essentially an unqualified right" to inspect the jury selection materials described therein. *Test v. United States*, 420 U.S. 28, 30 (1975). As the Supreme Court has explained, "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Id.*; *see also United States v. Beaty*, 465 F.2d 1376, 1382 (9th Cir. 1972) (holding that defendant "had a right to make the inspection before he made a motion to challenge the jury under § 1867(a)"). Moreover, access to the relevant records may not be conditioned on a defendant first showing a probability of success on the merits of the jury challenge. *Id.* at 1380–81; *see also United States v. Diaz*, 236 F.R.D. 470, 477 (N.D. Cal. 2006). However, the JSSA "is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of Court." *United States v. Rice*, 489 F.Supp.2d 1312, 1316 (S.D. Ala. 2007).

Defendants seek the requested documents in order to determine whether to file a motion challenging the selection of the grand jury under 28 U.S.C. § 1867(a). In this regard, he seeks to enforce his unqualified right to records or papers that were used by the Clerk to determine the composition of the grand jury that indicted him. In addition to relying on his unqualified right to records, Defendant also asserts that the COVID-19 pandemic "specifically, the different experiences of and reactions to the pandemic among distinctive groups, as well as changes in Southern District policy in response to the virus—has raised additional reason for concern." *Id.* at 8.

## C. DISCUSSION

### 1. Requests for Records

While the Government does not dispute that Defendant has an unqualified right to the "records or papers used by the ... clerk in connection with the jury selection process" in order to determine whether to file a § 1867(a) motion, the parties disagree as to what qualifies as records or papers used by the clerk in connection with the jury selection process. *See* Opp. at 3-4. The Court therefore will address each of the categories of requested documents and determine whether they are covered by the JSSA.

**\*3** At the outset, the Court agrees with the parties that information sought to challenge the selection of the petit jury is premature. Accordingly, to the extent the requests below are granted, at this time they are granted only with respect to the selection of the grand jury that returned the indictment in Defendant's case. 1) The Juror Selection Plan for the Southern District of California currently in effect and at the time grand jurors were summoned in this case, or confirmation that that plan has at all such times been codified in its entirety at Local Civil Rule 83.10.

ORDER: The Government does not oppose this request but notes that it is moot "because the current and former Jury Selection Plans are available on the Court's public website." Opp. at 9. However, it appears that the Court's public website only has available Jury Selection Plans dating back to General Order #147-H, which was adopted on October 15, 2020. The Court will therefore GRANT this request to the extent it

relates to the previous Jury Selection Plan found in former Civil Rule 83.10 Jury Selection Plan. The Court will direct the Clerk to provide the Jury Selection Plan that was in effect at the time grand jurors were summoned in this case.

2. Any temporary Juror Selection Plan or Order utilized to accommodate the ongoing COVID-19 pandemic.

ORDER: The Court has been informed by the Clerk that there has been no temporary Juror Selection Plan or Order used to accommodate the pandemic. The Court therefore DENIES this request as MOOT.

3) Any Divisional or District AO-12 or JS-12 forms created which relate to the Master Jury Wheel and the Qualified Jury Wheel that were used to summon grand or trial jurors in the case. (⚖ Title 28 U.S.C. § 1863(a) requires the district courts to submit these forms at the appropriate times.)

ORDER: The Court GRANTS this request. The Court is informed that Defendant has the 2018 and 2019 AO-12 forms and will direct the Clerk to provide any other AO-12 forms that may exist that are responsive to the request.

4) Any other statistical or demographic analyses produced to ensure the quality of the Master Jury Wheel and Qualified Jury Wheel used to summon grand jurors in this case, and to ensure those Wheels' complied with applicable law and the Constitution.

ORDER: The Court has been informed by the Clerk that there are no statistical or demographic analyses produced other than the AO-12 forms.

5) The date when the Master Jury Wheel that was used to summon grand jurors in this case was refilled.

ORDER: The Government does not oppose this request but notes it is moot because the information is contained on the AO-12s possessed by Defense counsel. Opp. at 9. On reply, Defendant does not contend that the AO-12s are insufficient to determine the information sought in this request. Thus, Defense counsel either already possesses the information or would obtain the information if any other relevant AO-12 forms are produced pursuant to the Court's order with respect to Request #3. The Court therefore finds this request MOOT.

6) The "general notice for public review ... explaining the process by which names are periodically and randomly drawn," 28 U.S.C. § 1864(a), or confirmation that Local Civil Rule 83.10 fulfills that obligation in its entirety.

ORDER: The Government does not oppose this request, but states it is moot because this information is available on the Court's public website. Opp. at 10. However, the Court notes that Local Civil Rule 83.10 is no longer in force and is not available on the Court website. *See generally* Civ. L.R.; G.O. #147-J. The Court GRANTS the request and will direct the Clerk to provide the "general notice for public review ... explaining the process by which names are periodically and randomly drawn" that was applicable on the date when the grand jurors were summoned and/or empaneled in this case, or to confirm that former Local Civil Rule 83.10 fulfilled this obligation in its entirety as of the date when the grand jurors were summoned and/or empaneled in this case.

7) The date when grand jurors were summoned and/or empaneled in this case. ORDER: The Government does not oppose this request. Opp. at 9. The Court therefore GRANTS this request.

8) The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

ORDER: The Government does not oppose this request to the extent it is sought to challenge the selection of the grand jury in this case. Opp. at 9. The Court therefore GRANTS this request. The Clerk of Court shall provide this information to the extent that this information is retained.

9) The calculations of proportionality as described in Local Civil Rule 83.10(d)(3). ORDER: The Government opposes the request as a "non-juror selection record." *See* Opp. at 11. The Court disagrees. The former Local Civil Rule 83.10(d)(3) provided that "random selections of names from the master jury wheel, including source lists by data computer personnel, must ensure that each county within the district is substantially proportionately represented in the master wheel in accordance with ⚖ 28 U.S.C. § 1863(b)(3)." Civ. L.R. 83.10(d)(3) (former). Any calculation of the county proportionality in the master jury wheel is therefore "used by the jury commission or clerk in connection with the jury selection process." ⚖ 28 U.S.C. § 1867(f). Further, it could potentially support either a challenge under the JSSA based upon a substantial deviation from the Court's Jury Selection Plan or a fair cross section claim. *E.g.*, *United States v. Holmes*, No. 18-CR-00258-EJD-1, 2020 WL 5408163, at *6 (N.D. Cal. Sept. 9, 2020); *United States v. Cloud*, No. 1:19-CR-02032-SMJ-01, 2020 WL 4381608, at *3 (E.D. Wash. July 27, 2020). The Court therefore GRANTS the request insofar as the Clerk's Office retains such information with

respect to the master jury wheel from which Defendant's grand jury was drawn; however, the Clerk's Office shall not be required to undertake any new calculations. *See United States v. Corbett*, No. 20-CR-213(KAM), 2020 WL 5803243, at *9 (E.D.N.Y. Aug. 21, 2020), *reconsideration denied*, No. 20-CR-213(KAM), 2020 WL 5802315 (E.D.N.Y. Sept. 29, 2020); *United States v. Fitzgerald*, No. 1:17-CV-00506, 2021 WL 1206556, at *3 (D. Md. Mar. 31, 2021).

10) The calculations of proportionality as described in the Local Civil Rule 83.10(e)(7)(A).

**\*4** ORDER: The Court GRANTS this request with respect to the qualified jury wheel to the same extent as Request #9.

11) The Master Wheel as described in Local Civil Rule 83.10(d), in electronic and accessible form.

ORDER: Several of Defendant's requests seek personal identifying information of the jurors pursuant to a protective order. *See* Mot. at 13. Although Defendant maintains that such information is necessary for his expert to track jurors through different data sets, this is inconsistent with the declaration previously filed by the expert, *see* ECF No. 24-1 ¶¶ 7, 13–15, and many courts that have considered this issue have refused to permit disclosure of personally identifying information. *E.g.*, *United States v. Todd*, No. 20-CR-256 (KAM), 2020 WL 5981673, at *3 (E.D.N.Y. Oct. 8, 2020); *Fitzgerald*, 2021 WL 1206556, at *3; *Cloud*, 2020 WL 4381608, at *5–6; *United States v. Shader*, 472 F. Supp. 3d 1, 4 (E.D.N.Y. 2020). The Court finds that personal identifying information such as the juror's name, address, and exact date of birth is unnecessary for the preparation of Defendant's motion.

Defendant alternatively requests "that the materials be redacted to show Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, County, and Zip Code," and describes this as "the minimum information Mr. Martin needs to do his work effectively." ECF No. 35 at 10. The Court finds that such information may be necessary to the preparation of a motion that challenges the procedures under the JSSA or that presents a fair cross section of the community claim. Contrary to the Government's suggestion, Defendant need not present an articulable claim before gaining access to these materials.

*See* 🚩*Beaty*, 465 F.2d at 1382; *cf. Todd*, 2020 WL 5981673, at *4 (granting similar request); *Shader*, 472 F. Supp. 3d at 6 (same); *Holmes*, 2020 WL 5408163, at *5 (same).

The Court therefore GRANTS in part and DENIES in part Defendant's request. The Court will direct the Clerk to produce the master jury wheel from which the grand

jury that returned the indictment in Defendant's case originated, subject to redactions of the juror's name, address, date of birth (other than year), and any other personal identifying information excluding "Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, County, and Zip Code."

12) The Qualified Jury Wheel as described in Local Civil Rule 83.10(e), in electronic and accessible form.

ORDER: The Court GRANTS in part and DENIES in part this request to the same extent as Request #11. The Court will direct the Clerk to produce the qualified jury wheel from which the grand jury that returned the indictment in Defendant's case originated, subject to redactions of the juror's name, address, and any other personal identifying information excluding "Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, County, and Zip Code."

13) Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification but either had their qualification form returned by the postal service, did not respond, or were disqualified or exempted from jury service. The data should be in electronic and accessible form. For each juror, the data should include whether the form was returned Undeliverable, whether the form was Not Returned, and Reason for Disqualification.

ORDER: The Government contends that this information would not be relevant to a motion under 🚩28 U.S.C. § 1867. However, this information could potentially demonstrate whether the District's juror selection processes cause jurors from particular groups to be disproportionately disqualified or excused from jury service, or whether any differences are instead due to response rates. *See Todd*, 2020 WL 5981673, at *5 (granting similar request); *Fitzgerald*, 2021 WL 1206556, at *6 (granting request for excuses given by potential jurors). The information would also be relevant to a claim that the jury selection process substantially fails to comply with the JSSA. *See Holmes*, 2020 WL 5408163, at *5 (noting how information related to excusal and disqualification could be relevant to a JSSA claim); *cf.* 🚩*United States v. Erickson*, 75 F.3d 470, 477 (9th Cir. 1996) (noting that the JSSA's goals include "determining disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only.").

**\*5** As for the Government's contention that disclosure of grand jury records is not permitted for a challenge

against minor infractions of the JSSA, the Court notes that Defendant will be unable to determine whether any violation is substantial or *de minimis* without access to the underlying information. *Contra* 🚩 *Diaz*, 236 F.R.D. at 483. The Court accordingly GRANTS the request. The Court therefore will direct the Clerk to provide this information to the extent it is retained, with any personal identifying information redacted.

14) All persons and their juror status for persons whose juror summons and qualification form were not returned or returned as undeliverable.

ORDER: The Court GRANTS the request for the reasons outlined above as to Request #13. The Court therefore will direct the Clerk to provide this information to the extent it is retained, with any personal identifying information redacted.

15) All persons summoned to appear in the Clerk's Office to complete a personal interview with the clerk as described in Local Civil Rule 83.10(d)(7)(C).

ORDER: The Court has been informed that the Clerk's Office does not summon individuals to appear for a personal interview.

16) All persons selected as potential grand jurors in this case.

ORDER: The Government opposes this request to the extent Defendant seeks the information of persons actually selected as grand jurors in this case, and notes that otherwise request is duplicative of Request #12. Opp. at 14. Defendant replies that he does not contend that this data alone would support a JSSA challenge but is requesting this data is to conduct an accuracy check to determine whether the Clerk's Office provided master and qualified wheel data for the wrong year. ECF No. 35 at 12. The justification offered for the data appears to be only tangentially related to the preparation of Defendant's motion and thus not information that "may be necessary" to the preparation of a motion. Given that the defendant is not entitled to a grand jury that reflects a fair cross section of the community, the Court DENIES this request.

17) The sources of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in Local Rule 83.10(d)(1)–(2). ORDER: The Court finds this information, to the extent it is retained by the Clerk's Office, qualifies as a record used by the Clerk in connection with the jury selection process that may be necessary for the preparation of a motion challenging the creation of the master

wheel. 18 U.S.C. § 1867(f); *cf. United States v. Eldarir*, No. 20-CR-243 (LDH), 2020 WL 6545894, at *5 (E.D.N.Y. Nov. 6, 2020) (granting similar request); *Shader*, 472 F. Supp. 3d at 6 (same); *Cloud*, 2020 WL 4381608, at *5 (same). The Court therefore GRANTS the request, subject to the restrictions on revealing personal identifying information noted above.

18) The juror qualification and/or summons forms for persons summoned to potentially become grand or trial jurors in this case.

ORDER: The Court finds that the disclosure of this information, with appropriate protection of personal identifying information, is consistent with 18 U.S.C. § 1867(f). The Court disagrees with the Government that the information is protected from disclosure under Federal Rule of Criminal Procedure 6(e), as juror qualification forms are used to determine whether an individual will be qualified to serve on a grand jury, prior to any grand jury being impaneled.

Opp. at 14; *cf.* 🚩 *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993) (citation omitted) (the purpose of Rule 6(e) is "only to protect against disclosure of what is said or takes place in the grand jury room"). The Court thus GRANTS the request for the same reasons as Requests #13 and #14. *See Todd*, 2020 WL 5981673, at *6 (granting similar request); *cf.* 🚩 *Hirst v. Gertzen*, 676 F.2d 1252, 1259 (9th Cir. 1982) (noting that returned jury qualification forms could reveal whether intentional discrimination infected selection process). However, the Court is cognizant of the privacy concerns that may arise were these forms to be produced and distributed outside of the Clerk's Office. The Court therefore will direct the Clerk to permit inspection of these forms in the Clerk's Office by Defendant's counsel, subject to the protective order below.

**\*6** 19) Any temporary or alternative juror qualification and/ or summons forms utilized to accommodate the ongoing COVID-19 pandemic.

ORDER: Defendant agrees with the Government that this request is premature, because the grand jury would not have received qualification or summons forms affected by the pandemic and the jury trial has not yet been scheduled. Opp. at 14; ECF No. 35 at 7. The Court therefore considers this request withdrawn.

20) The disposition of each summoned grand or trial juror in this case as to excusal, deferment, disqualification or selection.

ORDER: The Court finds this information would be necessary for Defendant to determine whether the post-summons jury selection process substantially failed to comply with the JSSA and would also be relevant to a fair cross-section claim. This information could reveal whether groups were excused, deferred, or disqualified at substantially different rates, which could indicate that the selection process is not sufficiently "random" or fails to substantially comply with the JSSA. The Court therefore GRANTS the request for the same reasons as Requests #13, #14, and #18. *Cf. Holmes*, 2020 WL 5408163, at *7 (granting similar request); *Todd*, 2020 WL 5981673, at *6 (same). The Court therefore will direct the Clerk to provide this information to the extent it is retained, with any personal identifying information redacted.

21) The attendance record and reason for absence by date for each grand juror. ORDER: The Court notes that the Ninth Circuit in *In re Special Grand Jury* raised the possibility, but refrained from holding, that attendance records and records of substitutions could "run[ ] afoul of the doctrine of grand jury secrecy" in the context of the public right of access to judicial records and outside of the right afforded to a defendant under

§ 1867(f). *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 782, n.4 (9th Cir. 1982). As such, 28 U.S.C. § 1867(f) may provide a basis for broader disclosure than what was suggested in that case, given that the statute provides for the disclosure of records not otherwise available to the public. 28 U.S.C. § 1867(f). But the limited exception in 28 U.S.C. § 1867(f) cannot be read so broadly as to swallow the long-standing rule regarding the secrecy of grand jury proceedings. Indeed, courts have determined that revealing the names of grand jurors would impinge upon the ability of potential future grand jurors to deliberate freely or otherwise is protected from disclosure under the grand jury secrecy doctrine. *See, e.g., Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987). Here, Defendant has not provided a particular need for his request as it relates to the grand jurors' identities.

However, attendance records that are redacted for personal identifying information—such that Defense counsel can track whether a particular juror was excused and substituted but not discern her actual identity—would not appear to run afoul of the policies underlying the grand jury secrecy doctrine. *Accord United States v. Morrell-Corrada*, Cr. No. 04-160 (PG), 2004 WL 7336971, at *3 (D.P.R. Nov. 9, 2004). Although Defendant is not entitled to a representative grand

jury, the composition of the grand jury and reasons for absences would be relevant to determine whether COVID-19 caused the District to deviate from its jury selection plan. The Court therefore GRANTS in part Defendant's request to the extent it seeks attendance records for March 15 through September 1, 2020. The Court will direct the Clerk to provide this information, to the extent it is available, with personal identifying information redacted.

**\*7** 22) All persons who were selected to sit on the grand jury but were subsequently replaced, and all persons selected to replace them. The data should include who replaced whom, and whether the replacement juror was selected as an alternate under Local Civil Rule 83.10(e)(7)(a) and/or Federal Rule of Criminal Procedure 6(a)(2).

ORDER: The Court GRANTS in part Defendant's request for the same reasons as Request #21. The Court will direct the Clerk to provide this information, to the extent it is available, with personal identifying information redacted.

23) Any communications with grand jurors related to the COVID-19 pandemic. (Mr. Ramirez-Ortiz does not seek any communications that were delivered "before the grand jury" in the meaning of Rule 6(e), but instead seeks communications that were made outside the jury room.)

ORDER: The Court finds this request relates to Defendant's theory that COVID-19-related changes to the District's procedures may have disparately impacted jurors or caused deviations from the jury selection plan, and thus appropriately falls under 18 U.S.C. § 1867(f). As to the Government's objection, the Court fails to see how disclosure of precautions taken with respect to COVID-19, subject to a protective order, would risk jeopardizing the grand jurors' ability to deliberate freely and have witnesses testify fully, as the Government suggests. Opp. at 21. The Court therefore GRANTS in part the request and directs the Clerk to provide any such communications that were made with the grand jury impaneled for Defendant's case.

### 2. Requests for Grand Jury Materials

Rule 6(e)(3)(E)(ii) holds that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury ... at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before a grand jury[.]" Fed. R. Crim. P. 6(e)(3)(E)(ii).

Disclosure of grand jury proceedings is available only by court order, and a defendant bears the burden of establishing a "particularized need" or "compelling necessity" for disclosure which outweighs the policy of grand jury secrecy.

Fed. R. Cr. P. 6(e); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 (1979). "To make public any part of [the grand jury's] proceedings would inevitably detract from its efficacy." *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400 (1959).

"A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists which outweighs the policy of secrecy." *United States v. Walczak,* 783 F.2d 852, 857 (9th Cir. 1986) (internal citation and quotation omitted). "A defendant's particularized need must be based on more than mere speculation." *United States v. Reed,* 156 F.3d 1241 (9th Cir. 1998) (citing *id.*).

"The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not." *United States v. Alter,* 482 F.2d 1016, 1029 n.21 (9th Cir. 1973). In the context of "grand jury ministerial records," the Ninth Circuit has recognized a public right, "subject to the rule of grand jury secrecy, of access to the ministerial records in the files of the district court having jurisdiction of the grand jury." *In re Special Grand Jury,* 674 F.2d at 780-81.

Here, Defendant has requested access to "any and all information concerning any *procedural* changes to the grand jury as a result of the COVID-19 pandemic, between January 2020 and the present," including but not limited to: (a) "the charges, instructions, and directions grand jurors have received regarding their ability to request witnesses or evidence," (b) "the charges, instructions, and directions grand jurors have received regarding whether there are any limitations on which witnesses or evidence the grand jury may request, e.g., whether they are permitted to call non-government witnesses," (c) "the charges, instructions, or directions grand jurors received for the process by which they may call non-government witnesses during the pandemic," (d) "a transcript of the instructions given in his case," (e) "whether witnesses testify in person, over video or teleconference, or both," (f) "whether video teleconferencing or teleconferencing is utilized in any other way for grand

jury proceedings," and (g) "what precautions are taken to protect live witnesses before the grand jury from spreading or contracting the virus." Mot. at 17.

Charges, Instructions and Directions Grand Jurors received

**\*8** In requests (a), (b), (c) and (e), Defendant requests charges, instructions, and directions grand jurors received regarding (a) their ability to request witnesses or evidence; (b) whether there are any limitations on which witnesses or evidence the grand jury may request; (c) the process by which they may call non-government witnesses during the pandemic; and (e) whether witnesses may testify in person, over video or teleconference, or both. The United States opposes each request on the grounds that Defendant seeks information concerning matters occurring before the grand jury, which are presumed secret pursuant to Rule 6(e). Opp. at 25-27.

While the proceedings before the grand jury are secret, "the grounds rules by which the grand jury conducts those proceedings are not." *Alter,* 482 F.2d at 1029 n.21. Accordingly, the defense is entitled to impaneling instructions given to the grand jury by the court at the time it was impaneled. Further, defendant is entitled to any supplemental or modifying instructions. *United States v. Gibbs,* No. 20-CR-83-BTM, ECF No. 34 (S.D. Cal. Jan 25, 2021) (if defendant is entitled to initial impaneling instructions, by reasonable extension, he is entitled to supplemental instructions.)

Accordingly, the Court concludes that Defendant is entitled to (i) the May 14, 2020 letter from the Chief Judge to the grand jury, and its attachment, (ii) any written supplements thereto, and (iii) any general non-case specific instructions by an Assistant U.S. Attorney as to the procedures of the grand jury proceedings during the COVID-19 pandemic—including any general instructions relating to the grand jury's ability to call witnesses and request evidence—made to this specific impaneled grand jury, from May 20, 2020 to the day of the indictment. This will not be unduly burdensome for the Government given the limited time frame implicated in this case, as grand jury proceedings were suspended from March 17, 2020 to May 20, 2020, and Defendant was indicted on September 1, 2020.

However, Defendant is not entitled to any case-specific instructions by an Assistant U.S. Attorney to the grand jury as to their ability to call witnesses and request evidence

given that Defendant has not demonstrated a non-speculative particularized need. *See United States v. Stepanyan*, No. CR 15-0234 CRB (JSC), 2016 WL 4398281, at *2 (N.D. Cal. Aug. 18, 2016) ("courts have uniformly rejected the argument that the government's ... remarks to the grand jury are not entitled to secrecy").

The transcript of Instructions Given in Defendant's Case
Defendant requests "a transcript of the instructions given in this case." (Mot. at 17.) The Government opposes this request "as it seeks matters occurring before the grand jury, which are presumed secret under Rule 6(e)." Opp. at 27. While the Ninth Circuit has not decided the issue of whether legal instructions to a grand jury are afforded a presumption of secrecy, district courts have split on the issue. *Compare* 🔖 *United States v. Morales*, Cr. No. S-05-0443 WBS, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) ("defendant suggests that he need not make a showing of particularized need at all, because the instructions are not covered by grand jury secrecy.... [*Alter*] provides little support for defendant's claim that the prosecutor's legal instructions are similarly not covered by grand jury secrecy.") with 🔖 *United States v. Belton*, No. 14–cr–00030–JST, 2015 WL 1815271, at *3 (N.D. Cal. Apr. 21, 2015) ("The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings.").

 **\*9** Ultimately, it is the substance of the instructions that will determine whether the legal instructions provided by the prosecutor to the grand jury are the kind of ground rules subject to disclosure, or whether they go to the substance of the grand jury's deliberation and are therefore afforded a presumption of secrecy. Following the procedure employed by Judge Barry Ted Moskowitz in *United States Gibbs*, the Court will conduct an *in camera* review of the transcript of the grand jury proceedings in this case so that it can determine whether disclosure of the transcript of the instructions in this case is appropriate.

Information re: Precautions and Utilization of Teleconferencing
Defendant requests information regarding "whether video teleconferencing or teleconferencing is utilized in any other way for grand jury proceedings." Mot. at 17. Defendant also seeks information regarding "what precautions are taken to protect live witnesses before the grand jury from spreading or

contracting the virus." Mot. at 17. The Government responds that all grand jury testimony in this case was conducted in-person. Opp. at 27. Further, the Government argues that Defendant has failed to offer any authority to overcome the presumption that the grand jury properly performed it duties.

The Court finds that the requests are MOOT and, otherwise, to the extent that Defendant seeks the additional grand jury information, he has failed to show that the information would be relevant to a motion to dismiss the indictment or that he is entitled to the information.

 **D. CONCLUSION**
For the foregoing reasons, Defendant Ramirez' Motion for Access to Records is **GRANTED IN PART** and **DENIED IN PART**. Further, the motion for grand jury discovery is **GRANTED IN PART** and **DENIED IN PART**.

The Court directs the Government to produce to Defendant the impaneling instructions given to the grand jury in this case at the time it was impaneled on November 19, 2019. Also, the Government is to produce to Defendant the supplemental grand jury instructions given to the grand jurors by way of the May 14, 2020 Letter by the Chief Judge and its attached COVID-19 Precautions, and any written supplement thereto. Next, the Government is to produce to Defendant any general instructions by an Assistant U.S. Attorney to the impaneled grand jury of this case, from May 20, 2020 to the day of the indictment on September 1, 2020, as to procedures before the grand jury in response to the COVID-19 pandemic— including general non-case specific instructions relating to the grand jury's ability to call witnesses and request evidence. The Court will find it sufficient for an email to be sent by the prosecutor in this case to any Assistant U.S. Attorney who presented cases before this grand jury during the identified time period, asking whether they gave this grand jury any general instructions on how they would proceed in light of the COVID-19 pandemic, including instructions on jurors' ability to call witnesses and request evidence. If an Assistant U.S. Attorney replies in the affirmative, the transcript of those instructions must be obtained and be provided to the defense counsel. To the extent the Government believes any instructions are case-specific as opposed to general instructions, the Government may submit them to the Court for *in camera* review.

Further, the Court directs the Clerk to provide the JSSA information identified above within four weeks of the date of this Order. Defense counsel shall confer with the

Clerk's Office to make arrangements to review the materials requested in Request #18.

The JSSA materials disclosed pursuant to this order shall be subject to the following protective order:

**\*10** 1. The materials may be used only by counsel, their legal staff and experts in connection with the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures and may not be disclosed. The materials may not be used for purposes of jury selection, trial, or any other matter other than the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.

2. The materials either must be returned to the Court at the commencement of jury selection, or counsel, their staff, and their experts and consultants must certify that the materials have been destroyed and that no materials have been retained in any duplicative form.

3. The Clerk of the Court shall file a SEALED copy of the records on the docket for purposes of maintaining a record of the production.

4. Consistent with 🚩 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to third parties, except experts and consultants. Similarly, the materials may only be disclosed to individuals who have a need to view the materials "as may be necessary in the preparation or presentation of" a motion to dismiss on the ground of "substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 🚩 28 U.S.C. § 1867.

5. Defendant shall not possess the materials at any time, except when reviewing the materials with counsel. The materials may not be carried into or reviewed in any detention facility or residence of the defendant. The materials may be reviewed by defendant, if in custody or under home detention, by whatever approved arrangements can be made with the Bureau of Prisons or Pretrial Services to facilitate any such review, including video or audio conference procedures that have been utilized during the current COVID-19 pandemic.

6. Every attorney who accesses the materials is personally responsible not only for his or her compliance with this Protective Order, but also his or her client's compliance with the requirements of this Protective Order and compliance by any staff member, expert, or other person who is shown the materials consistent with the parameters of this Order.

7. Materials that have been identified as available for review in the Clerk's Office may not be removed from the Clerk's Office. Because these documents may contain personal identifying information, these documents shall not be subject to review by Defendant directly. Counsel shall not record in any manner any personal identifying information that appears in these documents.

8. Counsel, their staff, experts, consultants, defendant, and the government are reminded that "[a]ny person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both." 🚩 28 U.S.C. § 1867(f).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 1662441

---

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "C"

# EXHIBIT "C"

2020 WL 6545894
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

UNITED STATES of America,
v.
Ashraf Omar ELDARIR, Defendant.

20-CR-243 (LDH)
|
Signed 11/06/2020

**Attorneys and Law Firms**

Marietou Diouf, DOJ-USAO, Brooklyn, NY, for United States of America.

**MEMORANDUM AND ORDER**

LaSHANN DeARCY Hall, United States District Judge:

**\*1** On July 2, 2020, a grand jury convened in this district returned an indictment against Defendant Ashraf Omar Eldarir charging him with two counts of smuggling in violation of 18 U.S.C. § 545. Defendant moves pursuant to the Fifth and Sixth Amendments to the United States Constitution, and the Jury Selection and Service Act (the "JSSA"), 28 U.S.C. § 1867(f), to access the records and papers used in connection with the constitution and implementation of the master and qualified jury wheels in the United States District Court for the Eastern District of New York. Defendant also moves pursuant to 28 U.S.C. § 1867(a) to dismiss the indictment on the grounds that the grand jury procedures in this case violated Title 28 of the United States Code.

**BACKGROUND**

The grand jury in this case was empaneled on October 10, 2019. Between October 10, 2019, and March 12, 2020, the last day on which the grand jury was able to obtain a quorum prior to the restrictions imposed as a result of the COVID-19 pandemic, the grand jury sat regularly on Thursdays. On March 13, 2020, Chief Judge Mauskopf issued E.D.N.Y. Administrative Order 2020-11, which provided, in relevant part, that "no grand jury ha[d] had a quorum since March 13, 2020." Due to the restrictions imposed as a result of the COVID-19 pandemic, the grand jury did not sit between March 13, 2020, and June 10, 2020. On July 2, 2020, the grand jury, sitting in the Central Islip courthouse, achieved a quorum, and heard and voted on the indictment in this case.

**DISCUSSION**

The Fifth Amendment to the United States Constitution provides, among other things, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury[.]" U.S. Const. Am. V. Relatedly, the Sixth Amendment guarantees the right to a trial by a jury selected from a fair cross section of the community. *See* Taylor v. Louisiana, 419 U.S. 522, 530 (1975) ("We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation.") Relevant here, the JSSA extends this guarantee to grand juries, thereby entitling defendants to be indicted by a grand jury selected at random from a fair cross section of the community. 28 U.S.C. § 1861; 28 U.S.C. § 1867(a)–(b), (d). In enacting the JSSA, Congress sought to "assure all litigants that potential jurors will be selected at random from a representative cross section of the community and that all qualified citizens will have the opportunity to be considered for jury service." United States v. Miller, 116 F.3d 641, 656 (2d Cir. 1997) (quoting H.R. Rep. No. 90–1076 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1792).

Where a defendant believes this right may have been violated, the JSSA entitles him to inspect records used in connection with the grand jury selection process to determine whether he wishes to challenge the indictment. Test v. United States, 420 U.S. 28, 30 (1975) (per curiam) (stating that a party has an "unqualified right to inspect jury lists," in order to "aid parties in the 'preparation' of motions challenging jury-selection procedures."). To this end, the JSSA provides, in relevant part, that:

> **\*2** The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed,

except ... as may be necessary in the preparation or presentation of a motion [to dismiss the indictment on the ground of substantial failure to comply with jury selection procedures].... The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

28 U.S.C. § 1867(f). Notably, the Second Circuit has advised that the JSSA's grant of access to documents "used" by the administrators in the grand jury selection process, "plainly give a defendant access only to records and papers already in existence." *Miller*, 116 F.3d at 658.

Defendant contends that the unusual circumstances surrounding the return of the indictment may have compromised his right to be charged by a grand jury selected from a fair cross section of the community because the grand jury sat in Central Islip as opposed to Brooklyn at a time when most members of the public in the Eastern District of New York were still ordered to remain at home, except for limited categories of activity, to prevent the spread of COVID-19. That said, "[b]ecause the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996) (citing *Test*, 420 U.S. at 30).

Defendant seeks access to 23 categories of records related to the grand jury selection process:

1. The Jury Plan for the Eastern District of New York currently in effect and, if different in any respect, at the time grand jurors were summoned in this case. This Plan is believed to be the "Jury Selection Plan (As amended October 30, 2006)" effective October 30th, 2006.

2. A description of any changes from the previous procedures or from the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic.

3. Any order of the Court that effects the previous procedures or the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic.

4. A description of work done, contact information, and communications with any vendors in the creation of the Master and Qualified Jury Wheels used to summon grand jurors in this case.

5. A confirmation that the grand jury in this case was selected from the entire District or, if not, a description of the basis and selection for the grand jury in this case.

6. Any AO-12 form or JS-12 form created which relates to the Master Jury Wheel and Qualified Jury Wheel that were used to summon the grand jurors who returned the indictment in this case as required by 28 U.S.C. § 1863(a).

7. Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheel and Qualified Jury Wheel that were used to summon grand jurors in this case with the Jury Plan (especially Section 2), Jury Selection and Service Act and constitutional requirements.

8. The date when the Master Jury Wheel that was used to summon grand jurors in this case was refilled as described in the Jury Plan Section 5.

9. The calculation of proportional representation of counties in the Master Jury Wheel described in the Jury Plan Section 4.

10. The procedures implemented for prospective jurors who do not respond to a juror qualification form or have their juror qualification form returned from the Postal Service as undeliverable.

**\*3** 11. The number of persons who failed to return a completed juror qualification form as described in the Jury Plan Section 6.

12. The number of persons who failed to return a completed juror qualification form and who were summoned by the clerk to appear before the clerk to fill out a juror qualification form as described in the Jury Plan Section 6.

13. The date when grand jurors were summoned in this case.

14. The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

15. The Master Jury Wheel data as described in the Jury Plan Section 5 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

16. The Qualified Jury Wheel data as described in the Jury Plan Section 11 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

17. Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond or were disqualified or exempted from jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Number, whether the form was returned Undeliverable, whether the form was not returned, Reason for Disqualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.

18. The Juror Number only (and not Name or Street Address) for persons who failed to return a completed juror qualification form and who were summoned by the clerk to appear before the clerk to fill out a juror qualification form as described in the Jury Plan Section 6.

19. The Juror Number only (and not Name or Street Address) for persons selected as potential grand jurors in this case.

20. The source of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in the Jury Plan Section 4 (voter registration list and list from the New York State Department of Motor Vehicles). The data should include, as available, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division but not any personal information or information that could be used to identify any individual such as Name or Street Address.

21. The juror qualification and summons forms for persons summoned to potentially become grand jurors in this case.

22. The disposition of each summoned potential grand juror in this case as to excusal, deferment, disqualification or selection as described in the Jury Plan.

23. The attendance record and reason for absence by date for each grand juror.

By way of background, the grand jury selection process in this district is managed by the Clerk of the Court. E.D.N.Y. Jury Selection Plan § 3 (available at https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf.) At the start of the process, names of potential grand jurors are "selected at random from the voter registration lists of all the counties within the Eastern District of New York supplemented by lists for these counties from the New York State Department of Motor Vehicles." *Id.* § 4. From these lists, the Clerk of Court establishes a master jury wheel composed of "the names of all persons randomly selected from the combined source lists of all the counties of the Eastern District." *Id.* § 5. The Clerk of Court then removes from the master jury wheel all persons deemed ineligible for, or exempt or excused from jury service, resulting in a qualified jury wheel. *Id.* § 11. Jury venires are selected at random from the qualified jury wheel to serve on grand juries. *Id.* § 13.

**\*4** The Government contends that Defendant is entitled only to records reflecting demographic information including the county of residence, zip code, race, and age of all individuals listed in the master jury wheel because those records alone are sufficient to allow Defendant to determine whether he wishes to move to dismiss the indictment in accordance with the JSSA. [1] The Court disagrees.

In this case, Defendant requires more than just the demographic information relating to the master jury wheel. In this district, the jury selection process does not stop at the creation of a master jury wheel. Grand jurors are summoned only after the Clerk of Court deems them eligible and not otherwise exempt or excused from service, and places them in the qualified jury wheel. These processes impact, and potentially infect, the grand jury selection process, the visibility into which is necessary for a defendant to determine whether his rights under the JSSA have been impaired. Indeed, courts in this district have similarly found that defendants are entitled to records beyond those detailing the demographics of the jurors included in the master jury wheel. *See United States v. Corbett et al.*, 20-cr-213 (KAM) (E.D.N.Y. Aug. 21, 2020), at 7–8, ECF No. 85 ("The court ... finds that the Master Jury Wheel provides both the most expansive and the least specific information upon which to determine if the Eastern District's current grand jury procedures comply with the JSSA."); *United States v. Shader*,

20-CR-202, 2020 WL 4158059, at *4 (E.D.N.Y. July 17, 2020) (granting access to the demographics of the individuals listed in the source lists [the voter registration list and the New York State Department of Motor Vehicles list] and in the Master Jury Wheel from which the Grand Jury was selected).

That said, a defendant is not entitled to inspect every record that may touch upon the grand jury process. Defendants are only entitled to those records which bear on a potential motion to dismiss the indictment. For example, the parties agree that defendants are not entitled to any personal identifying information for the individuals listed in the records requested, including, but not limited to names, addresses, telephone numbers, full dates of birth, and social security numbers. Moreover, because the grand jury here was empaneled months before the start of the COVID-19 pandemic, any changes made to address the effect of the pandemic on the current grand jury selection process is irrelevant to any potential motion by Defendant. *See Shader*, 2020 WL 4158059, at *4 (denying requests that sought information as to the impact of COVID-19 on the Jury Plan). Accordingly, Defendant is not entitled to the records described in Requests No. 2 and 3. Similarly, any information related to prospective jurors who fail to respond to or return juror qualification forms could not inform a motion to dismiss an indictment as violative of the JSSA because "the Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself," *United States v. Jackman*, 46 F.3d 1240, 1244 (2d Cir. 1995), and thus, "[i]t is not the actual selection of the grand jury which would constitute the violation but whether the jury was selected at random from a fair cross section of the community," *United States v. Gotti*, No. S4 02-CR-743 (RCC), 2004 WL 32858, at *11 (S.D.N.Y. Jan. 6, 2004). On this basis, Defendant is not entitled to records described in Requests No. 10, 11, 12, and 18. Further, it should be obvious that once a grand jury is empaneled, the attendance of grand jurors is also irrelevant. Defendant is therefore not entitled to records described in Request No. 23. Finally, the Court declines to grant Requests No. 4 and 5 because they exceed the scope of the JSSA, which only contemplates the production of "records and papers already in existence." *See Miller*, 116 F.3d 641 at 658. Against this backdrop, the Court grants Defendant's motion with respect to Requests No. 1, 6, 7, 8, 9, 13, 14, 15, 16, 17 (as modified below), 19, 20, 21, and 22.

## CONCLUSION

**\*5** For the foregoing reasons, Defendant's motion to inspect grand jury records is GRANTED, in part; and DENIED, in part. The Clerk of Court, as the custodian of the grand jury records, shall provide to defense counsel and the Government, as soon as practicable, but no later than twenty-one (21) business days from the date of this order, the grand jury records set forth below to the extent that they are already in existence.

1. The Jury Plan for the Eastern District of New York currently in effect and, if different in any respect, at the time grand jurors were summoned in this case. This Plan is believed to be the "Jury Selection Plan (As amended October 30, 2006)" effective October 30th, 2006.

6. Any AO-12 form or JS-12 form created which relates to the Master Jury Wheel and Qualified Jury Wheel that were used to summon the grand jurors who returned the indictment in this case as required by 28 U.S.C. § 1863(a).

7. Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheel and Qualified Jury Wheel that were used to summon grand jurors in this case with the Jury Plan (especially Section 2), Jury Selection and Service Act and constitutional requirements.

8. The date when the Master Jury Wheel that was used to summon grand jurors in this case was refilled as described in the Jury Plan Section 5.

9. The calculation of proportional representation of counties in the Master Jury Wheel described in the Jury Plan Section 4.

13. The date when grand jurors were summoned in this case.

14. The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

15. The Master Jury Wheel data as described in the Jury Plan Section 5 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

16. The Qualified Jury Wheel data as described in the Jury Plan Section 11 in electronic and accessible form that

includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

17. Status Codes for potential jurors who were disqualified or exempted from jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Number, Reason for Disqualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division. [2]

19. The Juror Number only (and not Name or Street Address) for persons selected as potential grand jurors in this case.

20. The source of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in the Jury Plan Section 4 (voter registration list and list from the New York State Department of Motor Vehicles). The data should include, as available, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division but not any personal information or information that could be used to identify any individual such as Name or Street Address.

21. The juror qualification and summons forms for persons summoned to potentially become grand jurors in this case.

22. The disposition of each summoned potential grand juror in this case as to excusal, deferment, disqualification or selection as described in the Jury Plan.

**\*6** The records produced shall be subject to a protective order to be proposed by the parties no later than five (5) days from the date of this order.

\* \* \*

Defendant's motion to dismiss the indictment is DENIED without prejudice, with leave to renew after inspection of the produced records.

SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 6545894

## Footnotes

1    The Court notes that, on this basis, the Government concedes that Defendant is entitled to the records requested in Requests No. 15 and 20. Accordingly, in addition to any bases set forth below, the Court grants Defendant's Requests No. 15 and 20 as unopposed by the Government.

2    Defendant requests "Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond or were disqualified or exempted from jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Number, whether the form was returned Undeliverable, whether the form was not returned, Reason for Disqualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division." As the Court held, *supra*, information regarding prospective jurors who fail to respond to or to return juror qualification forms could not inform a motion to dismiss an indictment as violative of the JSSA. Accordingly, Defendant is not entitled to status codes for potential jurors who were selected from the master jury wheel for qualification who either had their qualification form returned by the postal service or did not respond.

End of Document                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.   5

# EXHIBIT "D"

EXHIBIT "D"

2020 WL 5408163
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

UNITED STATES of America, Plaintiff,
v.
Elizabeth A. HOLMES and Ramesh
"Sunny" Balwani, Defendants.

Case No. 18-cr-00258-EJD-1
|
Signed 09/09/2020

**Attorneys and Law Firms**

Jeffrey Benjamin Schenk, John Curtis Bostic, United States Attorney's Office, San Jose, CA, Robert S. Leach, Vanessa Ann Baehr-Jones, United States Attorney's Office, Oakland, CA, for Plaintiff.

Kevin M. Downey, Pro Hac Vice, Amy Mason Saharia, Pro Hac Vice, Andrew P. Lemens, Pro Hac Vice, Katherine A. Trefz, Lance A. Wade, Pro Hac Vice, Michelle Chen, Pro Hac Vice, Seema Mittal Roper, Pro Hac Vice, Patrick J. Looby, Pro Hac Vice, Williams and Connolly LLP, Washington, DC, John D. Cline, Law Office of John D. Cline, San Francisco, CA, for Defendant Elizabeth A. Holmes.

Jeffrey Bruce Coopersmith, Aaron Paul Brecher, Amanda Mariam McDowell, Orrick Herrington & Sutcliffe LLP, Benjamin J. Byer, Mark Nelson Bartlett, Pro Hac Vice, Max Bamberger Hensley, Pro Hac Vice, Davis Wright Tremaine LLP, Joshua Thomas Ferrentino, Pro Hac Vice, Steven Fogg, Pro Hac Vice, Corr Cronin LLP, Seattle, WA, Jenna Vilkin, Melinda Haag, Molly McCafferty, Randall Scott Luskey, Walter F. Brown, Orrick Herrington & Sutcliffe LLP, Kelly Michelle Gorton, Davis Wright Tremaine LLP, Kory James DeClark, San Francisco, CA, Stephen Anthony Cazares, Orrick Herrington & Sutcliffe LLP, Los Angeles, CA, for Defendant Ramesh "Sunny" Balwani.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS

Re: Dkt. Nos. 461, 462, 470, 472

EDWARD J. DAVILA, United States District Judge

**\*1** Presently before the Court is Defendant Holmes's motions for access to court records regarding the constitution of the grand jury (or grand juries) that returned the Second and Third Superseding Indictments in this case. *See* Dkt. Nos. 461, 470. Having reviewed the parties' filings and applicable law, the Court will resolve the motions without oral argument. The Court will GRANT IN PART and DENY IN PART the motions for the reasons below.

## I. BACKGROUND

In response to the COVID-19 pandemic, this District suspended all grand jury proceedings beginning in March 2020. *See* General Order No. 72, In RE: Coronavirus Disease Public Health Emergency (adopted March 16, 2020). Then, on June 9, 2020, the District issued provisional modifications to its Jury Plan in order to resume grand jury proceedings in June 2020. *See* General Order No. 77, In Re: Provisional Modifications to Jury Plan Due to COVID-19 Public Health Emergency (adopted June 9, 2020); General Order No. 72-3, In RE: Coronavirus Disease Public Health Emergency (adopted May 21, 2020).

On July 14, 2020, after grand jury proceedings had resumed, a grand jury for the San Jose Division of this District returned a Second Superseding Indictment in this case. Dkt. No. 449. Concerned that the COVID-19 pandemic and this District's modifications to its Jury Plan in response thereto may have affected the selection of the grand jury, Defendant Holmes filed a Motion for Access to Grand Jury Selection Materials on July 21, 2020. Dkt. No. 461 ("July 21 Mot."). Specifically, Defendant Holmes sought 21 categories of records, which are laid out in Exhibit A to the motion. Dkt. No. 461-2. Defendant Balwani joined the motion. Dkt. No. 462.

A grand jury subsequently returned the operative Third Superseding Indictment on July 28, 2020. Dkt. No. 469. Defendant Holmes therefore filed a new Motion for Access to Grand Jury Selection Materials as to both the Second and Third Superseding Indictments, Dkt. No. 470 ("July 30 Mot."); Defendant Balwani again joined, Dkt. No. 472. Filed on July 30, 2020, this second motion seeks the same 21 categories of records as the first, with slight modifications to reflect the inclusion of the Third Superseding Indictment. The opening brief in support of the July 30th motion is likewise substantially identical to the July 21st motion. Hence, this Order relies upon the more recent July 30th motion briefing.

The Government filed its consolidated Opposition to both motions on July 31, 2020. Dkt. No. 474 ("Opp."). Defendant Holmes replied on August 6, 2020. Dkt. No. 481 ("Reply").

## II. DISCUSSION

The Jury Selection and Service Act of 1968 (the "JSSA"), 28 U.S.C. §§ 1861–67, governs the manner of selecting federal grand and petit jurors in federal court. The JSSA implements "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." *Id.* § 1861; *see* United States v. Nelson, 718 F.2d 315, 318 (9th Cir. 1983). This policy is consistent with the Sixth Amendment guarantee of "a jury drawn from a fair cross section of the community." Duren v. Missouri, 439 U.S. 357, 368 (1979); *see also* United States v. Hernandez-Estrada, 749 F.3d 1154, 1158-59 (9th Cir. 2014).

**\*2** Each district must "devise and place into operation a written plan for random selection of grand and petit jurors" that complies with the JSSA's procedural and substantive requirements. 28 U.S.C. § 1863(a). This District's so-called Jury Plan is its General Order No. 6. *See* General Order No. 6, Plan for the Random Selection of Grand and Petit Jurors (adopted August 7, 2017).

As a mechanism for enforcing its mandates, the JSSA permits a criminal defendant to "move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury." 28 U.S.C. § 1867(a). Such a motion may be brought to establish either a violation of the basic fair cross section section right, *see* United States v. Patel, 996 F.2d 1229 (9th Cir. 1993), or a "substantial failure to comply" with specific procedures required by the Act, *see* United States v. Erickson, 75 F.3d 470, 477 (9th Cir. 1996). The JSSA further provides that in preparing the motion, the defendant is entitled to access "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process." Id. § 1867(f). The defendant "shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." *Id.*

It is well-established that, under § 1867(f), "a litigant has essentially an unqualified right" to inspect the jury selection materials described therein. Test v. United States, 420 U.S. 28, 30 (1975). As the Supreme Court has explained, "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Id.*; *see also* United States v. Beaty, 465 F.2d 1376, 1382 (9th Cir. 1972) (holding that defendant "had a right to make the inspection before he made a motion to challenge the jury under § 1867(a)"). Moreover, access to the relevant records may not be conditioned on a defendant first showing a probability of success on the merits of the jury challenge. *Id.* at 1380; *accord* United States v. Diaz, 236 F.R.D. 470, 477 (N.D. Cal. 2006).

Pursuant to the foregoing, Defendants have moved for access to various documents relating to the grand jury or grand juries that returned the Second and Third Superseding Indictments in this case. July 30 Mot. at 2. Defendants say they intend to review the requested documents in order to determine whether to file a motion challenging the selection of the grand jury under 28 U.S.C. § 1867(a). *Id.* In particular, Defendants are concerned about (1) the revisions this District has made to its past procedures in response to the ongoing COVID-19 pandemic and the effect of these changes on the constitution of the grand jury, and (2) whether the grand jury was representative of the community "in light of the disproportionate medical and economic impact that the COVID-19 crisis has had on certain populations." *Id.* at 2-3.

The Government does not dispute that Defendants have an unqualified right to the "records or papers used by the ... clerk in connection with the jury selection process" in order to determine whether to file a § 1867(a) motion. *See* Opp. at 2. The parties disagree, however, on the scope of that right and whether it encompasses all the categories of documents that Defendants request.

**\*3** In their motion, Defendants request the following information[1]:

1. The Jury Plan for the Northern District of California currently in effect and, if different in any respect, at the time the grand jurors who returned the Second and Third Superseding Indictments, were summoned in this case.

This Plan is believed to be General Order 6: Plan for the Random Selection of Grand and Petit Jurors; as modified by General Order 77: In Re: Provisional Modifications to Jury Plan due to COVID-19 Public Health Emergency.

2.  Any documents that reflect changes from previous procedures from the Jury Plan for the grand jury or creation of the grand jury because of COVID-19.

3.  Any order of the Court that affects the previous procedures or the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic.

4.  The jury division or divisions chosen for the grand jury empaneled from June 1, 2020 to July 28, 2020.

5.  Any documents that reflect the description of reasons for the choice of the jury division or divisions for the grand jury empaneled from June 1, 2020 to July 28, 2020.

6.  Any AO-12 form or JS-12 form created that relates to the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, as required by ⚑ 28 U.S.C. § 1863(a).

7.  Any other statistical or demographic analyses produced to ensure that the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, were in compliance with the Jury Plan, Jury Selection and Service Act, and Constitution.

8.  The date on which the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, were refilled as described in General Order No. 6 Section VII.

9.  The record of calculations as described in the General Order No. 6 Section XIV.

10.  Any general notice explaining the process by which names were drawn from the pool of qualified persons of each jury division for the grand jury panel.

11.  The calculation of the number of potential jurors from San Francisco-Oakland, San Jose, and Eureka jury divisions to ensure compliance with the numbers listed in Section VII of General Order No. 6.

12.  The source of data in electronic form for the Master Jury Wheels used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, as described in General Order No. 6 Sections VI, VIII, and XIV. The data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division. The data should not include any personal information that could be used to identify any individuals such as name or street address.

13.  The Master Jury Wheels data as described in the General Order No. 6 Sections VII, VIII and XIV, in electronic and accessible form that includes, Juror Number, Race, Gender, Ethnicity, Year of Birth, Zip Code, County and Jury Division. The data should not include any personal information that could be used to identify any individuals such as name or street address.

**\*4** 14. The date when the grand jurors who returned the Second and Third Superseding Indictments in this case were summoned.

15.  The number of persons summoned from the Master Jury Wheels to be considered as grand jurors. This number should further be categorized by number per jury division.

16.  The juror qualification and summons forms for the persons summoned to potentially become grand jurors.

17.  The SurveyMonkey COVID-19 questionnaires sent to the prospective grand jurors.

18.  The Juror Numbers for the persons selected as potential grand jurors from June 1, 2020 to July 28, 2020.

19.  The disposition of each summoned potential grand juror as to excusal, deferment, disqualification or selection as described in General Order No. 6 Sections IX-XII.

20.  The Juror Number for each grand juror who returned the Second and Third Superseding Indictments in this case.

21.  The attendance record and reason for absence by date of each grand juror who returned the Second and Third Superseding Indictments in this case.

Dkt. No. 470-2 (footnotes omitted).

In the Government's view, not all 21 Requests are covered by ⚑ § 1867(f). The Government argues that "a defendant's 'unqualified right to records or papers encompasses only such data as a defendant needs to challenge the jury selection

process.' " Opp. at 5 (quoting 📄 *United States v. O'Reilly*, No. 05-CR-80025, 2008 WL 115537, at *3 (E.D. Mich. Jan. 10, 2008)) (alterations omitted). The Government then maintains that "access to the county of residence, zip code, race, and age of the individuals listed in the relevant master jury wheel is sufficient for Defendant Holmes to determine whether to move to stay proceedings or dismiss the indictment," Opp. at 5-6; the Government opposes production of "materials beyond this limited set of data," Opp. at 7. Applying their proposed standard, the Government assents to Request Nos. 1, 4, 5, 8, 11, 12, 13, 14, 15. In other words, the Government's view of the scope of 📄 § 1867(f) appears to be confined to information regarding the creation of the Master Jury Wheel for each division. *See* Opp. at 5; *see generally* General Order No. 6 at 3 (describing Master Jury Wheels).

The Court agrees that 📄 § 1867(f), by its own terms, covers only records (1) "used by the jury commission or clerk in connection with the jury selection process" and (2) "necessary in the preparation of a motion" challenging compliance with the JSSA. 📄 28 U.S.C. § 1867(f). The Court also recognizes that "a lack of representation on one jury is insufficient to establish a prima facie case" for a violation of the fair cross section requirement. *Patel*, 996 F.2d at 1229. It does not follow, however, that only information regarding the creation of the Master Jury Wheel—and not information regarding subsequent selection procedures—is subject to disclosure.

*Accord* 📄 *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) ("We can certainly envision a situation in which a defendant must be afforded access to the names, addresses, and demographics of those jurors who returned the indictment in order to vindicate the 'unqualified' right to inspection and to insure that the jury actually represented a wide spectrum of the community."). General Order No. 6 lays out several processes following the creation of the Master Jury Wheel that could affect whether a grand jury was selected from a fair cross section of the community.

**\*5**  In particular, after names are drawn from the Master Jury Wheel, the Clerk "mail[s] to every person who name is thus drawn a juror summons and qualification notice accompanied by instructions to complete the questionnaire via the court's website within ten days." General Order No. 6 at 3. Based on information provided on the juror qualification form, the Clerk determines whether the person is "unqualified for, exempt from, or otherwise eligible to be excused from jury service." *Id.* at 3-4. The Clerk then draws the grand jury panel from the pool of qualified, non-exempt persons. *Id.* at 5.

Of particular relevance here, an excuse may be granted "upon a showing of undue hardship or extreme inconvenience if required to serve." *Id.* at 5. Defendants' primary concern is that the COVID-19 pandemic may have caused many individuals to be excused on such grounds, and that their grand jury may consequently not have been selected from a fair cross section of the community. As a result, it is the qualification and excuse stage of jury selection that is principally relevant to Defendants' prospective 📄 § 1867(a) claim. Without opining on the validity of the underlying legal theory, the Court believes it illustrates how records beyond those used to create the Master Jury Wheel may be relevant to jury selection challenge. *See, e.g.*, *United States v. Cerna*, No. CR 08-0730 WHA, 2009 WL 2998930, at *2 (N.D. Cal. Sept. 16, 2009) ("The use of jury questionnaires is an important mechanism for the implementation of [the JSSA's jury selection procedures."); *see also* 📄 *Erickson*, 75 F.3d at 477 (Under the JSSA, a court may "determin[e] disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only.").

The Court will, therefore, permit the Defendants to access records that were "used by the jury commission or clerk in connection with the jury selection process" and potentially "necessary in the preparation" of Defendants' possible 📄 § 1867(a) motion even if those records concern steps in the jury selection process subsequent to the formation of the Master Jury Wheel.

With these principles in mind, the Court now considers the parties' specific arguments as to the 21 requests.

Request Nos. 1, 4, 5, 8, 11, 12, 13, 14, 15:

As noted above, the Government does not oppose these requests. The Court agrees with the parties that such data qualifies as records "used by the jury commission or clerk in connection with the jury selection process" that are potentially necessary to determining whether a plausible 📄 § 1867(a) claim exists. The Court therefore GRANTS the motions for access as to Request Nos. 1, 4, 5, 8, 11, 12, 13, 14, 15.

Requests No. 2-3:

Requests 2 and 3 seek any "order of the Court" or other documents that effect or document any changes from the grand jury selection procedures in the District's Jury Plan made because of the COVID-19 pandemic.

The Court is persuaded that, to the extent any such orders or documents exist, they "reflect the methods or procedures by which a grand ... jury is empaneled" and "fall clearly within the scope of necessary discovery" to determine whether a colorable JSSA claim exists. *United States v. Cerna*, No. CR 08-0730 WHA, 2009 WL 2998930, at \*4 (N.D. Cal. Sept. 16, 2009) (granting discovery of "the forms, procedures and checklists that the clerk uses to assemble jury wheels, and by which juries are empaneled" and "a copy of all documents reflecting procedures used to select names from the master or qualified jury wheels, and to excuse prospective grand and petit jurors for hardship or other reasons").

 **\*6** Although the Government opposes production, the only reason it gives for doing so is that a district court for the Eastern District of New York denied similar requests. Opp. at 6 (citing *United States v. Shader*, No. 20-CR-202, 2020 WL 4158059, at \*4 (E.D.N.Y. July 17, 2020)). In that case, however, the grand jury that had returned the defendant's indictment had been empaneled "in October 2019, months before the start of the pandemic." *Id.* at \*2. Here, by contrast, all evidence suggests that the grand jury was empaneled during the pandemic, after a temporary pause in grand jury proceedings. *Shader* thus provides the Government no aid regarding these requests.

Request Nos. 2 and 3 are GRANTED.

Request Nos. 6-7:
Requests 6 and 7 seek any "AO-12 form or JS-12 form" or "other statistical or demographic analyses" regarding the composition of the Master Jury Wheel(s) used to summon the grand jurors in this case. Another court in this district has explained that

> JS–12 forms provide: (1) the number of names placed on the master wheel and the number of names drawn from the master wheel to whom questionnaires were mailed; (2) the number of questionnaires completed and returned, returned as undeliverable

by the post office, or not yet returned; (3) a demographic analysis of samplings drawn from returned jury questionnaires and from those placed on the qualified jury wheel; and (4) a statistical comparison of the jury wheel sample against general-population data by racial, ethnic and gender classifications. These forms provide defendants with the statistics necessary to identify whether an identifiable group was substantially under-represented in the jury pool from which defendants' grand jury was drawn.

*Cerna*, 2009 WL 2998930 at \*3.

Although it is not clear whether any such reports have been produced, the Court agrees with Defendants and the *Cerna* court that they would be relevant to a fair cross section claim under the JSSA or the Sixth Amendment. *See generally Patel*, 996 F.2d 1229 ("To establish a prima facie case of a fair-cross section requirement, a defendant must show: 1) the excluded group is a "distinctive" group in the community; 2) that group's representation in jury venires is unfairly disproportional to their representation in the community; and 3) that underrepresentation is due to systematic exclusion from the jury selection process."). Defendant, meanwhile, does not present any non-conclusory argument against production.

Request Nos. 6 and 7 are GRANTED.

Request Nos. 9-10:
Request Nos. 9 and 10 relate to the step at which the Clerk randomly selects grand jurors from the pool of qualified persons drawn from the Master Jury Wheel, which is descried in Section XIV of General Order No. 6. *See* Reply at 6; General Order No. 6 at 5-6. The Government objects to both as unnecessary, but without explanation.

Request 10 is for "[a]ny general notice" explaining that process. The Court construes Defendants' request as seeking any internal or external policies or guidelines governing the Clerk's selection of the grand jury panel from the pool of qualified persons. Contrary to the Government's unsupported

assertion that such a notice is "unnecessary assessing whether a challenge to the grand jury selection process is warranted," Opp. at 7, the requested documents (like Request Nos. 2 and 3), are plainly relevant to a potential jury selection challenge. *Cerna*, 2009 WL 2998930 at *3. Request No. 10 is GRANTED.

Request No. 9 is for "[t]he record of calculations" described in Section XIV. Defendants explain that the relevant calculations are those made by the Clerk in order to "ensure that grand jurors were summoned in proportion to the population of the District's counties." Reply at 6. The Court will GRANT this request to the extent Defendants seek (1) the Clerk's calculation of the number of registered voters in each of the four counties comprising the San Jose division, and (2) the number of prospective grand jurors selected from the pool of qualified persons for the San Jose division. Those figures pertain to the grand jury or grand juries that returned the Second and Third Superseding Indictments in this case. However, data regarding the other divisions in this District does not appear to be relevant and will not be disclosed at this time.

Request Nos. 16-17:

**\*7** Request Nos. 16 and 17 concern the forms used to screen potential grand jurors: Request No. 16 is for "the juror qualification and juror summons forms for the persons summoned to potentially become grand jurors"; Request No. 17 is for the "SurveyMonkey COVID-19 questionnaires sent to the prospective grand jurors." *See* Reply at 6-7. The Government has again failed to explain its objection to these requests.

To the extent Defendants seek a blank copy of these instruments, the Court will GRANT the motion. As explained above, questionnaires and other forms used to screen prospective grand jurors are a key aspect of jury selection and may give rise to a JSSA claim. *Accord United States v. Cloud*, No. 1:19-CR-02032-SMJ-01, 2020 WL 4381608, at *5 (E.D. Wash. July 27, 2020); *Cerna*, 2009 WL 2998930, at *2. The Court therefore deems this portion of the motion within the scope of Defendants' right of access under 🚩 § 1867(f).

Defendants do not appear to seek the completed questionnaires or forms of individual jurors or prospective jurors, *see* Reply at 6-7 (citing cases in which the court ordered disclosure of the questions used but not the data returned by individuals); in any event, they have not yet justified such a request. Accordingly, the Court confines its grant of discovery to the blank instruments.

Request Nos. 18-20:

Request Nos. 18 and 20 are for the Juror Numbers for (1) the persons "selected as potential grand jurors from June 1, 2020 to July 28, 2020" (Request No. 18), and (2) "each grand juror who returned the Second and Third Superseding Indictments in this case." Request No. 19 is for "[t]he disposition of each summoned potential grand juror as to excusal, deferment, disqualification or selection."

Defendants explain that together, the information sought by these requests will reveal how the COVID-19 crisis affected the selection of the ultimate grand jurors. Reply at 7. That is, Defendants will be able to analyze how excusal for COVID-19 related reasons altered the pool of otherwise qualified potential jurors from which the grand jury was drawn. The Court agrees that, despite the Government's conclusory objection, the requested information is potentially necessary to understanding whether the grand jury that returned the indictments fairly represented the community. *Accord Cloud*, 2020 WL 4381608, at *5-*6.

Request Nos. 18-20 are GRANTED.

Request No. 21:

In her Reply, Defendant Holmes does not attempt to justify Request No. 21 and instead withdraws it. *See* Dkt. No. 481-1 at 4. Accordingly, the Court will DENY without prejudice the motion for access as to Request No. 21.

### III. CONCLUSION

For the foregoing reasons, the Court rules on the request for access to grand jury materials as follows:

| Request No. | Ruling |
| --- | --- |
| 1 | GRANTED. |
| 2 | GRANTED. |

| 3 | GRANTED. |
|---|---|
| 4 | GRANTED. |
| 5 | GRANTED. |
| 6 | GRANTED. |
| 7 | GRANTED. |
| 8 | GRANTED. |
| 9 | GRANTED as to the San Jose division; otherwise, DENIED. |
| 10 | GRANTED. |
| 11 | GRANTED. |
| 12 | GRANTED. |
| 13 | GRANTED. |
| 14 | GRANTED. |
| 15 | GRANTED. |
| 16 | GRANTED as to the blank forms; otherwise, DENIED. |
| 17 | GRANTED as to the blank questionnaire; otherwise, DENIED. |
| 18 | GRANTED. |
| 19 | GRANTED. |
| 20 | GRANTED. |
| 21 | DENIED without prejudice. |

**\*8**  The disclosure of these materials is subject to the following protective order:

1. The materials may be used only in connection with the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures. The materials may not be used for purposes of jury selection, trial, or any other matter other than the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.

2. The materials either must be returned to the Court at the commencement of jury selection or counsel must certify that the materials have been destroyed and that no materials have been retained in any duplicative form.

3. The Clerk of the Court shall file a SEALED copy of the records on the docket for purposes of maintaining a record of the production.

4. Consistent with ⚑ 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to third parties. Similarly, the materials may only be disclosed

to individuals who have a need to view the materials for purposes of the defined scope of the production, as set forth above.

5. Defendant shall not possess the materials at any time, except when reviewing the materials with counsel.

6. Any attorney who accesses the materials is personally responsible not only for his or her compliance with this Protective Order, but also his or her client's compliance with the requirements of this Protective Order and compliance by any staff member or other person who is shown the materials consistent with the parameters of this Memorandum and Order.

7. Penalties: Counsel and Defendant are reminded that "[a]ny person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both." 28 U.S.C. § 1867(f).

Finally, the Court notes that Defendants do not seek any personal identifying information (names, addresses, telephone numbers, full dates of birth, or Social Security numbers) for the individuals referred to in the relevant records, and none may be disclosed. *See* Reply at 9. Nevertheless, if any of the above-granted requests are later determined to contain such information, the parties shall file a proposed protective order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 5408163

---

## Footnotes

1    The Court cites the version of the requests made in the July 30th motion. To the extent Defendants' July 21st motion contained slightly narrower requests, the Court considers them superseded by the July 30th motion.

---

**End of Document**                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "E"

EXHIBIT "E"

2020 WL 4381608
Only the Westlaw citation is currently available.
United States District Court, E.D. Washington.

UNITED STATES of America, Plaintiff,

v.

James Dean CLOUD, (01) Donovan
Quinn Carter Cloud, (02), Defendants.

No. 1:19-cr-02032-SMJ-01
|
1:19-cr-02032-SMJ-02
|
Signed 07/27/2020

**Attorneys and Law Firms**

Richard Cassidy Burson, Thomas J. Hanlon, U.S. Attorney's Office, Yakima, WA, for Plaintiff.

John Barto McEntire, IV, Lorinda Meier Youngcourt, Federal Defenders, Spokane, WA, Jeremy B. Sporn, Federal Defenders, Yakima, WA, for Defendant James Dean Cloud.

Richard A. Smith, Smith Law Firm, Michael Stephen Prince, Prince Law Group PS, Yakima, WA, Mark A. Larranaga, Walsh and Larranaga, Seattle, WA, for Defendant Donovan Quinn Carter Cloud.

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
ACCESS TO GRAND JURY RECORDS**

SALVADOR MENDOZA, JR., United States District Judge

 **\*1** Before the Court, without oral argument, is Defendant James Cloud's (01) Motion for Access to Grand Jury Selection Records and Materials, ECF No. 179, and Defendant Donovan Cloud's (02) motion for joinder in Defendant Cloud's (01) request, ECF No. 180. Defendants seek access to certain information concerning the selection of the grand jury that returned the indictments in this matter, ECF Nos. 17, 59 & 132. ECF No. 179 at 3–6. The Government objects only to certain portions of Defendants' request. *See* ECF No. 181 at 4–12. Having reviewed the parties' filings and the relevant legal authorities, the Court is fully informed.

The Sixth Amendment guarantees a criminal defendant a grand and petit jury selected "from a representative cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975); *United States v. Armstrong*, 621 F.2d 951, 955 (9th Cir. 1980). To assess whether a defendant received an appropriately representative grand or petit jury, a defendant has "essentially an unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (citing 18 U.S.C. § 1867(f)). This right stems from both the defendant's Sixth Amendment right and a statute granting parties to a criminal case the right to "inspect, reproduce, and copy ... records or papers" that have been "used by the jury commission or clerk in connection with the jury selection process" as may be necessary to present a challenge to the composition of the jury pool. *See Armstrong*, 621 F.2d at 955; 18 U.S.C. § 1867(f). In view of these guiding principles, the Court proceeds to evaluate each component of Defendants' request.

**A. Jury Selection Plan**

Defendants first request access to the United States District Court for the Eastern District of Washington's jury selection plan in effect at the time the grand jurors who returned the indictments in this matter were summoned. ECF No. 179 at 3. The Government does not object. ECF No. 181 at 4. The Court deems this portion of the motion within the scope of Defendants' right of access under 18 U.S.C. § 1867(f) and therefore grants the request.

**B. COVID-19 Adjustments**

Defendants next request information concerning "policies and procedures enacted for summoning ... grand jurors due to the [coronavirus disease 2019 (COVID-19) ] pandemic." ECF No. 179 at 3. The Government objects, noting the grand jury that returned the indictments in this matter was impaneled prior to the pandemic. ECF No. 181 at 4. In response, Defendant Cloud (01) argues the requested information is relevant because he "expects (based on the discovery) the United States will return to the grand jury and obtain a third superseding indictment" charging four homicides. ECF No. 183 at 7. However, while information concerning policies enacted in response to the pandemic would presumably be relevant if a subsequent indictment is returned, at this stage Defendants' request is premised on mere speculation as to what may happen in the future. Thus, while Defendants are free to renew this aspect of their motion if subsequent indictments are returned, the Court denies their request as premature.

### C. COVID-19 Related Orders

**\*2**  Defendants also seek any Orders entered by the Court "for summoning and enlisting grand jurors due to the Covid-19 pandemic." ECF No. 179 at 3. As with Defendants' previous request, the Government objects that the requested information is irrelevant, *see* ECF No. 181 at 5, and for the reasons discussed above, the Court agrees. Defendants are free to renew this request should a subsequent indictment be returned, but at this stage the Court finds they are not entitled to the requested information.

### D. AO-12 and JS-12 Forms

Defendants next request forms created in connection with the District and Divisional Grand Jury Wheels and Qualified Grand Jury Wheels. ECF No. 179 at 3. The Government does not object. ECF No. 181 at 5. The Court deems this portion of the motion within the scope of Defendants' right of access under 18 U.S.C. § 1867(f) and therefore grants the request.

*See*   *United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. June 30, 2006).

### E. Jury Wheel Data Analyses

Defendants also seek information concerning any data analyses undertaken to ensure the District and Divisional Grand Jury Wheels and Qualified Grand Jury Wheels comply with the District's jury plan. ECF No. 179 at 3. The Government objects, arguing the District's Jury Selection Plan requires such information be requested from the Clerk of Court, who shall confer with the Chief District Judge. ECF No. 181 at 5 (citing United States District Court for the Eastern District of Washington, *Plan for the Random Selection of Grand and Petit Jurors* § 6.01 (eff. January 1, 2017)) (hereinafter "Jury Selection Plan"). But the District's Jury Selection Plan also provides, in the section immediately following the one on which the Government relies, that the "contents of records and papers used in the Jury Selection Process will not be disclosed, except upon written order of the Court ... made by motion to the presiding judge ... set[ting] forth why disclosure should be allowed." Jury Selection Plan § 6.02. This provision of the Jury Selection Plan expressly cites 18 U.S.C. § 1867(f), under which Defendants' motion is brought, and the Court thus concludes it is the provision applicable to this aspect of Defendant's request. [1] *Id.* In short, Defendants' motion was the appropriate mechanism by which to request this information. The Government does not argue

that the scope of this request exceeds Defendants' right of access under § 1867(f), and the Court finds Defendants' right of access to jury selection materials encompasses such information. Defendants' motion is therefore granted as to any statistical or demographic analyses of the District and Divisional Grand Jury Wheels and Qualified Grand Jury Wheels.

### F. Wheel Refill Date

Defendants next request the date on which the Master Jury Wheel was most recently refilled. ECF No. 179 at 3 (citing Jury Selection Plan § 1.09). The Government does not object. ECF No. 181 at 5. The Court deems this portion of the motion within the scope of Defendants' right of access under 18 U.S.C. § 1867(f) and therefore grants the request.

### G. General Notice Concerning Random Selection

**\*3**  Defendants request the "general notice explaining the process by which names are periodically and randomly drawn" under § 1.11 of the Jury Selection Plan. ECF No. 179 at 3 (citing Jury Selection Plan § 1.09). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 6. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

### H. Purge Procedures and Information

Defendants next request information concerning the procedures employed to "purge" duplicate records as well as any "report or analysis" of those procedures. ECF No. 179 at 4 (citing Jury Selection Plan § 2.02). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 6. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the requests.

### I. Proportionality Calculations

Defendants next request the calculations used to ensure grand jurors summoned to serve proportionately reflect the population of the District's counties. ECF No. 179 at 4 (citing Jury Selection Plan § 2.03). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 6. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants'

request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**J. Non-Response Procedures**

Defendants next request information on the procedures set out in the Jury Selection Plan for prospective grand jurors who fail to respond to the juror questionnaire. ECF No. 179 at 4 (citing Jury Selection Plan § 3.02(b)). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 7. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**K. Supplemental Draw**

Defendants seek any "report or analysis" concerning the "supplemental draw" provided for in the Jury Selection Plan. ECF No. 179 at 4 (citing Jury Selection Plan § 3.02(b)). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 7. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**L. Failure-to-Submit**

Defendants seek any "report or analysis" concerning the failure of prospective grand jurors to submit a response to the juror qualification questionnaire. ECF No. 179 at 4 (citing Jury Selection Plan § 3.03). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 7. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**M. Summons Date**

Defendants request the date on which the grand jurors who returned the indictments in this matter were summoned. ECF No. 179 at 4. The Government does not object. ECF No. 181 at 7. The Court deems this portion of the motion within the scope of Defendants' right of access under 18 U.S.C. § 1867(f) and therefore grants the request.

**N. Grand Jury Basis**

*4 Defendants request information on whether the grand jury that returned the indictments in this case was "divisional," "combined," or "entire district" as those terms are defined in § 4.05(b) of the Jury Selection Plan. ECF No. 179 at 5. The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 8. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**O. Grand Jury Ratio**

Defendants next request, if the grand jury in this case was drawn from a combination of divisions or from the entire district, the ratio of those individuals summoned from each division. ECF No. 179 at 5 (citing Jury Selection Plan § 4.05(b)). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 8. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**P. Number Summoned**

Defendants next seek information on the number of prospective grand jurors summoned from the Qualified Jury Wheel in this case. ECF No. 179 at 5 (citing Jury Selection Plan § 3.03). The Government objects only that such information must be requested from the Clerk of Court. ECF No. 181 at 7. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**Q. Master and Qualified Wheels Data**

Defendants request data, in electronic format, on the District and Divisional Master and Qualified Jury Wheels including juror number, race, gender, Hispanic ethnicity, birth year, zip code, city, county, and jury division. ECF No. 179 at 5. The Government does not object. ECF No. 181 at 8–9. The Court deems this portion of the motion within the scope of Defendants' right of access under 18 U.S.C. § 1867(f) and therefore grants the requests.

**R. Status Codes**

Defendants next seek data on prospective grand jurors whose juror questionnaire forms were returned undeliverable, not returned, or were otherwise disqualified or exempted from service under the Jury Selection Plan. ECF No. 179 at 5 (citing Jury Selection Plan § 3.03). Defendants request this data in electronic format including "juror number, whether the form was returned undeliverable, whether the form was not returned, reason for disqualification, race, gender, Hispanic ethnicity, birth year, zip code, city, county, and jury division." *Id.* The Government objects first that such information must be requested from the Clerk of Court. ECF No. 181 at 9. For the reasons discussed above, the Court disagrees. The Government also objects to Defendants' request as exceeding the scope of the right of access. *Id.* The Court again disagrees. Information concerning the reason for a prospective grand juror's exclusion from the jury pool plainly qualifies as a "record[ ] ... used by the jury commission or clerk in connection with the jury selection process" potentially necessary to understanding whether the grand jury that returned the indictments in this case fairly represented the community. 18 U.S.C. § 1367(f). As such, the Court grants Defendants' request in this regard.

**S. Supplemental Draw Juror Numbers**

Defendants next seek the juror numbers of prospective grand jurors selected in the supplemental draw to replace individuals who failed to return a juror questionnaire, as well as the juror number of those who were replaced. ECF No. 179 at 5 (citing Jury Selection Plan § 3.02(b)). Relatedly, Defendants seek the juror numbers of those prospective grand jurors for whom a summons was issued as a result of their failure to appear or submit a juror questionnaire. *Id.* at 6 (citing Jury Selection Plan § 3.03). The Government objects to each request only on the grounds that such information must be requested from the Clerk of Court. ECF No. 181 at 9–10. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the requests.

**T. Grand Juror Numbers**

 **\*5**  Defendants request the juror numbers of those who served on the grand jury that returned the indictments in this case. ECF No. 179 at 6. The Government did not respond. *See* ECF No. 181 at 8–9. The Court deems this portion of the motion within the scope of Defendants' right of access under 18 U.S.C. § 1867(f) and therefore grants the request.

**U. Grand Jury Data Sources**

Defendants next seek the data sources for the Master Jury Wheel, namely voter registration lists as well as driver's license and identification lists. ECF No. 179 at 6 (citing Jury Selection Plan § 2.01). The Government objects that such information must be requested from the Clerk of Court. ECF No. 181 at 10–11. For the reasons discussed above, the Court disagrees and, because it finds this portion of Defendants' request within the scope of their right of access under 18 U.S.C. § 1867(f), grants the request.

**V. Juror Qualification Forms**

Defendants next seek the juror qualification and summons forms completed by persons summoned as prospective grand jurors for the grand jury that returned the indictments in this matter. ECF No. 179 at 6. Defendants consent to the forms being redacted as necessary to avoid the dissemination of irrelevant personal information, but that they include the following: race, gender, ethnicity, proffered "grounds for excuse" from jury service, and criminal history. [2] *See* ECF No. 183 at 8–11. The Government objects that this information exceeds the scope of the Defendants' right to access and the value of any potentially relevant information is outweighed by the burden of producing the forms and the risk of prospective grand jurors' personal information being improperly disseminated. ECF No. 181 at 11.

The Court disagrees with the Government on both counts. The completed jury selection forms, with the information Defendants' identify, are plainly "records ... used by the jury commission or clerk in connection with the jury selection process" potentially necessary to understanding whether the grand jury that returned the indictments in this case fairly represented the community. 18 U.S.C. § 1367; *United States v. Percival*, 756 F.2d 600, 614 (7th Cir. 1985) (affirming defendant's right of access to "all records, documents, forms, papers and devices, including individual juror questionnaires, relating to the process of selecting [ ] grand and petit juries"). Further, the Court finds the seriousness of the crimes with which Defendants are charged outweighs whatever burden may attend production of these materials, and that the risks associated can be adequately mitigated through reasonable protective measures, namely appropriate redaction of personal identifying information. *See* *United States v. Causey*, Case No. H-04-025, 2004 WL 1243912, at \*15 (S.D. Tex. May 25, 2004) (recognizing appropriate safeguards necessary to protect sensitive personal information in juror

questionnaires); *United States v. Bundy*, Case No. 3:16-CR-00051-BR, 2016 WL 9049641, at *3 (D. Or. Aug. 10, 2016) (citing *United States v. Jack*, No. CR.S-07-0266 FCD, 2009 WL 435124, at *3 (E.D. Cal. Feb. 20, 2009)) (authorizing disclosure of grand jury selection records but directing redaction of grand juror names and employment information). As such, the Court finds Defendants are entitled to the portions of the juror questionnaire forms they request under § 1867(f), though all other potentially identifying information will be redacted.

**W. Prospective Grand Juror Disposition**

**\*6** Defendants' final request is for information concerning the disposition of each prospective grand juror summoned in this case, namely "excusal, deferment, disqualification, or selection." ECF No. 179 at 6. The Government did not respond. *See* ECF No. 181 at 11. The Court deems this portion of the motion within the scope of Defendants' right of access under 18 U.S.C. § 1867(f) and therefore grants the request.

**X. Manner of Production**

The Government requests that whatever information is produced in response to Defendants' motion be redacted to protect personally identifiable information concerning prospective and impaneled grand jurors. ECF No. 181 at 11–12. As discussed above, the Court agrees and directs all records produced be redacted in such a manner as to make accessible the information Defendants request (e.g., birth year, division of residence, Hispanic ethnicity) but conceal personally identifying information. The Government also requests the Clerk's Office be authorized to select the "most practicable form of production." *Id.* at 12. At this stage, the Court declines to make such authorization, which may prove unnecessary. Instead, if either Defendants, the Government, or the Clerk's Office encounters difficulty or disagreement with respect to the manner in which the information is produced, they may seek appropriate relief from the Court.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant James Cloud's (01) Motion for Access to Grand Jury Selection Records and Materials, **ECF No. 179**, and Defendant Donovan Cloud's (02) motion for joinder in Defendant Cloud's (01) request, **ECF No. 180**, are **GRANTED IN PART** and **DENIED IN PART** as set out above.

2. All information and material, whether redacted or otherwise, produced pursuant to this Order ("Grand Jury Material") shall be subject to the following restrictions:

   **A.** Defense counsel may disclose and review the contents of Grand Jury Material with Defendants but shall not provide such Grand Jury Material to Defendants. Defendants shall not keep any Grand Jury Material in their possession.

   **B.** Defense counsel may copy or otherwise reproduce Grand Jury Material, and disseminate the same, only where necessary to evaluate, prepare, or present a motion brought under 28 U.S.C. § 1867, including to defense counsel and any retained expert or investigator. Grand Jury Material shall not be disseminated for any other purpose or to any individual or entity not involved in this case.

   **C.** All Grand Jury Material shall be destroyed upon completion of this case and any related appeals. Defense counsel shall file a notice with the Court confirming such destruction once it has been accomplished.

3. The Clerk's Office is **DIRECTED** to furnish the following records and information to Defendants:

   **A.** The United States District Court for the Eastern District of Washington's jury selection plan in effect at the time the grand jurors who returned the indictments in this matter were summoned;

   **B.** Any AO-12 or JS-12 form created that relate to the District and Divisional Master Jury Wheels and Qualified Jury Wheels used to summon the grand jurors who returned the indictments in this case;

   **C.** Any statistical or demographic analyses of the District and Divisional Grand Jury Wheels and Qualified Jury Wheels;

   **D.** The date on which the District's Master Jury Wheel was most recently refilled;

   **E.** The general notice explaining the process by which names are periodically and randomly drawn under § 1.11 of the Jury Selection Plan;

   **\*7 F.** The procedures employed to "purge" duplicate records, as described in § 2.02 of the Jury Selection

Plan, as well as any report or analysis of those procedures;

**G.** The calculations used to ensure summoned prospective grand jurors proportionately reflect the population of the District's counties, *see* Jury Selection Plan § 2.03;

**H.** Information on the procedures set out in the Jury Selection Plan for prospective grand jurors who fail to respond to the juror questionnaire;

**I.** Any report or analysis concerning the supplemental draw provided for in § 3.03 of the Jury Selection Plan;

**J.** Any report or analysis on the failure to submit a juror qualification questionnaire, as described in § 3.03 of the Jury Selection Plan;

**K.** Any "report or analysis" concerning the failure of prospective grand jurors to submit a response to the juror qualification questionnaire.

**L.** The date on which the grand jurors who returned the indictments in this matter were summoned;

**M.** Information on whether the grand jury that returned the indictments in this case was "divisional," "combined," or "entire district" as those terms are defined in § 4.05(b) of the Jury Selection Plan;

**N.** If the grand jury that returned the indictments in this case was drawn from the entire district or a combination of several divisions, the calculation of the ratio and number of grand jurors from each division;

**O.** The number of prospective grand jurors summoned from the Qualified Jury Wheel in this case;

**P.** Data, in electronic format, on the District and Divisional Master and Qualified Jury Wheels, **limited to** the individual's juror number, race, gender, Hispanic ethnicity, birth year, zip code, city, county, and jury division;

**Q.** Data, in electronic format, on prospective grand jurors whose juror questionnaire forms were returned undeliverable, not returned, or were otherwise disqualified or exempted from service under the Jury Selection Plan, **limited to** the individual's juror number, whether the form was returned undeliverable, whether the form was not returned, reason for disqualification, race, gender, Hispanic ethnicity, birth year, zip code, city, county, and jury division;

**R.** The juror numbers of prospective grand jurors selected in the supplemental draw to replace individuals who failed to return a juror questionnaire, as well as the juror number of those who were replaced;

**S.** The juror numbers of those prospective grand jurors for whom a summons was issued as a result of their failure to appear or submit a juror questionnaire;

**T.** The juror numbers of those who served on the grand jury that returned the indictments in this case;

**U.** The data sources for the Master Jury Wheel under § 2.01 of the jury selection plan, namely voter registration lists as well as driver's license and identification lists;

**V.** Juror qualification and summons forms completed by persons summoned as prospective grand jurors for the grand jury that returned the indictments in this matter, **redacted to eliminate all personally identifying information except for race, gender, ethnicity, proffered "grounds for excuse" from jury service, and criminal history**; and

**W.** Information concerning the disposition of each prospective grand juror summoned in this case, namely whether each was excused, deferred, disqualified, or impaneled.

**\*8**  IT IS SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 4381608

## Footnotes

1    The Court also credits Defendants' argument that requiring such requests be made to the Clerk of Court or Chief District Judge could prove unwieldy particularly in the event such a request was denied. *See* ECF No. 183 at 18. And insofar as the Jury Selection Plan could be read to deny parties to a criminal case access to jury selection information that they would otherwise be entitled to under § 1867(f), clearly the statutory and constitutional rights at issue would prevail.

2    Defendants also request information concerning prospective grand jurors health and employment status, both of which Defendant Cloud (01) argues relate to "whether Covid-19 has a disproportionate health impact on grand-jury-eligible minorities." ECF No. 183 at 9. For the reasons discussed above, the Court denies this request with leave to renew if subsequent indictments—returned by a grand jury impaneled during the pandemic—are returned.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.