UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, | |
| Defendant. | |

Defendant Ronald Yandell challenges the Magistrate Judge's order denying his motions for discovery. *See* MJ Order, ECF No. 1172; Objections, ECF No. 1181. The Magistrate Judge correctly denied these motions, as explained in full below. Yandell argues some of the evidence he seeks could support a motion to suppress evidence, but as the Magistrate Judge concluded, his proposed motions would be denied. In addition, the Magistrate Judge did not clearly err by deciding Yandell's discovery motions fell short of the standard set forth in Federal Rule of Criminal Procedure 16.

**I.   BACKGROUND**

The government alleges Yandell, a member of the Aryan Brotherhood, ordered murders and led a drug trafficking conspiracy in California prisons. *See generally* Indictment, ECF No. 25; Criminal Compl., ECF No. 1. It has charged him and several others under the federal RICO statute. *See* Indictment at 7–20; 18 U.S.C. § 1962(d). Before this case began, the

1

government applied for and received permission to listen in on phone calls between Yandell and another person; Yandell was using a contraband mobile phone in his state prison cell. *See* MJ Order at 1–2. Earlier this year, Yandell filed two discovery motions related to the federal wiretap. First, he sought information related to an affidavit the government had relied on to obtain the court's authorization for the wiretap. ECF No. 1023. Second, he sought information about the affidavit the government filed with the criminal complaint. ECF No. 1040. Those motions were referred to Magistrate Judge Allison Claire under a previous order. *See* Order (May 11, 2022), ECF No. 1168. The parties briefed the motions, and the Magistrate Judge heard oral arguments. *See* Mins., ECF No. 1166. She denied both motions. *See generally* MJ Order.

First, the Magistrate Judge concluded any evidence Yandell might obtain could not support a successful motion to suppress evidence from the phone calls. It is not reasonable to expect privacy on a contraband cell phone in a prison, so the Fourth Amendment offered him no recourse. *See id.* at 5–7. Yandell also relied on Title III of the Wiretap Act. Although the Magistrate Judge agreed Yandell is an "aggrieved person" who could move to suppress evidence under that law, she concluded he could not show his conversations were unlawfully intercepted, as necessary for a Title III claim. *See id.* at 7–8.

Second, the Magistrate Judge emphasized the generality of Yandell's discovery requests. *See id.* at 9–11. Although he had identified some "particular documents or videos," he had essentially sought "whatever evidence the affiant relied on (or disregarded) in making every factual allegation in the affidavit." *Id.* at 10. In the Magistrate Judge's assessment, these requests fell short of Rule 16: "[n]either a general description of the information sought nor conclusory allegations of materiality suffice." *Id.* (quoting *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995)).

Third, the Magistrate Judge rejected Yandell's argument that he could use the information he asked for to support a motion under *Franks v. Delaware*, 438 U.S. 154 (1978). The Magistrate Judge held Yandell could not rely on *Franks* because he had not filed a motion based on *Franks*. Nor had he explained how the evidence he sought might prove an affidavit included a false statement. *See* MJ Order at 9.

Yandell's challenge to the Magistrate Judge's order relies on two basic arguments. ECF No. 1181. First, he argues it was too soon to think about whether a motion to suppress evidence or a motion based on *Franks* would be viable. He has not yet filed any such motions, and in his view, they would raise difficult and unsettled legal questions. *See id.* at 6–13. Second, Yandell argues the Magistrate Judge incorrectly assessed his discovery requests under Rule 16. *See id.* at 14–20. The government disputes both contentions. *See generally* Opp'n, ECF No. 1208. Yandell has replied. ECF No. 1226. The court heard oral arguments on August 31, 2022. David Spencer and Ross Pearson appeared for the United States, and Bradley Levenson and Peter Arian appeared for Yandell. The defense requested permission to file a supplemental brief at the hearing. The court granted that request and permitted the government to respond. The parties have now both filed these supplemental briefs. *See* Def.'s Suppl. Br., ECF No. 1271; Gov't Suppl. Br., ECF No. 1282. The government also filed a notice of supplemental authority, ECF No. 1293, to which Yandell has responded, ECF No. 1304.

As a threshold matter, the parties disagree about what legal standard the court should use when reviewing the Magistrate Judge's order. *Compare* Opp'n at 5–6 *with* Reply at 2–5. The court begins with this question.

**II.   LEGAL STANDARD**

The government argues Yandell's motion is a pretrial discovery motion the Magistrate Judge could resolve directly and finally. *See, e.g.*, Opp'n at 7. Yandell argues the Magistrate Judge's decision essentially disposes of a motion to suppress, which the Magistrate Judge could not resolve, so he argues the Magistrate Judge's order must be interpreted as a recommendation only. *See* Reply at 2–5. The government has the better of this dispute. The Magistrate Judge did not deny a motion to suppress evidence; she denied a motion for discovery. Yandell cites no authority to show a pretrial discovery motion in a felony case is beyond a magistrate judge's authority to resolve directly just because it raises questions about a future motion to suppress.

Even if Yandell were correct—if the Magistrate Judge had no authority to issue a final decision on his motion—the legal standard would be the same. A district judge may designate a magistrate judge to make decisions on "any pretrial matter," with a number of exceptions, such as

3

a motion "to suppress evidence in a criminal case." 28 U.S.C. § 636(b)(1)(A). Once a magistrate judge issues an order under this delegated authority, the district judge can "reconsider" that order. *Id.* When doing so, the district court decides whether the order is "clearly erroneous or contrary to law." *Id.*; *see also* E.D. Cal. L.R. 303(f). These two standards, "clearly erroneous" and "contrary to law," apply to different aspects of the magistrate judge's order. The "contrary to law" standard applies to legal determinations. *See, e.g.*, *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). The district court exercises its "independent judgment with respect to a magistrate judge's legal conclusions." *Id.* The "clearly erroneous" standard applies to the magistrate judge's factual determinations and discretionary decisions. *See id.* (citing *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 748 (9th Cir. 1990)). This standard is more deferential. A decision is "clearly erroneous" if the district court "is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 622 (1993) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

If a magistrate judge cannot issue an order under delegated authority from a district judge, the district judge may instead "designate a magistrate judge to conduct hearings" and submit "proposed findings of fact and recommendations," to which the parties may object. 28 U.S.C. § 636(b)(1); E.D. Cal. L.R. 304. The district court then makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

It may be there is no practical difference between deciding whether a magistrate judge's legal decisions are "contrary to law" and reviewing a magistrate judge's recommendations "de novo." *See, e.g.*, *Sentinel Offender Servs., LLC v. G4S Secure Sols., Inc.*, No. 14-298, 2015 WL 13546228, at *2 (C.D. Cal. Sept. 3, 2015) (collecting conflicting authority); *Computer Econ.*, 50 F. Supp. 2d at 983 n.2 (same). The Ninth Circuit's decisions are ambiguous. *Compare, e.g.*, *Stoyas v. Toshiba Corp.*, No. 15-04194, 2022 WL 3030523, at *2 (C.D. Cal. July 29, 2022) (interpreting circuit precedent as equating the standards), *with, e.g.*, *Sentinel*, 2015 WL 13546228, at *2 (expressing doubts). This court has held the standards are identical for practical purposes.

4

*See, e.g.*, *United States v. Brady*, No. 19-00107, 2022 WL 1155751, at *2 (E.D. Cal. Apr. 19, 2022). The court confirms that conclusion here. De novo review is an independent review; so is deciding whether an order is "contrary to law." *See, e.g., Stoyas*, 2022 WL 3030523, at *2; *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

Here, the Magistrate Judge's reasoning about a potential motion to suppress was legal and answered a legal question. Yandell's challenge to her conclusions argues they were contrary to law. No matter whether the Magistrate Judge's decision is more appropriately seen as an "order" or "findings and recommendations," this court would undertake the same independent analysis: was the decision legally correct? By contrast, for the Magistrate Judge's other decisions, such as her conclusion that Yandell's discovery request is overly generalized, the court must decide whether the decision was a clear error. Yandell does not argue otherwise.

The court begins with the legal question: can Yandell justify his discovery requests by tying them to a future motion to suppress?

### III.  DISCOVERY FOR MOTION TO SUPPRESS

The Magistrate Judge began with the premise that a criminal defendant can seek discovery from the government as part of an effort to prepare a motion to suppress. *See* MJ Order at 4–5. For now, neither Yandell nor the government disputes that conclusion. Next, the Magistrate Judge explained why Yandell could not rely on the Fourth Amendment in a future motion to suppress evidence. *See id.* at 5–7. Yandell does not contest that conclusion directly, *see* Objections at 11 n.5, but it was correct, and it is worth reiterating, as will become clear below.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., am. IV. To decide whether a defendant enjoys this protection, the Supreme Court has asked whether that person "justifiably relied" on an expectation of privacy. *Katz v. United States*, 389 U.S. 347, 353 (1967). In other words, is a person's particular expectation of privacy "the kind of expectation that 'society is prepared to recognize as reasonable'"? *Hudson v. Palmer*, 468 U.S. 517, 525 (1984) (quoting *Katz*, 389 U.S. at 361 (Harlan, J., concurring)).

The Supreme Court has used this test to weigh the privacy claims of prison inmates. In *Hudson*, for example, the Court decided that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. For this reason, the government can seize and search an inmate's contraband cell phone without a warrant. *See, e.g.*, *United States v. Bash*, No. 20-00238, 2021 WL 3207252, at *3 (E.D. Cal. July 29, 2021). Yandell does not argue otherwise. *See* Objections at 8.

If the Fourth Amendment does not protect against unannounced searches of prison cells and seizures of contraband phones, then it is hard to see why the government cannot secretly listen in on an inmate's illegal phone calls. Neither the Supreme Court nor the Ninth Circuit has weighed a prison inmate's claim to privacy during calls on a contraband phone, but every court that has asked this question has answered it the same way. The Fourth Amendment offers no protection. *See, e.g.*, *United States v. Bash*, No. 20-00238, 2022 WL 4788482, at *3 (E.D. Cal. Oct. 3, 2022); *United States v. York*, No. 16-00069, 2017 WL 5068143, at *4 (E.D. Cal. Sept. 29, 2017); *United States v. Rodriguez*, No. 13-4514, 2015 WL 468358, at *1–2 (S.D. Cal. Feb. 3, 2015). The reason is straightforward. Society is unwilling to tolerate cell phones in prison cells, so by definition, it is unwilling to tolerate private conversations on those phones. The conversation itself is illegal. *See York*, 2017 WL 5068143, at *4; *Rodriguez*, 2015 WL 468358, at *1–2. Yandell could not rely on the Fourth Amendment to suppress evidence gathered from his phone calls, so he cannot justify his discovery requests by pointing to a prospective Fourth Amendment suppression motion.

In addition to the Fourth Amendment, Yandell argues the discovery he seeks could support a suppression motion under Title III of the Wiretap Act. That law permits an "aggrieved person" to "move to suppress the contents of any [intercepted] wire or oral communication . . . or evidence derived therefrom" on three grounds, including that "the communication was unlawfully intercepted." 18 U.S.C. § 2518(10)(a). The statute defines an "aggrieved person" as "a person

who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." *Id.* § 2510(11).

On the one hand, the broad definition of "aggrieved person" appears to describe Yandell. He was a "party" to an intercepted "oral communication." *Id.* The Supreme Court has written, however, that Congress intended courts to interpret the Wiretap Act's definition of aggrieved person "in accordance with existent standing rules." *Alderman v. United States*, 394 U.S. 165, 176 n.9 (1969). After *Alderman*, the Ninth Circuit and other federal courts of appeal have held the Wiretap Act did not loosen the Fourth Amendment's standing requirements. *See United States v. King*, 478 F.2d 494, 506 (9th Cir. 1973) ("Both the language of the statute and its legislative history make it clear that it does not broaden the rule of standing provided for in Rule 41(e) . . . relating to Fourth Amendment motions to suppress."); *see also, e.g.*, *United States v. Faulkner*, 439 F.3d 1221, 1223 (10th Cir. 2006) (holding similarly); *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir. 1988) (same). If a defendant does not have "standing" to mount a Fourth Amendment challenge, a Title III challenge would likewise be unavailable. *See, e.g.*, *Bash*, 2022 WL 4788482, at *3.

As a result of this interpretation of "aggrieved person," if the expectation-of-privacy rule is an aspect of Fourth Amendment "standing," then it is a prerequisite for a Title III challenge as well. Courts have often referred to the expectation-of-privacy rule as a "standing" rule in Fourth Amendment cases. The Supreme Court has held this terminology is something of a misnomer, *see Minnesota v. Carter*, 525 U.S. 83, 87 (1998) (citing *Rakas v. Illinois*, 439 U.S. 128, 139–40 (1978)), but at least one district court has interpreted the Supreme Court's cases as limiting Title III to the dimensions of the expectation-of-privacy rule, *see United States v. Allen*, No. 17-208, 2018 WL 6242868, at *2–3 (S.D. Ga. Nov. 29, 2018), *adopted in relevant part*, 2019 WL 254661 (S.D. Ga. Jan. 17, 2019). District courts within the Ninth Circuit also have rejected the argument that prison inmates can assert independent Title III claims as "aggrieved persons," based on a similar understanding of a defendant's privacy expectations. *See Bash*, 2022 WL 4788482, at *3.

The government urges the court to accept this interpretation. *See* Opp'n at 9. The court agrees it is a persuasive reading of the Supreme Court's other cases. Although Congress can

create broader statutory rights than the Fourth Amendment offers, the legislative history and statutory context of Title III show it did not intend to do so. *See Alderman*, 294 U.S. at 176 n.9. A Senate Report created while Congress was considering the Wiretap Act explains the definition of "aggrieved person" was "intended to reflect existing law" and cited Supreme Court opinions interpreting the Fourth Amendment. S. Rep. 90-1098, 1968 WL 4956, at *2179–80 (Apr. 29, 1968) (citing *Jones v. United States*, 362 U.S. 257 (1960),[1] *Goldstein v. United States*, 316 U.S. 114 (1942); and *Wong Sun v. United States*, 371 U.S. 471 (1963)). By citing these decisions, Congress suggested it expected the standing rules for Fourth Amendment challenges would limit who could assert claims under the Wiretap Act. In *Jones*, for example, the Supreme Court reiterated that one "who seeks to challenge the legality of a search as the basis for suppressing relevant evidence" must allege and prove "he himself was the victim of an invasion of privacy." 362 U.S. at 261.[2] As the Ninth Circuit has put it, "to say that a party lacks fourth amendment standing is to say that *his* reasonable expectation of privacy has not been infringed." *United States v. Moalin*, 973 F.3d 977, 994 (9th Cir. 2020) (emphasis in original) (quoting *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991)). A defendant may move to suppress the fruits of a wire-tap under Title III "only if his privacy was actually invaded." *King*, 478 F.2d at 506.

The evidence of Congress's likely intent is even stronger in a case such as this one, as another district court has persuasively explained: by asserting rights under Title III, a defendant implicitly contends "he has a statutory right to illicitly use a contraband cellular phone to communicate with others about a criminal conspiracy." *United States v. Garibay*, No. 13-4514, 2015 WL 468404, at *3–4 (S.D. Cal. Feb. 3, 2015). Could Congress have intended to protect inmates' illegal conversations? Surely not. *See id.* When people have no justifiable expectation of privacy, they are not "aggrieved" under the terms of Title III.

---

[1] The Supreme Court later overruled *Jones* in part by holding "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." *United States v. Salvucci*, 488 U.S. 83, 85 (1980).

[2] When the Supreme Court overruled *Jones*, it again emphasized the importance of a legitimate expectation of privacy. *See Salvucci*, 448 U.S. at 91 ("We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched.").

The Supreme Court's and Ninth Circuit's clear references to privacy in their Fourth Amendment decisions support the conclusion Yandell cannot succeed by arguing the Supreme Court was concerned with different problems in *Alderman*. *See* Def.'s Suppl. Br. at 7. Nor can he succeed by pointing out how the Wiretap Act is broader or more specific than the Fourth Amendment, *see* Def.'s Suppl. Br. at 4, or that inmates have statutory rights to privacy under Title III, *see* Resp. Not. Suppl. Auth. at 2, ECF No. 1304. Yandell cannot claim the Wiretap Act's statutory protections if he is not an "aggrieved person."

Yandell also argues it is too soon to confront these questions, first because he has not actually moved to suppress anything. *See* Objections at 6–7. No matter what evidence he might ask to suppress, however, and no matter what the government might have learned while eavesdropping on his phone calls, he would face the same insurmountable hurdles discussed above. Second, Yandell argues the law is unclear, complex, and unsettled. *See* Objections at 7. It is not. Yandell has cited no case in which a court held an inmate has a justifiable expectation of privacy in prison-cell conversations on a contraband phone. Nor has he cited any decisions permitting inmates to rely on Title III to suppress evidence obtained from a wiretap on a contraband cell phone. The court's own searches have identified no authority to support his position.

In sum, the court disagrees with the Magistrate Judge that Yandell is an "aggrieved person" under Title III; he is not. But for that reason, the Magistrate Judge reached the correct result in denying Yandell's discovery motions based on the Fourth Amendment and Title III.

**IV.   DISCOVERY FOR OTHER PURPOSES**

Yandell also argues he is entitled to discovery of evidence that would not necessarily be tied to a motion to suppress. *See* Objections at 14–20. This evidence might include, for example, documents he could rely on in persuading the government not to pursue capital charges. *See id.* at 18–20.

The Magistrate Judge identified and applied the correct legal rule to this argument: Federal Rule of Civil Procedure 16. *See* MJ Order at 2–3. In short, under this rule, a defendant may request information from the government that is "material to preparing the defense" and

9

1  "within the government's possession, custody, or control," subject to several exceptions. Fed. R.
2  Crim. P. 16(a)(1)(E)(i). A defendant who requests discovery under Rule 16(a)(1)(E)(i) "must
3  make a prima facie showing of materiality." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th
4  Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of
5  materiality suffice . . . ." *Id.*

6  The decision to permit or deny discovery under these rules is discretionary. *See id.* For
7  that reason, Yandell must show the Magistrate Judge clearly erred by denying his motion. *See*
8  *Computer Econ.*, 50 F. Supp. 2d at 983. As noted above, a decision is "clearly erroneous" if the
9  district court "is left with the definite and firm conviction that a mistake has been committed."
10 *Concrete Pipe*, 508 U.S. at 622 (citation omitted). This standard is "significantly deferential." *Id.*
11 at 623. If a decision is "debatable," there is no "clear error." *United States v. Wanland*,
12 No. 13-02343, 2017 WL 3712908, at *3 (E.D. Cal. Aug. 29, 2017).

13 The Magistrate Judge's decision was not clearly in error. As explained in her order,
14 Yandell's requests were often so broad as to lack any useful limits. *See* MJ Order at 10. The first
15 request in the motion (ECF No. 1040) is illustrative. Yandell asked the government to produce
16 all "[d]ocuments comprising information that 'the Aryan Brotherhood is a race-based gang
17 formed in the California prison system in about 1964 by white inmates who wanted to gain power
18 and authority in prison.'" Mot. Discovery at 3, ECF No. 1040 (quoting Criminal Compl. at 23).
19 He defined "documents" as including virtually anything that could convey information:

> The term "documents" includes, without limitation, and whether in electronic or paper format, the following: correspondence, email communications, memoranda, reports, handwritten notes, photographs, electronic computer entries, audio recordings, video recordings, audiovisual recordings, spreadsheets and other compilations of data, slideshows and/or PowerPoint presentations, as well as drafts and final versions of each of these items

27 *Id.* In effect, Yandell asked for all information the government possesses about the Aryan
28 Brotherhood and its goals since 1964. And this is just the first of more than a hundred discovery
29 requests. *See id.* at 3–18.

Yandell also offered mostly generalized explanations about why he contends the requested information is material. *See* MJ Order at 9–10. Although he offered some specific explanations of materiality in his reply, he did not tie specific requests to those explanations. *See, e.g.*, Reply to Mot. Compel at 9, ECF No. 1152 (arguing large group of requests was "relevant to whether the government can prove the [Aryan Brotherhood] meets the definition of 'enterprise'" and "whether the alleged acts . . . were done based on personal vendetta" rather than "to facilitate Mr. Yandell's role in the [Aryan Brotherhood]"). The Magistrate Judge did not clearly err in saying these explanations were insufficient.

The reasoning above applies equally to Yandell's arguments that the discovery he seeks might support a motion under *Franks*. These arguments are derivative of his arguments about the Fourth Amendment, Title III and Rule 16. *See* Objections at 12 & n.6; Reply at 5–6 n.4.

## V.   CONCLUSION

Yandell's motion for reconsideration of the Magistrate Judge's order at ECF No. 1172 is **denied**.

IT IS SO ORDERED.

DATED: November 30, 2022.

CHIEF UNITED STATES DISTRICT JUDGE