UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:19-cr-00107-KJM |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, | |
| Defendant. | |

Defendants Ronald Yandell, Danny Troxell, William Sylvester, Brant Daniel, Pat Brady and Jason Corbett move to compel the United States to disclose which statements it will attempt to admit at trial under the hearsay exception in Federal Rule of Evidence 801(d)(2)(E). As explained in this order, the court **denies** the motion. Defendants have not shown the disclosures they seek would lead to a more efficient or reliable trial. Rather, defendants' proposal would complicate and delay the matter unnecessarily.

**I.      BACKGROUND**

The defendants have been indicted on conspiracy charges for violations of 18 U.S.C. § 1962(d). *See generally* Indictment, ECF No. 25; Superseding Indictment, ECF No. 1375. Some charges in the superseding indictment are punishable by death, but the government has not

determined whether it will seek the death penalty. *See* Superseding Indictment at 25–30.[1] Despite that uncertainty, this court has managed the case as a capital case since 2019. *See, e.g.*, Order (Aug. 5, 2019), ECF No. 119 (appointing counsel to represent Yandell under 18 U.S.C. § 3005).

The first filing on the docket of this action is a 143-page criminal complaint and affidavit detailing many parts of the alleged conspiracy. *See generally* Compl. & Aff., ECF No. 1. In short, the government alleges the defendants are members of the Aryan Brotherhood, a criminal enterprise within the California State prison system, who planned and carried out murders and trafficked drugs. The complaint and attached affidavit survey evidence the government will likely introduce at trial, including several intercepted calls on contraband cell phones; the affidavit uses many direct quotations from those calls to substantiate the government's allegations. *See, e.g.*, Nehring Aff. at 42–49, ECF No. 1 (describing conversations about a heroin sale). The government also has turned over extensive discovery materials, including more than 100,000 pages of documents, more than 600 hours of audio and more than 140 hours of video. In addition, some defendants—including participants in the alleged conspiracy—already have entered guilty pleas. They have admitted under oath they participated in the alleged conspiracy, and they have agreed the government could prove several specifics at trial. Significant portions of these defendants' admissions are available on the docket of this action. *See* Opp'n at 7–13, ECF No. 1334 (summarizing pleas and admissions).

The court previously set trial for the moving defendants to begin in March of this year, *see, e.g.*, Order (Sept. 6, 2022), ECF No. 1269, but it recently reset the trial to begin in February 2024, *see* Mins., ECF No. 1404. Some defendants request an earlier trial date. *See* Mins., ECF No. 1404; Def. Daniel's Status Rep., ECF No. 1392; Mot. Sever, ECF No. 1426. The government also has already moved to vacate the March 2023 trial date for the other defendants, and that motion is pending. *See* Mot. Vacate, ECF No. 1413.

---

[1] To avoid confusion, this order cites the page numbers applied to the filed copy of the superseding indictment by the CM/ECF system to the top right of each page.

Regardless of the trial date, the defendants seek an order "compelling the government to identify all statements that it may seek to introduce at trial" under Federal Rule of Evidence 801(d)(2)(E), which permits a court to admit statements by a party's co-conspirators in some situations. Mot. at 1, ECF No. 1318. The defendants request a proffer from the government 90 days before trial with a "list or chart" of several details for each statement: "the declarant, the approximate date of the statement, the statement or a summary of the statement, if appropriate, the pertinent event, the source or witness, and an explanation for the admissibility of each statement under the co-conspirator exception and any additional grounds for admissibility." *Id.* at 4. The court received full briefing and heard oral arguments at a status conference and motion hearing on January 26, 2022. *See generally* Opp'n, ECF No. 1334; Reply, ECF No. 1339; Mins., ECF No. 1404.

## II.    DISCUSSION

The Federal Rules of Evidence make exceptions to the ordinary rule against hearsay for a co-conspirator's out-of-court statements. A statement by a member of a conspiracy is not hearsay if the defendant was a member of the same conspiracy, if the statement was made during the conspiracy and if it was made in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Admissibility under this exception is a preliminary and procedural question, not one of guilt or liability, so in a criminal case it is for the court to decide, not the jury. *See Bourjaily*, 483 U.S. at 175. The standard of proof is a preponderance of the evidence. *Id.* at 175–76.

The three-part test for admissibility under Rule 801(d)(2)(E) can make the government's evidentiary burden somewhat circular in a conspiracy prosecution: the government might attempt to prove the conspiracy using evidence that itself requires proof of a conspiracy. This raises several logistical questions. If the government would like to admit the statement of an alleged co-conspirator, should the court require the government to prove first that the defendant was part of the alleged conspiracy? If so, when must it offer that proof, and in what setting? By pretrial motion? In an evidentiary hearing? At trial? Or should the court instead permit the government to introduce the statements during trial on the condition that proof be introduced later, as the

1  Federal Rules expressly permit in questions of relevance? *See* Fed. R. Evid. 104(b) ("When the
2  relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to
3  support a finding that the fact does exist.  The court may admit the proposed evidence on the
4  condition that the proof be introduced later.").

5  Rule 801(d)(2) does not outline a procedure.  Nor do the Federal Rules of Criminal
6  Procedure.  The Ninth Circuit and Supreme Court have not imposed specific requirements either.
7  The Ninth Circuit has instead left the decision to a district court's discretion in recognition of "the
8  need for flexibility and judgment" about "the particular nature of each case." *United States v.*
9  *Kenny*, 645 F.2d 1323, 1334 (9th Cir. 1981).  The Federal Rules of Evidence also speak generally
10 about a district court's discretion to "exercise reasonable control over the mode and order of
11 examining witnesses and presenting evidence." Fed. R. Evid. 611(a).  The goal is an "effective"
12 procedure that avoids "wasting time" and "protect[s] witnesses from harassment or undue
13 embarrassment." *Id.*

14 Although the Ninth Circuit has not imposed a procedure, it has approved of one: a co-
15 conspirator's out-of-court statements "may be admitted provisionally subject to later motions to
16 strike." *United States v. Batimana*, 623 F.2d 1366, 1369 (9th Cir. 1980); *see also, e.g.*, *Kenny*,
17 645 F.2d at 1333–34.  One advantage of this approach is its potential efficiency.  It allows the
18 government to present all of its evidence only once, and it allows the court to have all of that
19 evidence when it decides whether to admit the disputed statements.  One disadvantage of this
20 procedure is its obvious risks.  If the government does not ultimately prove the underlying
21 conspiracy as alleged, then it may have disclosed inadmissible hearsay to the jury.  It may be
22 difficult or even impossible to separate admissible from inadmissible evidence after the fact,
23 which could lead to a mistrial.  *See Kenny*, 645 F.2d at 1333–34.

24 Alternatively, a district court could require the government to prove the conspiracy first.
25 The first part of the trial, for example, could be dedicated to proving the conspiracy.  Justice
26 Robert Jackson once advocated this procedure in a concurring opinion.  *Krulewich v. United*
27 *States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring).  A front-loaded procedure could even
28 begin before trial with an evidentiary hearing before the court only.

4

1    In the late 1970s, the Fifth Circuit described this frontloaded procedure as the "preferred order of proof." *United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979) (en banc). More recently, however, appellate courts have expressed reservations. *See, e.g.*, *United States v. Andrus*, 775 F.2d 825, 837 (7th Cir. 1985); *Kenny*, 645 F.2d at 1333–34. A fully frontloaded procedure prevents mistrials, but at a high price. As the Ninth Circuit wrote in *Kenny*, this price is highest in complex cases with many alleged conspirators. "The District Court would face numerous difficult rulings based on nice distinctions between evidence going to the existence of the conspiracy and evidence of a defendant's acts in perpetration of the conspiracy." 645 F.3d at 1333. When one of the alleged conspirators testifies for the government, "such distinctions would become nearly impossible to draw." *Id.*

    Some courts have sought a middle ground. The Seventh Circuit, for example, has advised district courts to "require the government to preview the evidence which it believes brings the statements within the co-conspirator rule." *United States v. Schoffner*, 826 F.2d 619, 630 (7th Cir. 1987). This "preview" might be as simple as a pretrial proffer to give the district court some comfort a mistrial is unlikely if it permits the government to introduce a co-conspirator's statements conditionally. *See, e.g.*, *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) (outlining possible procedures). Other courts have addressed the admissibility decision at the pretrial stage but have scrapped the pretrial hearing. The United States District Court for the Northern District of California, for example, has made a preview procedure part of its local rules for criminal cases. It requires the government to disclose a "summary" of any statements it intends to offer under the hearsay exception. N.D. Cal. Crim. L.R. 16-1(c)(4). The summary must include "sufficient detail that the Court may rule on the admissibility of the statement." *Id.*

    In some cases, a middle-ground solution like this would likely save time and reduce the risk of presenting inadmissible evidence to the jury. But in this case, the middle ground has several disadvantages. Two are most significant.

    The Jencks Act is the first. The Jencks Act takes its name from *Jencks v. United States*, 353 U.S. 657 (1957). In that case, the Court held a criminal defendant has a right under the Due Process Clause to inspect certain statements by government witnesses. *See id.* at 667–72; *see also*

5

*Palermo v. United States*, 360 U.S. 343, 345–46 (1959) (summarizing *Jencks*). Congress passed the Jencks Act in almost immediate response to the *Jencks* decision. *See Palermo*, 360 U.S. at 346. Congress recognized defendants' rights to review evidence that could help impeach government witnesses. *See United States v. Bobadilla-Lopez*, 954 F.2d 519, 521 (9th Cir. 1992) (citing legislative history). But more importantly, Congress intended to stop "wholesale disclosure of government materials and files." *Id.* This was likely its more pressing concern. *See id.* It feared expansive interpretations of *Jencks* might "compel the undiscriminating production of [an] agent's summaries of interviews regardless of their character or completeness," for example. *Palermo*, 360 U.S. at 350. The government might be forced to "reveal the inner workings of the investigative process." *Id.* Defendants might use statements to impeach witnesses who did not make them. *Id.*

Under the Jencks Act, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). After a government witness testifies on direct, "the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." *Id.* § 3500(b). If the government withholds any statements in response to the court's order, it must produce them "for the inspection of the court in camera." *Id.* § 3500(c). The court must then "excise the portions of such statement which do not relate to the subject matter of the testimony of the witness" and direct the government to produce the balance. *Id.* If the government does not produce the statement as directed, "the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared." *Id.* § 3500(d).

These provisions are the exclusive means of producing the statements the statutes describe. That is, if a covered statement cannot be produced under the terms of the Jencks Act, it "cannot be produced at all." *Palermo*, 360 U.S. at 351. Even constitutionally derived protections

might give way. In this circuit, for example, "[w]hen the defense seeks evidence which qualifies as both Jencks Act and *Brady* material, the Jencks Act standards control." *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004) (quoting *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), and citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

In sum, the Jencks Act creates a specific procedure for disclosing the statements of government witnesses and related evidence, and it is the exclusive procedure for disclosing that evidence. So if a district court ordered the government to disclose the evidence prematurely—such as in a pretrial proffer or evidentiary summary related to Rule 801(d)(2)(E)—the order could be in error. *See, e.g.*, *United States v. Mills*, 641 F.2d 785, 790 (9th Cir. 1981). Avoiding such an error could be time-consuming and contentious particularly in this case, which involves many alleged conspirators, a great deal of evidence, a complex record and very serious charges. If the government were permitted to introduce statements conditioned on evidence admitted later under the Jencks Act, then these disputes would never arise.

The government relies heavily on the D.C. Circuit's decision in *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988). *See, e.g.*, Opp'n at 5. In *Tarantino*, the defendants had come up with a creative argument to avoid the Jencks Act. They argued that under the hearsay exception in Rule 801(d)(2), a co-conspirator's statements were attributed to them under an agency theory. *See Tarantino*, 846 F.2d at 1418. If a defendant is part of a conspiracy, the co-conspirator's statements are legally his own. *See id.* The Jencks Act does not apply to the defendant's own statements. *See* 18 U.S.C. § 3500(a). As a result, the defendants argued, the Jencks Act did not stand in the way of their requests for information about an alleged co-conspirator's statements. *See Tarantino*, 846 F.2d at 1418. The D.C. Circuit found this argument too clever by half. *See id.* But it did not address the broader issue: how a district court can or should set the order of proof when the government intends to rely on Rule 801(d)(2)(E), as here. The defendants in this case do not make the more specific arguments the D.C. Circuit disagreed with in *Tarantino*, so the D.C. Circuit's opinion does not clearly favor either party in this case.

In sum, the first disadvantage of a frontloaded procedure about co-conspirators' statements for this case is the additional significant time and effort that would be necessary to

7

avoid the erroneously premature disclosure of materials protected by the Jencks Act, if doing so is possible at all. Waiting to make decisions about co-conspirators' statements until trial will avoid delays and unnecessary efforts while preserving the defendants' rights to review protected materials and object to hearsay evidence.

The second disadvantage is similar to the first. It stems from the government's privilege to withhold "the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* Locating and deploying confidential informants would be difficult if the government were always forced to unmask them at trial. This privilege "must give way" if the informant's identity or communications are "relevant and helpful to the defense" or are "essential to a fair determination of a cause." *Id.* at 60–61. The court must consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62.

If the government intends to rely on information from confidential informants to prove who was a part of a conspiracy and when, it could invoke the *Roviaro* privilege against disclosure of specifics during a pretrial procedure focused on hearsay statements. If the defense contested the government's assertion of that privilege, the court would then need to weigh the risks and benefits of demanding more detailed information. The organization the defendants were allegedly a part of in this case, the Aryan Brotherhood, is widely reported to violently punish perceived disloyalties. *See, e.g.*, *United States v. Littrell*, 478 F. Supp. 2d 1179, 1181–82 (C.D. Cal. 2007). In this case, resolving *Roviaro* privilege disputes pretrial is likely to be a time-consuming and difficult endeavor that will require a great deal of context and potentially duplicative evidentiary presentations.

In addition to noting these two disadvantages, the government makes a third point. It argues the risk of a mistrial is likely lower in this case than others. The primary benefit of frontloading decisions about the admissibility of co-conspirators' statements is the certainty a

frontloaded procedure offers against mistrials and post-trial motions to exclude. *See, e.g.*, *Kenny*, 645 F.2d at 1334 (referring to the pretrial procedure as "fail-safe"). The court knows from the start whether the government is likely to prove the alleged conspiracy. In this case, however, the government has already disclosed a great deal of evidence and information about the alleged conspiracy, including in the original and superseding indictments, the 143-page criminal complaint and extensive discovery. It has also obtained the convictions of several alleged co-conspirators by guilty pleas. Their plea agreements include admissions under penalty of perjury that the government could prove the alleged conspiracy. With so much evidence of a conspiracy already on the public record and in the defendants' possession, it seems unlikely the jury will hear evidence that should not have been admitted under the hearsay exception.

This is not to say the government has already proven the alleged conspiracy, neither by a preponderance of evidence, as will be necessary to admit statements under Rule 801(d)(2)(E), nor beyond a reasonable doubt, as will be necessary to convict. The court therefore denies the government's request to decide now that any particular statement is admissible under Rule 801(d)(2)(E). On the other hand, however, the court does not rule out the possibility the government could make the necessary showing in a future motion. By the same token, the defense could likely target particular statements in motions *in limine*.

Finally, this is far from a simple, straight forward case. The evidentiary record is lengthy. Making necessary decisions about the length of the alleged conspiracy, its participants and their statements is likely to be difficult if not impossible without a great deal of context. Without that context, a pretrial procedure focused on co-conspirators' statements is unlikely to be a useful or reliable way to determine whether those statements are admissible. The defendants' proposed table or chart shows that is so: for every statement, they ask the government to identify "the declarant, the approximate date of the statement, the statement or a summary of the statement, if appropriate, the pertinent event, the source or witness, and an explanation for the admissibility of each statement under the co-conspirator exception and any additional grounds for admissibility." Mot at 4. The costs of this proposed pretrial procedure, including likely duplication of effort and delays, are likely to be high.

In sum, when the possible advantages of a pretrial procedure about co-conspirators' statements are lined up against its risks, that procedure is difficult to justify in this case. Waiting until trial will allow the court to make the required decisions with the necessary context, and will avoid conflicts over the Jencks Act and the identities of confidential informants. Without prejudging the question, the risk of a mistrial based on provisionally admitted hearsay evidence may be lower in this case than others. The government has already disclosed a great deal of information about the alleged conspiracy, and several defendants have admitted to participating in the alleged conspiracy.

### III.   CONCLUSION

District courts have discretion in setting the order of proof, including by allowing the government to introduce co-conspirator statements provisionally. *See, e.g.*, *Kenny*, 645 F.2d at 1334. Defendants have not shown their proposed proffer is worth its likely costs in this case. The court **denies** their motion to disclose co-conspirator statements (ECF No. 1318).

IT IS SO ORDERED.

DATED: February 16, 2023.

CHIEF UNITED STATES DISTRICT JUDGE