UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>    v.<br><br>Ronald Yandell,<br><br>        Defendant. | No. 2:19-cr-00107-KJM<br><br>ORDER |

In this action, the United States charges the defendants with conspiracy to participate in a racketeering enterprise, conspiracy to commit murder in aid of racketeering, murder in aid of racketeering and several controlled substance offenses. A grand jury returned a superseding indictment in December 2022. *See generally* Superseding Indictment, ECF No. 1375. Defendant Ronald Yandell moves to disclose information about the grand jury pool under the Jury Selection and Service Act. *See* Mot., ECF No. 1378. Several other defendants joined in a previous iteration of that motion filed before the superseding indictment was returned, and the court construes those joinders as joinders in Yandell's current motion. *See* Corbett Joinder, ECF No. 1218; Brady Am. Joinder, ECF No. 1223; Daniel Joinder, ECF No. 1225; Torres Joinder, ECF No. 1238. The government opposes the motion in part, ECF No. 1454, and Yandell filed a reply, ECF No. 1458. The court heard oral arguments on the motion on March 22, 2023. Mins., ECF No. 1473. As explained in this order, **the motion is granted to the extent provided below**.

1

I.   **LEGAL STANDARD**

The United States aspires to ensure all federal juries are "selected at random from a fair cross section of the community." 28 U.S.C. § 1861. By the same token, it is the United States' policy that "all citizens" will "have the opportunity to be considered for service on grand and petit juries" as an obligation of citizenship. *Id.* No one may be excluded from service as a juror "on account of race, color, religion, sex, national origin, or economic status." *Id.* § 1962. Congress passed the Jury Selection and Service Act to achieve these goals. *See id.* Under that law, district courts must create and follow a "written plan for random selection of grand and petit jurors" to achieve these purposes. *Id.* § 1863. This district's current plan is publicly available on its website.[1]

Defendants may move to dismiss an indictment or stay proceedings "on ground of substantial failure to comply" with the Jury Selection and Service Act. 28 U.S.C. § 1867(a). If "necessary" for preparing such a motion, the Act allows defendants to "inspect, reproduce, and copy" court records "in connection with the jury selection process." 28 U.S.C. § 1867(f). This is "essentially an unqualified right." *Test v. United States*, 420 U.S. 28, 30 (1975) (per curiam). Defendants need not prove, for example, their planned motion is likely to succeed as a prerequisite to inspecting court records. *United States v. Diaz*, 236 F.R.D. 470, 477 (N.D. Cal. 2006) (citing *United States v. Beaty*, 465 F.2d 1376, 1380 (9th Cir. 1972)). But a defendant's rights are "not limitless." *Id.* at 482. Court records may be disclosed only "as may be necessary in the preparation or presentation of a motion" to dismiss or stay. 28 U.S.C. § 1867(f).

II.  **DISCUSSION**

Both the government and Yandell make general arguments that must be addressed at the outset. First, the government has argued Yandell's motion has come too late. Prev. Opp'n at 4–5, ECF No. 1285. The applicable statute provides that any motion to dismiss or stay based on the Jury Selection and Service Act must be filed "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of due

---

[1] https://www.caed.uscourts.gov/caednew/assets/File/GO 642.pdf (last visited April 11, 2023)

2

diligence, the grounds therefor, whichever is earlier." 28 U.S.C. § 1867(a). The court declines to deny the defendants' request to inspect court records based on its timing alone. If Yandell or another defendant ultimately moves to dismiss, and if that motion comes too late, the government may then oppose it based on the statutory deadline. *See, e.g.*, *United States v. Saipov*, No. 17-722, 2020 WL 915808, at *3 (S.D.N.Y. Feb. 26, 2020) (deferring decision on timing "until a motion challenging the selection and composition of the Grand Jury" was filed).

Second, Yandell argues the government has no "standing" to object at all. *See* Reply at 1. He cites no authority to support this argument, and the court is aware of none. District courts commonly consider the government's position when a defendant requests court records under § 1867(f). *See, e.g.*, *United States v. Ramirez-Ortiz*, No. 20-2667, 2021 WL 1662441, at *2–9 (S.D. Cal. Apr. 28, 2021); *Saipov*, 2020 WL 915808, at *2; *Diaz*, 236 F.R.D. at 477–84. And although the government would not be the one to collect and produce any of the requested records, it could face the consequences of any improper requests, including delays and needless pretrial litigation.

With these preliminaries resolved, the court considers each of Yandell's requests, reproduced below with original emphasis, taking account of the government's objections, if any.

> **1. Jury Plan.** The Jury Plan for the Eastern District of California (Jury Plan) in effect at the time when the grand jurors who returned the Superseding Indictment on December 8, 2022, were summoned in this case. The Jury Plan in effect at the time of the indictment was General Order No. 642, Juror Management Plan, adopted February 3, 2022 (see also General Order No. 646). [Footnote: If the Jury Plan as represented on the Court's website is accurate, Yandell requests no further information.]

Mot. at 1–2. This request is granted. The court has confirmed the jury plan adopted by General Order 642, publicly available on the court's website, is current and accurate.

> **2. Jury Division(s).** The jury division(s) chosen for the grand jury that returned the Indictment in this case. Jury Plan, Section 4.06.

Mot. at 2. The government does not object to this request. Opp'n at 5. It is granted.

> **3. Reasons for the Choice of Jury Divisions.** Any documents that describe the reasons for the choice of the jury division(s) for the

3

> grand jury that returned the Indictment in this case in addition to Section 1.07 of the Jury Plan. Jury Plan, Section 4.06. [Footnote: If there are no records or written procedures beyond what is stated in § 1.07 of the Jury Plan, Yandell requests no further information.]

Mot. at 2. The government objects to this request because it seeks information already disclosed in the Jury Plan. Opp'n at 5. The request is granted; the court will direct the Clerk of Court to produce any other documents describing the choice of divisions.

> **4. Administrative Forms.** Any AO-12 form or JS-12 form created that relates to the Master Jury Wheel and Qualified Jury Wheel used to summon the grand jurors who returned the Superseding Indictment in this case on December 8, 2022, as required by 28 U.S.C. § 1863(a).

Mot. at 3 (footnote omitted).[2] The government does not object to this request if it is limited to the relevant calendar year, i.e., 2022. Opp'n at 5. The request is granted with that limitation.

> **5. Data.** Any additional statistical or demographic analyses produced to ensure that the Master Jury Wheel and Qualified Jury Wheel used to summon the grand jurors in this case complied with the Jury Plan, Jury Selection and Service Act, and constitutional requirements. Jury Plan, Section 1.04.

Mot. at 3. The government objects that the Jury Plan "did not require the Clerk to prepare or rely on 'statistical or demographic analyses' to summon grand jurors." Opp'n at 5. It also points out that the AO-12 and JS-12 forms would respond to this request. *Id*. The request is granted. If any additional statistical or demographic analyses were performed, they could be necessary to support a motion under § 1861(f). *See, e.g.*, *United States v. Holmes*, No. 18-00258, 2020 WL 5408163, at *6 (N.D. Cal. Sept. 9, 2020) (granting similar request).

---

[2] "JS–12 forms provide: (1) the number of names placed on the master wheel and the number of names drawn from the master wheel to whom questionnaires were mailed; (2) the number of questionnaires completed and returned, returned as undeliverable by the post office, or not yet returned; (3) a demographic analysis of samplings drawn from returned jury questionnaires and from those placed on the qualified jury wheel; and (4) a statistical comparison of the jury wheel sample against general-population data by racial, ethnic and gender classifications." *United States v. Cerna*, No. 08-0730, 2009 WL 2998930, at *3 (N.D. Cal. Sept. 16, 2009).

    **6. Qualified Jury Wheel Refill Date.** The date when the Qualified Jury Wheel used to summon grand jurors in this case was last refilled, as described in Section 1.09 of the Jury Plan.

    **7. Master Jury Wheel Refill Date.** The date on which the Master Jury Wheel that was used to summon the grand jurors in this case was refilled as described in Section 2.04 of the Jury Plan.

Mot. at 4. The government objects to each of these requests, saying that a "date" is not a "record" or "paper" under § 1861(f). The court disagrees. These requests are granted. *See, e.g.*, *Holmes*, 2020 WL 5408163, at *3, 5 (granting similar request).

    **8. Purge Procedures.** Any descriptions of the procedures used to purge duplicate records and any report or analysis of the procedures in addition to those provided in Jury Plan Section 2.02.

    **9. Calculation Procedures.** Any additional records pertaining to the "specific and detailed procedures" followed, as set forth in Section 2.02 and 2.03 of the Jury Plan, and the record of calculations performed as described in Section 4.06 of the Jury Plan.

Mot. at 5. The government objects that these requests go beyond what § 1861(f) permits and would require the Clerk's Office to prepare a declaration or the equivalent of a discovery response. Opp'n at 6–7. Yandell clarified at hearing that he requests no declarations or discovery responses, but rather only the production of existing materials, if any. These requests are granted.

    **10. General Notice.** Any general notice explaining the process by which names were randomly and periodically drawn from the wheel. Jury Plan, Sections 3.01 and 4.01.

Mot. at 5. The government does not object to this request if it is limited to the relevant calendar year, i.e., 2022. Opp'n at 7. The request is granted with that limitation.

    **11. Procedures for Non-Responses.** The existing procedures implemented to address prospective grand jurors who do not respond to a juror qualification form or had their juror qualification form returned by the postal service as undeliverable.

Mot. at 6. The government objects that this request goes beyond what § 1861(f) permits and would require the Clerk's Office to prepare a declaration or the equivalent of a discovery response. Opp'n at 7. Here as well, Yandell clarified at hearing that he requests no declarations

5

or discovery responses, but rather only the production of existing materials, if any. The government also argues the requested information would not support a motion under § 1861(a) because any failure to follow up on unreturned questionnaires would not be a "substantial failure" to comply with the Jury Selection and Service Act. Opp'n at 7 (citing *United States v. Santos*, 588 F.2d 1300, 1303 (9th Cir. 1979)). If the Clerk's Office has a procedure, that procedure could potentially illustrate whether a particular group tends not to respond or not to have an accurate address, and that information could be necessary to support a motion under § 1861(a). *See United States v. Cloud*, No. 19-02032, 2020 WL 4381608, at *3 (E.D. Wash. July 27, 2020) (granting similar request). This request is granted.

> **12. Information on Failure to Submit.** The number of persons who failed to return a juror qualification form either electronically or on paper as described in Sections 3.02 and 3.03 of the Jury Plan.

Mot. at 6. The government objects to this request. Opp'n at 7. It argues that if many people did not return a juror qualification form, "that is an external force outside of the Court's control" and cannot show any "substantial failure" to comply with the Jury Service and Selection Act. *Id.* Yandell responds this request could show whether "any systematic factors related to unreturned juror forms, and forms returned as undeliverable, contributed to possible underrepresentation of certain groups in the final jury pool." Reply at 7. Data about trends like these could help an expert form opinions about systematic underrepresentation and could be necessary to support a motion under § 1861(a). *See Cloud*, 2020 WL 4381608, at *3 (granting similar request). This request is granted.

> **13. Failure-to-Appear or Submit.** The juror numbers (not name or address) of persons summoned for either failure to submit a juror qualification questionnaire or for failure to appear, as described in Section 3.03 of the Jury Plan.

Mot. at 6. The government objects that the identities of jurors is irrelevant to compliance with the Jury Selection and Service Act. Opp'n at 8. Yandell argues again this information could help an expert investigate any trends of nonresponses. Reply at 7–8. This request is granted.

6

> **14. Proportionality Calculations.** The calculation of the number of potential jurors from each jury division to ensure compliance with the numbers listed in Sections 2.02, 2.03, and 4.06 of the Jury Plan.
>
> **15. Source Data.** The source data in electronic form for the Master Jury Wheel used to summon the grand jurors who returned the Indictment in this case, as described in Sections 2.01 and 2.02 of the Jury Plan. The data should include, as available: Race, Gender, Ethnicity, Age, Year of Birth, Zip Code, County, and Jury Division. The data shall not include any personal information that could be used to identify any individuals, such as name or street address. If exclusion of such data is impossible, Yandell requests that it be redacted or that the data be offered for viewing in the Clerk's office.

Mot. at 7. The government does not object to these requests. Opp'n at 8. They are granted.

> **16. Summons Date.** The date grand jurors were summoned in this case.

Mot. at 8. The government objects that a date is not a record. Opp'n at 8. As noted above, the court disagrees. *See, e.g.*, *Holmes*, 2020 WL 5408163, at *3, 5 (granting request for date). This request is granted.

> **17. Numbers Summoned.** The number of persons summoned from the qualified jury wheel to be considered as grand jurors in this case.
>
> **18. Juror Form.** The blank juror qualification and summons forms for the persons summoned to potentially be grand jurors.

Mot. at 8. The government does not object to these requests. Opp'n at 8–9. They are granted.

> **19. Juror Disposition.** The disposition of each summoned potential grand juror as to excusal, deferment, disqualification, or selection, as described in Section 3.04 and 4.06 of the Jury Plan.

Mot. at 8. The government objects that "the identities and reasons for excusal of persons excused as jurors is not necessary to support a claim for a substantial failure to maintain a representative jury composition." Opp'n at 9 (quoting *Cerna*, 2009 WL 2998930, at *5). The court finds "the requested information is potentially necessary to understanding whether the grand jury that returned the indictments fairly represented the community." *Holmes*, 2020 WL 5408163, at *7. This request is granted.

7

       **20. Grand Juror Numbers.** The juror number for each grand juror who returned the Indictment in this case.

Mot. at 9.  The government objects that the composition of the grand jury itself is not relevant because "it is the pool from which [grand jurors] were drawn" that matters.  Opp'n at 9.  Yandell explains this information is necessary to understand whether responses to other requests are accurate.  Reply at 9 ("If the master wheel is missing any juror numbers of individuals who returned the indictment, that will indicate an error to be remedied.").  The court agrees.  This request is granted.

       **21. Status Codes.** Status codes for potential jurors selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond, were disqualified, or exempted from jury service, or qualified for jury service, as described in the Jury Plan. The data should be in electronic and accessible form and include the following: juror number, whether the form was returned undeliverable, whether the form was not returned, reason for disqualification, qualification status, race, gender, Hispanic ethnicity, birth year, zip code, city, county, and jury division. The data shall not include any personal information that could be used to identify any individuals, such as name or street address.

Mot. at 9.  The government objects to this request because this information "has no bearing on the representation of the pool from which the grand jury was drawn."  Opp'n at 9.  Yandell argues this information will help him understand whether "systematic factors were in play," such as disproportionate disqualification, and would help him "verify that other information received in response to other requests is accurate."  Reply at 9.  This request is granted.

       **22. Summoned Pool.** The jury number for each person summoned from the Qualified Jury Wheel to potentially become a grand juror.

       **23. Sources of Data.** The original sources of data (voter registration and Department of Motor Vehicle lists) in electronic form as described in Section 2.01.  The data should include, as available, race, gender, Hispanic ethnicity, year of birth, zip code, city, county, and jury division but not any personal information or information that could be used to identify any individual such as name or address.

Mot. at 10.  The government does not object to these requests.  Opp'n at 10.  They are granted.

8

### III. CONCLUSION

Yandell's motion to disclose grand jury records is **granted, as explained and modified above**. The Clerk of Court is directed to **file under seal** on the docket of this action any materials responsive to the requests granted in this order. These materials shall be accessible only to the following CM/ECF users:

1. Counsel for Defendant Yandell: Bradley Levenson, Kathleen Correll and Peter Arian.
2. Counsel for Defendant Brady: John Manning and Marcia Morrissey.
3. Counsel for Defendant Corbett: Kresta Daly and Richard Novak.
4. Counsel for Defendant Daniel: Timothy Warriner and John Balazs.
5. Standby Counsel for Defendant Torres: Michael Hansen
6. Counsel for the United States: Jason Hitt, David Spencer and Ross Pearson

This order does not require any member of the court's staff to prepare or create any records or documents. Nor does this order require the production of any personally identifying information, such as names, social security numbers, telephone numbers or full birth dates. No such personally identifying information may be disclosed. If any materials disclosed in response to this order could identify a particular member of the jury pool, grand juror or potential grand juror, the potentially identifying information must be redacted or obscured using similar means. If any disclosed materials are later determined to disclose personally identifying information, the party making this determination must immediately notify the court in a written notice filed on the docket of this action. Anyone who has received that material must immediately return, destroy or delete the materials in question and file a written certification of compliance on the docket of this action.

The court imposes the following additional limitations on any materials produced in compliance with this order:

1. The materials may be used only in connection with the preparation or litigation of a motion challenging this District's grand jury selection procedures. The materials

1 | may not be used in connection with any other case.  Nor may they be used for jury selection, at trial or for any other purpose in this case.

2. The materials may be used only by counsel or standby counsel, their legal staff and their retained experts.  Defendants shall not review or possess the materials at any time without the court's prior approval on a detailed showing of good cause.  Nor may the materials be carried into or reviewed in any detention facility or the permanent or temporary residence or business of any defendant without this court's prior approval on a detailed showing of good cause.

3. Under 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to any third party.  "Any person who discloses the contents of any record or paper in violation of" § 1867(f), and, by extension, of this order, "may be fined not more than $1,000 or imprisoned not more than one year, or both." *Id.*  Violations of this order may also result in sanctions or a finding of contempt.

4. Any attorney who accesses the materials is personally responsible not only for personally complying with this order, but also for the attorney's client's compliance with this order and for compliance by any expert, contractor or member of the attorney's staff.

5. At the commencement of jury selection, all materials disclosed in response to this order either (a) must be returned to the court, or (b) all counsel, staff and experts must certify in a written notice filed on the docket of this action that the materials have been destroyed and no materials have been retained in any duplicative form.

IT IS SO ORDERED.

DATED: April 11, 2023.

CHIEF UNITED STATES DISTRICT JUDGE