UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell. et al., | |
| Defendants. | |

Defendants Patrick Brady, Jason Corbett, Brant Daniel, Danny Troxell, William Sylvester, and Ronald Yandell request an order permitting written juror questionnaires to assist in jury selection in their upcoming trial. *See generally* Mot., ECF No. 1528. They cite several cases involving similar charges in which other courts have used juror questionnaires, *see id.* at 5, and they argue questionnaires are necessary to identify any prospective juror with biases related to topics such as murder, prison gangs and prison corruption, and racism, all of which may come up at trial, *see id.* at 6–7. The defendants also believe juror questionnaires will save time and help focus oral *voir dire*. *Id.* at 7. The government opposes the motion in part. *See generally* Opp'n, ECF No. 1548. It does not oppose the use of jury questionnaires if the trial is a capital trial. *Id.* at 1 n.1. Nor does it oppose the use of juror questionnaires to collect "basic biographical and hardship information." *Id.* at 1. It does oppose the request for questionnaires about other information.

1

"The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury." *Skilling v. United States*, 561 U.S. 358, 377 (2010). Jurors must make decisions based on the "evidence and argument in open court," not any outside information or preconceptions they may have. *Id.* (quoting *Patterson v. Colorado ex rel. Attorney General of Colo.*, 205 U.S. 454, 462 (1907)). District judges oversee the selection of impartial juries, including juror *voir dire*, and the Supreme Court has "repeatedly emphasized" that jury selection is "particularly within the province of the trial court." *Id.* at 386 (citation and quotation marks omitted).

District courts have discretion to send written questionnaires to prospective jurors before jury selection. *See id.* at 388–89. Questionnaires can help save time and identify potential biases in advance, such as those arising from news reports about the defendant. *See, e.g.*, *id.* at 395 ("[The] face-to-face opportunity to gauge demeanor and credibility, coupled with information from the questionnaires regarding jurors' backgrounds, opinions, and sources of news, gave the court a sturdy foundation to assess fitness for jury service."). In a 2006 report, a Ninth Circuit committee concluded that questionnaires "may be useful" when "the jurors' personal experience might have a significant impact on their ability to be fair, such as those involving sexual assault, or child pornography." U.S. Court of Appeals for the Ninth Circuit, Jury Trial Improvement Committee, Second Report, Recommendations and Suggested Best Practices at 8 (Oct. 2006).[1] The committee "discourages the use of generic questionnaires for every trial because they do not offer sufficient benefits to justify the imposition on the jurors, the additional expenditure of staff time, and extra operational costs." *Id.* But generic questionnaires can "assist in pre-screening potential jurors when the case is anticipated to be unusually long." *Id.*

The likely duration of the trial in this case, which may last several weeks or more, could cause hardship to many jurors. The court grants the motion in part with respect to questions requesting general biographic and schedule information as well as related details, which could help alert the court and the parties to potential hardships.

---

[1] https://www.ca9.uscourts.gov/judicial-council/jury-trial-improvement-committee/ (last visited August 28, 2023).

More specific questions about potential juror biases may also be appropriate in this case, but not for all purposes. The parties do not suggest the case has been highly publicized, and the court is aware of no extensive news or reporting. The absence of publicity separates this case from many cited in defendants' brief. *See, e.g.*, *United States v. Collins*, 109 F.3d 1413, 1417 (9th Cir. 1997). Nor does this case involve sexual assault or materials depicting the sexual abuse of children, another commonly cited reason for written questionnaires. *See, e.g.*, *United States v. Sandoval*, No. 04-02362, 2006 WL 1304955, at *3 (D.N.M. Feb. 1, 2006). But some potentially sensitive topics are likely to arise at trial. Limited questions about these topics could help streamline and focus oral *voir dire*. Many prospective jurors will likely have strong feelings, preconceptions or past experience with prisons or prison staff, gangs, illicit drugs, racism, and violence. As defendants have pointed out, other district courts have approved questionnaires that have included questions beyond basic biographical or demographic inquiries in other roughly similar prosecutions. *See, e.g.*, Order, *United States v. Nelson*, No. 3:17-cr-533-EMC (N.D. Cal. Mar. 13, 2022), ECF No. 2465; Confidential Juror Questionnaire, *United States v. Williams*, No. 3:13-cr-00764-WHO (N.D. Cal. Dec. 23, 2019), ECF No. 2221; Notice of Filing of Court-Approved Final Draft of Jury Questionnaire for Use in Jury Selection Process, *United States v. Ojeda*, No. 8:11-cr-00148-JVS (C.D. Cal. Sept. 23, 2015), ECF No. 1315. Questions about jurors' ability to fairly consider evidence in a capital case will likely also be useful if the government ultimately seeks the death penalty. But the court declines to decide now—before it determines whether to grant the government's request for more time to decide whether it will seek the death penalty and against whom—whether specific questions about specific potential biases are appropriate.

The motion for juror questionnaires (ECF No. 1528) is **granted in part:** The court grants defendants' request for juror questionnaires aimed at identifying jurors who may be excused for hardship, but the court defers a decision on other questions designed to identify potential juror bias until after it determines whether to grant the United States' request for more time to determine whether it will seek the death penalty. The court will invite the parties' positions on

3

the appropriate timing for the parties to meet and confer about a potential questionnaire, consistent with this order, at the status conference set for September 20, 2023.

IT IS SO ORDERED.

DATED: August 28, 2023.

CHIEF UNITED STATES DISTRICT JUDGE