UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, et al., | |
| Defendants. | |

The government moves to extend its deadline to give notice whether it will seek the death penalty. Defendants Yandell, Sylvester, Daniel, Brady and Corbett—"the defendants" for ease of reference—oppose that motion and move to preclude the government from seeking the death penalty. The court denied the motions from the bench at hearing on September 20, 2023, and more fully explains its reasons for the denial in this order. Both motions are **denied without prejudice**.

I.  BACKGROUND

The government filed the original indictment in June 2019. ECF No. 25. It charged the defendants, along with several other people, with participation in a conspiracy in violation of 18 U.S.C. § 1962(d). *See id.* at 7–12. The original indictment also listed "special sentencing factors," including murders and conspiracies to commit murder. *See id.* Although these alleged crimes were grave, none was punishable by death. Because the allegations could potentially

1

support capital charges in the future, the court appointed additional counsel to represent each of the five moving defendants under 18 U.S.C. § 3005 and has treated the case essentially as a capital case. *See* ECF Nos. 108, 109, 111, 119, 120.

The parties have litigated a variety of pretrial disputes, many related to the confidentiality of attorney consultations, an endeavor that grew more complicated during the COVID-19 pandemic. *See, e.g.*, Mins., ECF Nos. 174, 270, 736, 805, 812, 817, 842; Order (July 8, 2020), ECF No. 510 (granting in part defense request for protections of attorney consultation and confidentiality); Order (July 6, 2021), ECF No. 824 (granting in part defendant Daniel's request for discovery related to conditions of his confinement); Order (Oct. 13, 2021), ECF No. 895 (denying request for industrial hygienist but offering guidance for future confidentiality disputes); Order (May 11, 2022), ECF No. 1169 (order denying motion related to confidentiality as moot). Discovery also has proven to be intensive and time-consuming. The government has produced more than 100,000 pages of documents, hundreds of hours of audio and video recordings and more. *See, e.g.*, Stip. & Order (Jan. 25, 2023) at 2, ECF No. 1405. The parties have also disagreed how some of this evidence will be laid out at trial and have litigated those disputes. *See, e.g.*, Order (Feb. 16, 2023), ECF No. 1444 (denying motion to compel pretrial disclosures of some evidence); Order (Mar. 23, 2023), ECF No. 1474 (denying motion to further sever trial); Order (July 26, 2023), ECF No. 1569 (granting motion for pretrial disclosure of other evidence).

Since the beginning, the potential for formal capital charges has "loomed large in the background." Order (Mar. 23, 2023) at 6, ECF No. 1474. Since the case began, the government has declined to take the death penalty off the table and has "consistently and stringently resisted any limits on its unilateral authority to supersede the indictment and make decisions about whether to seek the death penalty." *Id.* The court and the parties first discussed the possibility of a deadline for the government to make its decision about capital charges in 2021. *See* Mins., ECF No. 892. The court did not set a deadline then, but it did direct the government to invite the defendants to present mitigation evidence to the United States Attorney under the Justice Manual's provisions governing capital cases. *Id.*; *see also* U.S. Dep't of Justice, Justice Manual

§ 9-10.080.[1] The government then invited four defendants—Brady, Corbett, Daniel and Sylvester, but not Yandell—to send information by the deadline. *See* Am. Joint Status Rep. (Dec. 29, 2021), at 3 & Ex. B, ECF No. 973. After exchanging additional letters with the government, *see id.* at 3–4 & Exs. C &D, the same four defendants sent mitigation submissions to the government in early 2022, *see* Defs.' Joint Status Rep. (Aug. 25, 2022) at 3, ECF No. 1254.

Meanwhile, the court directed the parties to meet and confer about a potential trial date in early 2023. *See* Mins., ECF No. 954. The six defendants facing the most serious charges, including the moving defendants, asked the court to sever their cases from the larger prosecution and schedule a trial for early 2023, under the assumption it would not be a capital trial. *See* Defs.' Joint Status Rep. (Dec. 29, 2021), ECF No. 973. The court adopted their proposal, set a trial for March 2023, and later adopted a detailed schedule for pretrial motions and disclosures. Mins., ECF No. 988.

Several months after the court set this trial date, the government invited Yandell's counsel to provide information under the Justice Manual's provisions for capital cases. *See* Defs.' Joint Status Rep. (Aug. 25, 2022) at 3, ECF No. 1254. The government had previously informed his attorneys that local prosecutors would not be requesting the Attorney General's authorization to seek the death penalty against him. *Id.* Yandell's counsel made a submission on his behalf in late 2022. *See* Defs.' Joint Status Rep. (Oct. 12, 2022) at 3, ECF No. 1298; Defs.' Joint Status Rep. (Jan. 18, 2023) at 2, ECF No. 1394.

In December 2022, with the trial approaching and several related disclosure deadlines at hand, the government filed a superseding indictment. ECF No. 1375. The superseding indictment rested largely on the same allegations as its predecessor. Crucially, however, it added charges for murder in aid of racketeering against Sylvester, Yandell, Daniel, Brady and Corbett, and the maximum penalty for those charges is death. *See id.* at 54–55. But again, as before, the government expressly declined to state whether it would actually seek the death penalty; it "has not made a final determination." *Id.* at 54–55 nn.8–11.

---

[1] https://www.justice.gov/jm/jm-9-10000-capital-crimes (visited Oct. 17, 2023).

3

After the government filed the superseding indictment, some of the defendants named in the newly added charges asked to delay the previously scheduled trial for about one year. *See* Joint Status Report, ECF No. 1394.  Defendant Daniel, by contrast, along with defendants Troxell and Sylvester, urged the court to keep the previously scheduled March 2023 trial date and moved to sever, arguing a delay until 2024 would deprive them of their right to a speedy trial or a fair trial or both.  ECF Nos. 1392, 1426, 1428, 1431.  The court denied their request to sever the trial and rescheduled the joint trial for early 2024.  Mins., ECF Nos. 1404, 1449, 1473; Order (Mar. 23, 2023), ECF No. 1474.  The court also set a deadline for the government to give notice whether it would seek the death penalty: August 23, 2023.  Mins., ECF No. 1473.  The government objected to that deadline based on its position that the court does not have authority to order such a disclosure, but it did not say it would actually need more time than the court permitted to make a final decision. *See id.* The government agreed "the August date is realistic and practical."  Status Conf. Tr. (Jan. 25, 2023) at 7, ECF No. 1505.

Over the next several months, the government confirmed it was still considering whether to seek the death penalty, and it confirmed it had the August 23 deadline "in mind." *See* Mins., ECF Nos. 1499, 1566.  The defendants repeatedly asked the government for more information; it offered none, though it did confirm prosecutors within the Eastern District of California had not made any recommendations to the Attorney General or others outside the district. *See id.*; *see also, e.g.*, Justice Manual §§ 9-10.040, .080, .130 & .140.[2]

When August 23 arrived, the government had not made any disclosures.  On that date, it instead requested an extension through December 15, 2023. *See generally* Mot. Extend, ECF No. 1590.  It did not explain the reasons for that request or why the disclosure deadline was no longer "realistic and practical."  Even as it sought the court's approval for an extension, the government primarily reiterated its position that the decision to seek the death penalty is a matter of prosecutorial discretion that a court may not schedule or limit. *See id.* at 3–8.

The moving defendants oppose the government's request for an extension and ask the court to preclude the government from seeking the death penalty. *See generally* Opp'n Extend,

---

[2] https://www.justice.gov/jm/jm-9-10000-capital-crimes (visited Oct. 17, 2023).

ECF No. 1602; Mot. Preclude, ECF No. 1603; Daniel Suppl., ECF No. 1604. The court received full briefing on both motions and heard arguments at a status conference and motion hearing on September 20, 2023. *See generally* Opp'n Preclude, ECF No. 1620; Reply Preclude, ECF No. 1622; Mins., ECF No. 1629. The court begins with the government's motion to extend the disclosure deadline.

## II. MOTION TO EXTEND THE NOTICE DEADLINE

Federal district courts are "charged with effectuating the speedy and orderly administration of justice." *United States v. W.R. Grace*, 526 F.3d 499, 508 (9th Cir. 2008) (en banc). "[I]n carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Id.* at 508–09. This rule is just one instance of district courts' broader inherent power to control their dockets, to manage cases effectively, and to "ensure obedience to their orders." *Id.* at 509 (quoting *Aloe Vera of Am. Inc. v. United States*, 376 F.3d 960, 964–65 (9th Cir. 2004) (per curiam)).

District courts may use their inherent supervisory authority to direct the government to make decisions and disclosures even when doing so might limit prosecutors' discretion. In *W.R. Grace*, for example, the Circuit held that a district court has authority to "require the government to disclose a final list of its proposed trial witnesses," *id.* at 513, even a year before trial in a complex case, *id.* at 513–14, and it also held the district court had authority to enforce that order by barring undisclosed witnesses from testifying at trial, *id.* at 514–15. "The government's discretion to investigate and present its case does not override the district court's authority to manage the trial proceedings—including by setting discovery and disclosure deadlines . . . ." *Id.* at 515. The Circuit similarly upheld the district court's decision to exclude government witness testimony in *United States v. Talbot*, 51 F.3d 183 (9th Cir. 1995). As in this case, the government had not complied with its pretrial disclosure deadline and offered "no excuse for its delay." *Id.* at 187–88.

Although both *W.R. Grace* and *Talbot* were about pretrial disclosures of evidence, this does not mean a district court's supervisory authority is limited to that circumstance. In extreme and unusual cases of government misconduct, which is not asserted here, a district court's inherent supervisory authority extends even to the dismissal of an indictment outright. *See, e.g.*, *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011) (citing *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)); *United States v. Aguilar*, 831 F. Supp. 2d 1180, 1206–08 (C.D. Cal. 2011).

That said, district courts must take care not to overstep the constitutional limits on their own authority or to intrude on the authority of the two other branches of government. Congress has authority to create procedural rules and decide what remedies are appropriate for what wrongs, *see United States v. Gatto*, 763 F.2d 1040, 1045–46 (9th Cir. 1985), and the Executive Branch has an obligation to faithfully enforce federal law, *see United States v. Armstrong*, 517 U.S. 456, 464 (1996). For that reason, "a court may not exercise any supervisory power absent 'a clear basis in fact and law for doing so.'" *Gatto*, 763 F.2d at 1046 (quoting *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir. 1977)). The Constitution, federal statutes, federal procedural rules and specific pretrial disclosure orders may all offer the necessary "clear basis." *See W.R. Grace*, 526 F.3d at 511 & n.9, 515–16; *Talbot*, 51 F.3d at 187; *Gatto*, 763 F.3d at 1046.

The Ninth Circuit and Supreme Court have not decided specifically whether federal district courts may set and enforce deadlines for the government to disclose whether it will seek the death penalty, but many federal district courts have concluded they do have that authority. *See, e.g.*, *United States v. Diaz Hernandez*, 265 F. Supp. 3d 639, 640 (D. Md. 2017) ("The Court has the inherent authority to set such a deadline and to enforce it, as it will surely do in this case."); *United States v. Slone*, 969 F. Supp. 2d 830, 838 (E.D. Ky. 2013) ("While the Court may not constitutionally set the [government's] internal schedule, it can, however, set a deadline for the government to file its death notice . . . ."); *United States v. McGill*, No. 09-2856, 2010 WL 1571200, at *2 (S.D. Cal. Apr. 16, 2010) ("Courts routinely establish an outside date by which . . . the government must file its notice . . . that it will seek the death penalty . . . ."); *see also* Defs.' Opp'n Extend at 7–8 (collecting district court decisions). The Judicial Conference of

the United States also has advised district courts to set such a deadline. Judicial Conference of the United States Criminal Justice Act Guidelines, Vol. 7, Part A, Ch. 6, "Scheduling of Federal Death Penalty Case Authorization to Control Costs" § 670(a) (Sept. 18, 2007).[3]

Even without this extensive persuasive authority, this court would have little difficulty concluding it has properly exercised its authority to set a deadline for the government to disclose whether it will seek the death penalty. As summarized above, the Ninth Circuit has unambiguously recognized a district court's authority to set and enforce pretrial disclosure deadlines in criminal cases even though pretrial deadlines can limit a prosecutor's discretion. *See W.R. Grace*, 526 F.3d at 508–09; *Talbot*, 51 F.3d at 187. And there are few choices, perhaps none, that could more thoroughly upend a district court's efforts to manage a trial than a late-breaking decision to seek the death penalty. Because that decision has so many weighty consequences for a trial, district courts must have authority to prevent the disruption that an untimely disclosure would create.

Congress also has determined criminal defendants deserve reasonable pretrial notice whether the government will seek the death penalty:

> If . . . the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice . . . stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death . . . .

18 U.S.C. § 3593(a)(1). This statutory protection would mean very little if a district court had no authority to enforce it. For these reasons, the court rejects the government's reassertion of its position that federal courts have no authority to set pretrial deadlines for prosecutors to disclose whether they will seek the death penalty.

---

[3] https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-6-ss-670-scheduling-federal-death-penalty (visited Oct. 17, 2023).

The court also concludes it has authority to require an explanation when the government asks to extend a death penalty notice deadline. Because the court has authority to set a deadline, it also must have the authority to change that deadline if appropriate; hence the Ninth Circuit's observation in *Talbot*, for example, that the government "offer[ed] no excuse for its delay," 51 F.3d at 187–88, and its discussion of the government's empty reservation of its rights before the district court in *W.R. Grace*, 526 F.3d at 514. District courts regularly consider whether the government has explained why it needs more time when it has not complied with a pretrial deadline in a criminal case. *See, e.g.*, *United States v. Garcia*, 730 F. Supp. 2d 1159, 1168 (C.D. Cal. 2010) (excluding evidence in part because "[t]he government offer[ed] no excuse for its noncompliance with the court's discovery order"). Congress likewise appears to have contemplated that portions of the disclosure required by § 3593(a) could be delayed if the court finds "good cause." 18 U.S.C. § 3593(a). For these reasons, the court is not prepared to extend the government's deadline unless it shows good cause.

Here, the government does not explain why it could not comply with the court's order. Nor has it justified its request for an extension filed on the date notice was due, especially in the face of a rapidly approaching trial date. The court cannot reasonably infer any reason from the circumstances, either: the government has had years to make a decision; it has had Yandell's mitigation presentation for almost a year and the other defendants' for much longer at this point; and not long ago, the government believed an August 23 disclosure date was reasonable and practical. A disclosure in mid-December as the government now requests would disrupt the parties' efforts to prepare for trial. *See* Joint Proposed Trial Sched. at 2, ECF No. 1605 (proposing deadlines in December 2023 and January 2024 to disclose evidence and witness lists, to file motions *in limine*, and to propose jury questionnaires).

For these reasons, the court denies the government's motion to extend its deadline. It does so without prejudice to the government's renewal supported by a showing of good cause. Contrary to the government's suggestion in the first footnote of its motion, it could show good cause without revealing internal deliberations or other confidential and internal information about its decision. "'Good cause' is a non-rigorous standard that has been construed broadly across

8

procedural and statutory contexts." *United States v. Navarro*, 800 F.3d 1104, 1109 (9th Cir. 2015) (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010)). A party can show good cause by explaining the reasons for the request, showing it has not acted in bad faith and demonstrating persuasively why the requested extension would not unfairly prejudice the opposing party. *See id.* at 1109–10; *Ahanchian*, 624 F.3d at 1259–60. The government may also ask the court to review truly confidential or sensitive information ex parte *in camera*, if necessary.

### III. MOTION TO PRECLUDE THE DEATH PENALTY

The defendants ask the court to preclude the government from seeking the death penalty. The court denies that motion insofar as it seeks an order enforcing the pretrial disclosure deadline, noting the court has denied the government's motion to extend its deadline. The defendants' motion also would be moot if the government does not obtain an extension of its deadline. The same would be true if the government does obtain an extension but determines it will not seek the death penalty and gives notice to that effect. But if the government obtains an extension of its deadline and decides it will seek the death penalty against one or more defendants, then the motion would not be moot. The court cannot determine now whether the government should be precluded from seeking the death penalty in that limited hypothetical circumstance. The motion to preclude is thus **denied without prejudice to renewal**.

### IV. CONCLUSION

The government's motion to extend its deadline to give notice whether it will seek the death penalty and the defendants' motion to preclude the death penalty are both **denied without prejudice to renewal**, as explained above.

This order resolves ECF Nos. 1590 and 1603.

IT IS SO ORDERED.

DATED: October 17, 2023.

CHIEF UNITED STATES DISTRICT JUDGE