UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, | |
| William Sylvester, | |
| Bryant Q. Daniel, | |
| Pat Brady, | |
| Jason Corbett, | |
| Defendants. | |

Defendants Yandell, Sylvester, Daniel, Brady and Corbett move to compel the government to disclose additional information about the opinions of a prison gang expert it expects to offer at trial. As explained in this order, the defense has not shown the government's disclosures fall short of Federal Rule of Criminal Procedure 16(a)(1)(G). The motion is **denied**.

**I.      BACKGROUND**

The government alleges defendants Yandell, Sylvester, Daniel, Brady and Corbett were part of a violent criminal conspiracy within the Aryan Brotherhood. It is pursuing charges under the Racketeer Influenced and Corrupt Organizations Act, among other statutes. A trial is

1

scheduled to begin in February 2024, and the court has set several pretrial deadlines, including for disclosing expert opinions and filing related pretrial motions. *See generally, e.g.*, Order (Dec. 6, 2023), ECF No. 1722.

In late October, the government sent the defense a letter disclosing an expert it intended to call at trial, Special Agent Cory Perryman of the California Department of Corrections and Rehabilitation. *See generally* Perryman Not., Mot. Disclose Ex. A, ECF No. 1686. According to the government's letter, Perryman has many years' experience with prison gangs, including the Aryan Brotherhood. *Id.* at 1. The government's letter cited Perryman's curriculum vitae (CV), which it had produced during discovery. *Id.* at 2. According to his CV, he began as a correctional officer at San Quentin State Prison, where he "interacted with a variety of gang members and their associates on a daily basis." Perryman CV at 1, Mot. Disclose Ex. A, ECF No. 1686. About seven years after he started, in 2008, he began working as an investigator, and after two more years, he was assigned to a unit that focused on prison gangs. *See id.* He concentrated on gangs in "the White inmate population," including the Aryan Brotherhood. *Id.* In 2015, he began working in a position that required him to conduct "debrief investigations of prison gang members and associates." *Id.* He continued in this position and a similar supervisory position until earlier this year, when he was promoted. *Id.* at 1–2. In his current position, he is "responsible for oversight of the departmental gang management policy" and conducts "major criminal investigations with particular focus on gang activity and enterprise." *Id.* at 2. Throughout his career, he has "conducted investigations/interviews of active gang members as well as inmates that have disassociated themselves from gang activity," "confiscated and read countless documents and letters pertaining to gang activity within a correctional setting," and has "participated in numerous search warrants of validated gang affiliates within the community" and "numerous multi agency gang operations." *Id.*

After citing the CV, the government described Perryman's opinions and their bases in just one paragraph. *See* Perryman Not. at 2. At trial, it said, Perryman would "describe the gang's roots in the California prison system, its membership, structure, codes of conduct, symbols, and purposes." *Id.* His opinions would be based on his experience, "including many years working

2

as a gang expert," such as his "interviews of validated STG [Security Threat Group] gang members and associates," and the other experience he described in his CV. *Id.*

The defense believed the government's letter fell short of its pretrial disclosure obligations and asked for more information. *See* Novak Letter (Oct. 30, 2023), Mot. Disclose Ex. B, ECF No. 1686. The government responded with a supplemental notice. *See generally* Suppl. Perryman Not. At 1, Mot. Disclose Ex. C, ECF No. 1686. First, it elaborated on the seven opinions Perryman would offer at trial. *See id.* at 1–4. It included more information about some of these opinions than others. For example, his second opinion—about the gang's rivals, its membership process, its structure, its symbols and its codes of conduct—includes five subparts: one for the gang's rivals, one for membership, and so on. *See id.* at 2. And for each of these parts, the government's letter included a paragraph with more information. The government included the following description of Perryman's opinions about the Aryan Brotherhood's structure:

> On structure, Special Agent Perryman will testify that the AB [Aryan Brotherhood] is governed by a three-man commission with authority over the enterprise. The primary purpose of the commission is to resolve disputes among AB members and, when necessary, to approve the murder or assault of an AB member. In theory, the murder or assault of an AB member in California may be executed only if the commission authorizes it. Murder of a nonmember does not require commission approval.

*Id.*

The government also explained "the bases for Special Agent Perryman's opinions" in an expanded paragraph at the end of its letter. *Id.* at 4. It first cited "his extensive training and experience, as detailed in his recently provided curriculum vitae." *Id.* "In particular," the government explained, "Special Agent Perryman's training and experience includes interviewing [Aryan Brotherhood] gang members and associates numbering in the hundreds since 2001." *Id.* The government also cited Perryman's "formal training in gang structure and organization," his first-hand experience in California prisons, his assignment to teach and train other officers about prison gangs and interviews he conducted with Yandell and Sylvester themselves in 2018, before

3

the indictment was filed in this case. *See id.* The government also has disclosed Perryman's testimony before the grand jury in this case. *See* Grand Jury Testimony, Mot. Disclose Ex. D, ECF No. 1721 (under seal).

After reviewing this supplemental disclosure, defendants Yandell, Sylvester, Daniel, Brady and Corbett remained concerned with Perryman's "methodologies" for conducting interviews with gang members and "how he integrated these hundreds of interviews into a cohesive, consistent opinion, given the range of time periods, facilities, and sources of data." Reply at 7, ECF No. 1735. In their pending motion, they ask the court to direct the government to supplement its disclosure with more information about Perryman's methods, but not his opinions themselves. *See generally* Mot. Disclose, ECF No. 1686. The government opposes the motion, which is now fully briefed. *See generally* Opp'n, ECF No. 1711; Reply, ECF No. 1735. The court heard oral arguments on December 20, 2023. *See generally* Mins., ECF No. 1768.

**II.    LEGAL STANDARD**

The Federal Rules of Criminal Procedure require the government to disclose, at the defense's request, specific information about "any testimony that the government intends to use at trial under Federal Rules of Evidence 702, 703, or 705 during its case in chief." Fed. R. Crim. P. 16(a)(1)(G)(i). Rules 702, 703 and 705 permit a party to offer the opinions of a person "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Rule 16 disclosure must include "a complete statement of all opinions that the government will elicit from the witness"; "the bases and reasons" for those opinions; "the witness's qualifications, including a list of all publications authored in the previous 10 years"; and "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii).

These provisions are intended "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Civ. P. 16 advisory committee's note to 1993 amendment. Disclosures are "particularly important if the expert is expected to testify on matters which touch on new or controversial

4

techniques or opinions." *Id.* But Rule 16 does not "replicate all aspects of practice" under the analogous civil rule. Fed. R. Crim. P. 16 advisory committee's note to 2022 amendments. Nor does Rule 16 require "a verbatim recitation of the testimony the expert will give at trial." *Id.* In that sense, it is "not overly demanding." *United States v. Nelson*, No. 17-00533, 2021 WL 75757, at *4–5 (N.D. Cal. Jan. 8, 2021).

Generally speaking, a disclosure suffices if it allows opposing counsel to prepare a pretrial motion to exclude the expert's opinions. *See United States v. Kelley*, No. 21-0402, 2023 WL 4032011, at *1 (N.D. Cal. June 14, 2023); *United States v. Cerna*, No. 08-0730, 2010 WL 2347406, at *1 (N.D. Cal. June 8, 2010)). For example, if the government discloses that it will rely on the testimony of electronics experts who downloaded data from various devices, it could not satisfy Rule 16 without identifying the devices. *See Cerna*, 2021 WL 2347406, at *4. Nor would the government satisfy its obligations if it said simply that a gang expert would offer opinions about "tattoos, symbols, codes, colors and graffiti," but not how that expert had formed those opinions or on what basis. *See id.*

**III. DISCUSSION**

Having carefully considered the parties arguments, the court concludes the government's disclosures here satisfy its obligations under Rule 16(a)(1)(G). The government has stated the opinions it will ask Perryman to offer at trial. It lists his qualifications and testimony in other cases. And contrary to the defense arguments, the government's notice explains how Perryman came to his opinions. He developed his familiarity over more than two decades working in California prisons, where he observed gang members first hand, including the Aryan Brotherhood. He also learned about the Aryan Brotherhood's roots, membership, structure, rules, symbols, and purposes first-hand by interviewing hundreds of inmates with connections to the Aryan Brotherhood, and he has read many reports of other interviews and investigations. Beyond his interviews, he has investigated Aryan Brotherhood activity in California prisons and has searched for, confiscated and reviewed communications between gang members. Finally, he has attended and taught formal classes and training about prison gangs in California. The government's disclosure will allow the defense to file a motion to exclude his opinions, prepare

5

for Perryman's vigorous cross-examination, object to his opinions at trial, and weigh the need for expert opinion in rebuttal.

Defendants' motion itself supports this conclusion. Although the motion frames the issue as one of disclosure, its gist is to challenge the admissibility of Perryman's opinions under Rule 702. It is effectively a motion to exclude. Defendants cite and discuss – and argued – the law and precedent this court would consider in deciding whether to exclude Perryman's opinions. *See* Mot. Disclose at 5–8 (citing, among other authorities, Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999); *United States v. Valencia-Lopez*, 971 F.3d 891 (9th Cir. 2020); and *United States v. Hermanek*, 289 F.3d 1076, 1095 (9th Cir. 2002)). Defendants contend Perryman's opinions wrongly usurp the jury's fact-finding duties. *See id.* at 10–12. And they contend "there is a wide gap between the opinions proffered and Perryman's data." *Id.* at 8 (quotation marks omitted). The motion also lists several questions that could readily be repurposed to form the basis of a rebuttal report, a motion to exclude or cross examination at trial:

> How was the provided information corroborated? If the opinion is based on numerous interviews and reports reviewed, when and where were those interviews conducted and reports prepared? When individuals or reports provide an account inconsistent with an established opinion, how is that information treated? Is there a methodology for treating "inconsistent" data or intelligence? Importantly, how does this opinion in Topic 2 reconcile with the opinion expressed in Topic 4, which indicates that "the rules of the AB can be molded and shaped to fit the current circumstances or situation at hand and various AB members will bend and flex the rules to fit their individual needs." If the rules are not set in stone, what methodologies were used to determine what is or is not part of the codes of conduct, and at what time, and locations?

*Id.* These are the types of challenges that could potentially show an expert's opinions are unreliable before they are presented to a jury. *See, e.g.*, *Valencia-Lopez*, 971 F.3d at 900–01 (holding expert opinion inadmissible because government "failed to link [the expert's] general expertise with his" specific conclusions about gang practices and did not explain "how his expertise lent itself to [his] conclusion"); *Hermanek*, 289 F.3d at 1094 (holding district court

erred by relying solely on expert's "general qualifications without requiring the government to explain the method [the expert] used to arrive at his interpretations of words he had never encountered before").

Moreover, the additional disclosures defendants request would go beyond what Rule 16 requires. In the same paragraph quoted above, they argue the government must disclose "what reports or debriefs the expert reviewed, or what individuals provided the underlying information." *Id.* at 8. Later their motion argues additional disclosures are necessary to reveal whether Perryman was repeating the statement of a particular informant. *See id.* at 9–10. And in their reply, defendants fault the government for not explaining "whether [certain] information was received through multiple source points, when, or what facility" and "whether it was from federal or state AB members or associates," among other things. Reply at 4. Together, these requests target specific written reports, the dates and times of specific interviews, the names of people who were interviewed, where they were housed, whether their statements were corroborated, and similar specifics. Rule 16 does not demand such specificity. *See, e.g.*, *Nelson*, 2021 WL 75757, at *5 (finding disclosures adequate despite their omission of names, noting the expert had "always maintained that his understanding . . . [was] based on the totality of his personal observations, conversations with former [gang] members, and knowledge about the backgrounds of 15–20 [gang] members . . . ," leaving an assessment of "an adequate factual basis" for a later "*Daubert* analysis" (quotation marks omitted)).

The district courts' decisions in *Cerna* and *Cervantes*, which defendants cite, do not support the conclusion that more detail is necessary. *See* Reply at 3–4 (citing *Cerna*, 2010 WL 2347406; and *United States v. Cervantes*, No. 12-00792, 2015 U.S. Dist. LEXIS 98516 (N.D. Cal. July 28, 2015)).[1] In *Cerna*, the government had disclosed its intent to offer the opinions of

---

[1] At hearing the government argued the district courts' decisions in *Cerna* and *Cervantes* have been abrogated by more recent Ninth Circuit decisions, including *United States v. Holguin*, which concerns the admissibility of expert opinions. *See* 51 F.4th 841 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509 *and* 43 S. Ct. 2510 (2023). But even before *Cerna* and *Cervantes*, the circuit had permitted law enforcement experts to testify about gang structure and operations based on their experience. *See id.* at 856 (collecting authority). It is not necessary to consider the continuing validity of the district courts' reasoning in *Cerna* and *Cervantes*, nor whether

7

three officers. *See* 2010 WL 2347406, at *4. It had disclosed only that these officers would "testify regarding [gang] tattoos, symbols, codes, colors and graffiti, and how they are used to communicate." *Id.* It did not explain how the officers had reached these opinions and why. *See id.* For reasons independent of Rule 16, the court excluded expert testimony about "the structure, organization, and operations" of the gang. *See id.* at 5–7. Subject to "proper Rule 16 disclosure," the court did, however, permit the officers to testify about "specific coded words and phrases used by drug dealers." *Id.* at *7. For these opinions, the court required the government to disclose which officer would testify about which specific word and what their testimony would be. *See id.* at *8. The court offered an example of what disclosure would suffice to explain the bases and reasons for the expert's opinions under Rule 16: "The basis for this opinion is his experience in monitoring drug transactions and in listening to 1600 recordings involving the same individuals between 2004 to 2009, many of which used the same terms in the same way." *Id.* In *Cervantes*, the government made a similar disclosure, and the court required a similar supplement. 2015 U.S. Dist. LEXIS 98516, at *5–6. Here, the government's disclosure of the bases and reasons for Perryman's opinions is similar to the court's example in *Cerna*. The government explained roughly how many interviews Perryman conducted with members of the Aryan Brotherhood, during what years, and in what capacity and circumstances.

Nor is the court persuaded the government must disclose more information about Perryman's opinions to protect defendants' Confrontation Clause rights or, similarly, to prevent Perryman's testimony from becoming a conduit for inadmissible hearsay. *See* Mot. Disclose at 9–10. Experts may rely on inadmissible hearsay if others in their field reasonably would rely on that information. *See* Fed. R. Evid. 703; *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014). The government may not disclose that hearsay to the jury unless its "probative value in helping the jury evaluate the opinion substantially outweighs" its "prejudicial effect." Fed. R. Evid. 703. But ordinarily, an expert's opinions and their bases do not violate the Confrontation Clause, including in situations like this one. *See, e.g.*, *Vera*, 770 F.3d at 1238–40 (holding gang

---

Perryman's testimony is reliable, as the defense does not request the exclusion of Perryman's opinions in its current motion. Rather it asks only for further disclosures.

expert's opinions about gang tactics were admissible).  The defense may object at trial if a particular disclosure would deprive them of their rights under the Confrontation Clause.  The court declines to guess now, without more context, whether Perryman will repeat "repackaged testimonial hearsay" or rather will offer "an original product," i.e., his opinions.  *Id.* at 1239 (citations and quotation marks omitted).

### IV. CONCLUSION

The motion for further Rule 16 disclosures (ECF No. 1686) is **denied**.

IT IS SO ORDERED.

DATED:  December 27, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE