UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, Daniel Troxell, and William Sylvester, | |
| Defendants. | |

Defendants Ronald Yandell and William Sylvester move *in limine* to exclude evidence of defendants' prior "bad acts" and defendant Daniel Troxell separately moves *in limine* to exclude or limit the introduction of other acts evidence. Following oral argument, the court submitted these two motions. For the reasons set forth below, including for the reasons the government persuasively argued at the hearing on February 9, 2024, the court **denies** defendants' motions.[1]

**I.   BACKGROUND**

Defendants are charged in count one of the superseding indictment with conspiring to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d), a provision of the Racketeer Influenced and Corrupt Organizations (RICO) Act. *See* Superseding Indictment, ECF

---

[1] The court denied the motions from the bench on February 13, 2024. *See* Min. Order (Feb. 13, 2024), ECF No. 1890. This order explains the reasons for the court's denial.

1

No. 1375 ¶ 25. Specifically, defendants are charged with conspiring between approximately October 2011 and June 2019 "to conduct and participate, directly and indirectly, in the conduct of the affairs of the Aryan Brotherhood through a pattern of racketeering activity" including through "multiple acts involving murder" and "multiple offenses involving drug trafficking." *Id.*

On November 6, 2023, the government sent a letter to defendants' attorneys, providing a summary of evidence the government intended to introduce at trial. *See* Ex. A, ECF No. 129-1; Ex. A, ECF No. 135-1. Defendants Yandell and Sylvester now seek to exclude all evidence of the alleged "bad acts" identified in the government's letter under Federal Rule of Evidence 404(b) and Federal Rule of Evidence 403. *See generally* ECF No. 1829. Defendant Troxell seeks to exclude or limit evidence of these acts as well. *See generally* ECF No. 1835. In opposition, the government indicates it has narrowed the number of "bad acts" it intends to introduce to five incidents. *See* ECF No. 1871 at 2.[2] These incidents include: (1) a 2013 attempted murder, (2) the 2018 murder of Devlin Stringfellow, (3) the 2017 shooting of Leonard Bradrich, (4) a 2019 conspiracy to murder co-defendant Brant Daniel, and (5) a 2020 assault on a deputy sheriff at the Sacramento County Jail. *Id.* The government argues each incident is not subject to Rule 404(b), because each is admissible as direct evidence of the RICO conspiracy charged in count one of the superseding indictment. *Id.*

The court heard oral arguments on February 9, 2024. *See* Hr'g Mins., ECF No. 1880. Jason Hitt, Ross Pearson and David Spencer appeared for the government. Defendant Yandell was present, in custody, with his attorneys Steven Kalar, Brian Pugh and Sean McClelland, also supported by paralegal Richard Salinas. Defendant Sylvester was present, in custody, with his attorney Knut Johnson and paralegal Ashley Vasquez. Todd Leras appeared for defendant Daniel Troxell who was not present, with a waiver of appearance on file. *Id.*

II. **LEGAL STANDARD**

Evidence of "other crimes, wrong, or acts" is subject to Federal Rule of Evidence 404(b) unless the evidence is "directly related to, or inextricably intertwined with, the crime charged in

---

[2] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

2

the indictment." *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citation omitted). Evidence is "inextricably intertwined" when it either constitutes a portion of the transaction giving rise to the criminal charge, or is necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime[.]" *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). "In determining whether particular evidence is necessary to the prosecution's 'coherent and comprehensible story'" the relevant inquiry is "whether the evidence bears directly on the charged crime." *United States v. Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018). "There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Vizcarra-Martinez*, 66 F.3d at 1013.

In a conspiracy case, the government "may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011); *see also United States v. Nelson*, No. 17-CR-00533, 2023 WL 4004113, at *17 (N.D. Cal. June 13, 2023) (citing *Rizk* with approval in RICO conspiracy case). This proof may include uncharged acts, *see United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994), and acts defendants did not personally commit, *see United States v. Jaimez*, 45 F.4th 1118, 1130 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1038 (2023). Therefore, to the extent defendants argue these acts should be excluded because they were not personally involved, the court finds this argument unpersuasive. *See, e.g.*, ECF No. 1835 at 13 (arguing no evidence ties Troxell to 2013 attempted murder at High Desert, because at the time Troxell was held at Pelican Bay State Prison Security Housing Unit).

If the evidence of "other crimes, wrong, or acts" is not "inextricably intertwined" such that it qualifies as direct evidence, then the court must evaluate it under Rule 404(b). Rule 404(b) provides that such evidence is inadmissible to prove character or criminal propensity, but may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

If a party seeks to offer this evidence for a permitted purpose, then "the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility

3

is one of relevance." *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997) (citation omitted). In making this decision, a court evaluates whether "(1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge or intent are at issue) the act is similar to the offense charged." *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) (citation and quotation marks omitted).

If the evidence is admissible as direct evidence or under Rule 404(b), then a court should admit the evidence "unless its prejudicial impact substantially outweighs its probative value" under Federal Rule of Evidence 403. *Johnson*, 132 F.3d at 1282 (citation omitted); Fed. R. Evid. 403; *see also United States v. McGill*, 815 F.3d 846, 880 (D.C. Cir. 2016) (noting even if Rule 404(b) does not bar introduction of evidence, Rule 403's balancing of prejudice and probativeness might).

### III.  ANALYSIS

Defendants Yandell, Sylvester and Troxell seek to exclude the proffered "bad acts" based on three main arguments. First, the prior "bad acts" are not "inextricably intertwined" with the charged offense. *See* ECF No. 1835 at 4. Second, the prior "bad acts" are "insufficiently material, dissimilar to the charged conduct, lack sufficient proof, and are too remote in time" to be admissible under Rule 404(b). ECF No. 1829 at 10; *see also* ECF No. 1835 at 5–8. Third, even if the prior "bad acts" are admissible for a non-propensity purpose under Rule 404(b), they should nevertheless be excluded under Rule 403. *See* ECF No. 1829 at 10, 18; ECF No. 1835 at 9–10. The court begins by analyzing whether each proffered incident is direct evidence because it is inextricably intertwined with the charged offense.

#### A.    Direct Evidence

As noted, defendants are charged under the RICO statute with conspiring and agreeing to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d). Superseding Indictment ¶ 25. 18 U.S.C. § 1962(c) provides "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

4

pattern of racketeering activity or collection of unlawful debt." Therefore, to prove a violation of 18 U.S.C. § 1962(d), the government will need to present "adequate proof of an overall conspiracy to participate, directly or indirectly, in the conduct of the [enterprise's] affairs through a pattern of racketeering." *Jaimez*, 45 F.4th at 1129 (citation and quotation marks omitted).

The government contends all five incidents can be admitted as direct evidence of the RICO conspiracy charged in count one. ECF No. 1871 at 2. Specifically, the government argues each incident is relevant to prove the existence of the charged enterprise, namely the Aryan Brotherhood, and the first four incidents help prove the required pattern of racketeering activities. *See id.* at 2–3. The court evaluates each incident in turn.

First, with respect to the 2013 attempted murder, the government seeks to include evidence of an incident where co-conspirator Jason Corbett allegedly orchestrated the attempted murder of another inmate who refused to cover up a shamrock tattoo. *See* ECF No. 1871 at 3–4. The government claims Yandell later confirmed to a witness that Corbett "ordered the hit" because of the tattoo. *Id.* at 4. This incident bears directly on the charged RICO conspiracy. The indictment alleges the Aryan Brotherhood members and associates use symbols, including the shamrock, to signal their participation in the enterprise and that they force non-members to remove or cover up shamrock tattoos. *See* Superseding Indictment ¶ 14. The 2013 incident is inextricably intertwined with the conspiracy itself because it provides direct evidence of the existence and nature of the Aryan Brotherhood's affairs, Yandell's knowledge of the Aryan Brotherhood's activities and a specific racketeering activity charged in the indictment, an act involving murder. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (defendants must be "aware of the essential nature and scope of the enterprise and intended to participate in it") (citation and quotation marks omitted). Further, the incident happened during the time frame the conspiracy is alleged to have occurred. *See* Superseding Indictment ¶ 25 (the racketeering conspiracy began "no later than in or around October 2011, and continu[ed] to in or around June 2019"); *see, e.g.*, *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) (finding acts were "inextricably intertwined," because each occurred within temporal scope of the conspiracy and comprised the conspiracy).

Second, the court finds the 2018 murder of Devlin Stringfellow is similarly inextricably intertwined with the charged RICO conspiracy. This incident is relevant to prove one of the alleged purposes of the enterprise, which is "[u]sing threats and violence to keep victims in fear of the Aryan Brotherhood and in fear of its leaders, members, and associates." Superseding Indictment ¶ 12(d). Stringfellow allegedly stole from the Aryan Brotherhood. *See* ECF No. 1871 at 4, 8. The government claims Sylvester then orchestrated his murder in the distinctive Aryan Brotherhood style, which "sent a powerful message to others not to step out of line." *Id.* at 8; Ex. A at 4, ECF No. 129-1; Ex. A at 4, ECF No. 135-1. The incident occurred during the time frame of the conspiracy and could help prove the existence of the Aryan Brotherhood as the charged enterprise, the way it operated, and a defendant's direct association with it.

Third, in seeking to introduce evidence of the 2017 shooting of Leonard Bradrich, the government contends this incident provides not only evidence of the existence of the Aryan Brotherhood enterprise, but also direct evidence of the charged racketeering activity of "multiple offenses involving drug trafficking." *See* ECF No. 1871 at 8–9; Superseding Indictment ¶ 25. The government claims Sylvester ordered Bradrich, an alleged Aryan Brotherhood associate who was not incarcerated, to murder the roommate of an individual who worked for Yandell and Sylvester and to coordinate the theft of the roommate's marijuana operation. ECF No. 1871 at 4–5. This incident led to Bradrich's getting shot. *Id.* at 5. The court finds the government may offer evidence of this 2017 incident, because it occurred during the time period of the charged conspiracy and helps define the full scope of the RICO conspiracy extending to drug trafficking activity, as charged in count one. *See Rizk*, 660 F.3d at 1131.

Fourth, the government seeks to introduce evidence of a 2019 incident in which Yandell allegedly conspired to murder co-defendant Brant Daniel. The government alleges California Department of Corrections and Rehabilitation (CDCR) gang investigators discovered a kite at Pelican Bay prison, where the court infers Yandell was housed at the time. *See* ECF No. 1871 at 5. On the kite, Yandell had written a message to another Aryan Brotherhood member confirming the three-man Aryan Brotherhood commission, including Yandell himself and Daniel Troxell, had agreed to a "hit" on Brant Daniel, because Daniel had not followed the enterprise's codes of

6

conduct. *See id.* The government argues this incident provides "powerful enterprise evidence" because it goes directly to establishing the Aryan Brotherhood's command structure. *See id.* at 8.

This incident occurred within the time frame specified in the indictment, *see* Superseding Indictment ¶ 25, and allegedly involved two of the defendants. It is relevant to establish not only the existence of the Aryan Brotherhood, but also its command structure, as well as Yandell's and Troxell's alleged direct involvement with the enterprise. The court finds this incident also is inextricably intertwined with the conspiracy and admissible as direct evidence.

Finally, the government argues the 2020 assault on a deputy sheriff at the Sacramento County Jail also is admissible as direct evidence of the RICO conspiracy. Here, the government alleges on July 11, 2020, deputies removed Sylvester from the jail yard and confiscated "wine" from his cell. ECF No. 1871 at 5. Sylvester then allegedly told Yandell he would retaliate and an hour later Yandell attacked three deputies. *Id.* at 6. Yandell allegedly punched one deputy in the head multiple times before he was stopped. *Id.* The government claims Sylvester later told a witness he had to stab a deputy at the jail or be stabbed himself, because the deputies had disrespected the Aryan Brotherhood by "putting hands" on Yandell. *Id.* at 6, 9. The government contends this incident can be admitted as direct evidence as it helps show the existence of the enterprise. *Id.* at 2. Specifically, the government argues this incident demonstrates the existence of the Aryan Brotherhood operation, because it shows the the Aryan Brotherhood does not tolerate perceived disrespect by law enforcement and requires its members to retaliate in response. *Id.* at 9.

Unlike the prior incidents, this event occurred outside the time frame of the RICO conspiracy charged in the indictment, and the government does not argue this incident would help it establish a pattern of racketeering. *See, e.g.*, *McGill*, 815 F.3d at 883 (finding a murder was not part of the charged conspiracy in part because it occurred before the charged conspiracy began). However, the government contends evidence of this incident also is crucial because it helps establish why a key government witness began cooperating with law enforcement and allows the government to explain the full story to the jury. ECF No. 1871 at 12. Ultimately, the court need

/////

1  not resolve whether this incident is inextricably intertwined, because the court finds this incident
2  is admissible under Rule 404(b) as described below.

3        **B.**      **Federal Rule of Evidence 404(b)**

4        In the alternative, the government argues the prior "bad acts" are admissible under Rule
5  404(b) for non-character purposes including modus operandi, common scheme or plan,
6  knowledge of the Aryan Brotherhood enterprise, and to corroborate the testimony of important
7  government witnesses. ECF No. 1871 at 2.

8        The court finds each of the five incidents is admissible as a threshold matter for
9  permissible non-character purposes. As noted above, under Rule 404(b), evidence is only
10 properly admitted if "(1) the evidence tends to prove a material point; (2) the prior act is not too
11 remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the
12 other act; and (4) (in cases where knowledge or intent are at issue) the act is similar to the offense
13 charged." *Vo*, 413 F.3d at 1018 (citation and quotation marks omitted).

14       Starting with the remoteness of time, the court finds all the incidents except for the 2020
15 assault are clearly not remote in time, because they occurred within the time frame of the RICO
16 conspiracy charged in count one. Superseding Indictment ¶ 25 (conspiracy began "no later than
17 in or around October 2011, and continu[ed] to in or around June 2019"). The 2020 assault, on the
18 other hand, occurred a year after the time frame during which the conspiracy is alleged to have
19 occurred. In the Ninth Circuit, "[w]hether a prior act is too remote depends on the theory that
20 makes it admissible and the similarity of the act to the current charge." *United States v. Iverson*,
21 162 F.3d 1015, 1027 (9th Cir. 1998) (citation omitted). Here, the government argues the 2020
22 assault is admissible to show the modus operandi of the Aryan Brotherhood, which includes
23 requiring subordinates to carry out the directives of the Aryan Brotherhood to commit crimes on
24 behalf of the enterprise. *See* ECF No. 1871 at 10. Introducing evidence of an incident where an
25 individual was expected to stab a deputy or be stabbed himself is consistent with seeking to
26 prove modus operandi. Therefore, because this incident will be offered to show how the Aryan
27 Brotherhood operates and is similar to other incidents whereby subordinates of the enterprise
28 /////

were expected to carry out the directives of the Aryan Brotherhood or face the consequences, the one year removed from the charged conspiracy's time frame is not too remote in this case.

The court finds the remaining four incidents are sufficiently material and similar to the crime with which defendants are charged in the superseding indictment in count one, conspiracy to participate in a racketeering enterprise. As the government argues, the incidents serve as proof of the existence of and racketeering activities of the Aryan Brotherhood. *See* ECF No. 1871 at 10. Further, these other acts are similar to the offenses charged as they are precisely the type of racketeering activity alleged in the indictment: "multiple acts involving murder" or "multiple offenses involving drug trafficking." *Id.* at 11; Superseding Indictment ¶ 25.

Lastly, defendants argue the incidents lack sufficient proof to satisfy standards of admissibility. ECF No. 1829 at 16–17. The Ninth Circuit holds that witness testimony at trial is sufficient to satisfy this final prong. *See United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). Here, the government proffers the incidents will be described by trial witnesses and supported by additional evidence. *See* ECF No. 1871 at 10–11. For purposes of deciding this pretrial motion, the court notes the government's representation even as it will remain alert to objections to the evidence the government actually seeks to elicit or introduce during trial, subject to any defense objections.

In sum, the court finds the proffered "bad acts" satisfy Rule 404(b)'s requirements at this pretrial stage. Even if evidence meets the threshold for admissibility under Rule 404(b), the court may still exclude it if it fails to satisfy Rule 403. *United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994).

### C.     Federal Rule of Evidence 403

While defendants argue the danger of unfair prejudice posed by the five incidents substantially outweighs the probative value and should be excluded under Rule 403, the court finds otherwise. *See* ECF No. 1829 at 18; ECF No. 1835 at 9. Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendants Yandell and Sylvester argue the "the jury is likely to improperly view each 'bad act' as suggesting [they] are violent 'bad guys' that are part of a violent 'prison gang.'" ECF No. 1829 at 19.  As discussed above, the indictment charges defendants with conspiring to participate either directly or indirectly in the affairs of the Aryan Brotherhood through a pattern of racketeering activities, which allegedly include multiple acts involving murder and drug trafficking.  *See* Superseding Indictment ¶ 25.  While the defense may pose objections at trial, the court cannot conclude at this point that the risk of unfair prejudice to defendants given the nature of the charged offense substantially outweighs the probative value of proving critical elements of the offense or corroborating a key government witness.  *See, e.g.*, *United States v. Pitts*, 6 F.3d 1366, 1371 (9th Cir. 1993) (finding evidence can be introduced to corroborate crucial prosecution testimony under Rule 404(b)).

Troxell argues that given the "volume of evidence the government is likely to produce regarding Aryan Brotherhood membership, tactics, and objectives, there is little need to rely on uncharged other acts to ring the same bell yet again." ECF No. 1835 at 4.  Before trial is underway, the court is unable to conclude the cumulative harm of the evidence covered by the defense motions will substantially outweigh its probative value under Rule 403 such that it should be excluded now.  The defense may object on cumulative grounds at trial.

### IV. CONCLUSION

For the reasons set forth above, the court confirms its **denial** of the defense motions *in limine* seeking to exclude evidence of five prior incidents, without prejudice to the posing of specific objections at trial.

This order resolves ECF Nos. 1829 and 1835.

IT IS SO ORDERED.

DATED: February 20, 2024.

CHIEF UNITED STATES DISTRICT JUDGE