UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, | |
| Defendant. | |

Defendant Ronald Yandell argues the government's witness Special Agent Brian Nehring falsely testified during trial. Defendant moves for an order compelling the government to correct those false statements via stipulation. The motion is denied.

Defendant argues Special Agent Nehring falsely testified that "(1) that there was (or could be) video footage of the Maynard homicide; and (2) that Mr. Yandell has a prior conviction for conspiracy to manufacture methamphetamine." Mot. at 3, ECF No. 2139. As the government notes in opposition, Opp'n at 3, ECF No. 2188, Special Agent Nehring testified based on his personal knowledge that he did not know whether a video existed and he understood Mr. Yandell's prior conviction arose out of a conspiracy to manufacture methamphetamine. The defense argues there is no video, the government knows there is no video and Mr. Yandell was

1

actually convicted of conspiracy to distribute ephedrine.[1]  *See* Mot. Ex. E, ECF No. 2139-5 (Mr. Yandell's prior conviction of ephedrine).

"The due process clause entitles defendants in criminal cases to fundamentally fair procedures." *United States v. LaPage*, 231 F.3d 488, 491 (9th Cir. 2000).  "It is fundamentally unfair for a prosecutor to knowingly present perjury to the jury." *Id.*  Additionally, a criminal defendant's right to due process of law is violated when the government, "although not soliciting false evidence, . . . allows false evidence to go uncorrected when it appears." *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005).

The defense appears to argue the government elicited false testimony from Agent Nehring, or at the very least, allowed Agent Nehring to testify falsely without correcting the record.  However, the defense has not provided any evidence indicating Agent Nehring lied about not knowing whether there was a video of the Maynard killing or that Agent Nehring believed Mr. Yandell's prior conviction was for methamphetamine or knew Mr. Yandell's prior conviction was for ephedrine.  During the defense's cross examination of Agent Nehring, he testified he investigated the Maynard killing "[o]nly in the sense that CDCR conducted an investigation and they relayed this information to [him and] Officer McClure[.]" Rep.'s Partial Trial Tr. 17:23–18:1, ECF No. 2067.  Agent Nehring testified he was not at the facility where the murder occurred, and did not "see the scene." *Id.* 18:1–5.  He testified he did not watch any video, and that "all this stuff about the murders, was taken in its entirety from the reports and the stuff that CDCR compiled and Task Force Officer McClure gathered." *Id.* 19:7–15.  He further testified he was not aware there was no video or that the yard Mr. Maynard was killed on did not have video capability at the time of the killing. *Id.* 19:6–20:1.  Agent Nehring testified he was not involved in the investigation of Mr. Maynard's death. *Id.* 19:24–20:1.  He testified he was not aware the District Attorney had asked one of the government's counsel about the video, and testified the government's counsel did not consult him regarding the existence or lack of existence of any video. *Id.* 21:1–8.  Agent Nehring testified he took for granted that local law enforcement who

---

[1] "Ephedrine [is a] precursor chemical[] used to manufacture methamphetamine, a 'controlled substance.'" *Daas v. Holder*, 620 F.3d 1050, 1052 (9th Cir. 2010) (citation omitted).

conducted the investigations and provided him with reports were telling him the truth. *Id.* 21:15–23. After being prompted by the defense, he testified he did not hypothetically or purposely lie about anything. *Id.* 22:1–12. He confirmed he did not know there was no video. *Id.* 22:11–12. Defense counsel had an adequate opportunity to cross examine Agent Nehring about the absence of a video. It is for the jury to weigh the agent's credibility based on all of his testimony in their presence. At this point in the trial, it is undisputed there is no video and the jury has been made aware of the absence of any dispute with respect to its existence or not. *See* Opp'n at 3 (government clarifying absence of video not disputed and a witness who did have personal knowledge testified there is no video); *see also, e.g.*, Rep.'s Partial Trial Tr. 19:19–23, 23:25–24:1 (Yandell's counsel asking Agent Nehring whether he knew "there was no video," "that the yard where Mr. Maynard was killed doesn't even have video -- or did not have video capability at that time," and that government's counsel sent an email confirming "there is no such video").

Similarly, there is no evidence Agent Nehring provided false testimony regarding his belief about Mr. Yandell's conviction. He testified his understanding was Mr. Yandell had a prior conviction for conspiracy to manufacture approximately 600 pounds of methamphetamine, based on his review of DEA documents. *See* Mot. Ex. C (email from Mr. Yandell's counsel), ECF No. 2139-3; Opp'n at 2. Agent Nehring's testimony was in response to defense counsel's cross examination and not in response to any testimony the government elicited regarding Mr. Yandell's prior criminal history. There is nothing before the court to suggest Agent Nehring lied about his own belief and understanding of Mr. Yandell's prior conviction to support the court's ordering a correction of the record.

The court finds there is no basis for correcting the record based on Mr. Yandell's motion. As noted, the defense had the opportunity to extensively cross examine Agent Nehring and to attack his credibility. His credibility and the weight to be given his testimony is for the jury to determine. *Proffit v. United States*, 316 F.2d 705, 707 (9th Cir. 1963).

/////

1 | Mr. Yandell's motion is **denied.**  The denial is without prejudice to Mr. Yandell's
2 | requesting judicial notice of his prior conviction for conspiracy to distribute ephedrine, prior to
3 | resting his defense case-in-chief.
4 | IT IS SO ORDERED.
5 | DATED: April 8, 2024.

CHIEF UNITED STATES DISTRICT JUDGE