UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:19-cr-00107-KJM |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, | |
| Defendant. | |

The court previously denied defendant Ronald Yandell's motion to compel unredacted *Jencks* documents and produce additional *Brady* material in a bench order. Min. Order (Apr. 8, 2024), ECF No. 2199. This order explains the court's reasoning.

First, Mr. Yandell seeks to compel unredacted copies of documents the government produced that originated with the California Department of Corrections and Rehabilitation (CDCR). *See* Mot., ECF No. 2104. According to Mr. Yandell, the government erroneously over-redacted *Jencks* material and should be ordered to produce unredacted versions for this court and the defense to review. *See id.* at 4–5. Under the Jencks Act, the government shall "produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Here, Mr. Yandell does not tie his argument to a particular witness or witnesses, nor does he claim he was unable to examine

1

1 any particular witness given the redactions.  *See generally* Mot.  At hearing on April 1, 2024, the
2 government's counsel represented that when the government received the documents from the
3 CDCR, they contained the redactions and the federal prosecutors did not add any further
4 redactions.  4/1/24 Tr. 188:7–18, ECF No. 2243; Mins. (Apr. 1, 2024), ECF No. 2122.
5 Mr. Yandell's counsel later conceded he had no reason to doubt this representation or that CDCR
6 had made the redactions.  *See* 4/2/24 Tr. 9:5–8, ECF No. 2244; Mins. (Apr. 2, 2024), ECF No.
7 2128.  Moreover, Mr. Yandell's counsel stated at hearing that he had received unredacted versions
8 of these documents from the CDCR in response to a subpoena.  4/2/24 Tr. 4:16–19; *see also* Mot.
9 at 9.  To the extent Mr. Yandell seeks the same unredacted documents through his motion here,
10 this portion of his motion is moot.

11      Mr. Yandell also argues the government should be "ordered to provide any *Brady*
12 materials in its CDCR agents' possession."  Mot. at 5.  Under *Brady v. Maryland*, 373 U.S. 83
13 (1963), prosecutors have an obligation to produce "evidence favorable to an accused upon request
14 . . . where the evidence is material either to guilt or to punishment."  *United States v. Cano*, 934
15 F.3d 1002, 1022 (9th Cir. 2019) (quoting *Brady*, 373 U.S. at 87).  However, "the government 'has
16 no obligation to produce information which it does not possess or of which it is unaware.'"  *Id.*
17 (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)).  "Because prosecutors are
18 in a unique position to obtain information known to other agents of the government, they have an
19 obligation to disclose what they do not know but could have learned."  *Id.* (citation, quotation
20 marks and alterations omitted).  Yet, while prosecutors "will be deemed to have knowledge of
21 and access to anything in the possession, custody or control of any federal agency participating in
22 the same investigation of the defendant," *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir.
23 1989), "federal prosecutors are never deemed to have access to material held by state agencies,"
24 *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (citing *United States v. Aichele*,
25 941 F.2d 761, 764 (9th Cir. 1991)).  Nonetheless, in circumstances "[w]here the government uses
26 a state agency as a 'lead investigating agent,' the state agency is deemed to be the government's
27 agent within the meaning of *Brady*.'"  *United States v. Etienne*, No. 17-00093, 2018 WL

6305614, at *2 (N.D. Cal. Dec. 2, 2018) (citing *United States v. Price*, 556 F.3d 900, 908–09 (9th Cir. 2009)).

Here, Mr. Yandell argues "the government has an obligation to turn over documents created by the CDCR because the CDCR is acting as the government's agent in this case." *See* Mot. at 11. To support this assertion, Mr. Yandell relies on a letter the CDCR Secretary wrote in 2018 requesting the federal Bureau of Prisons "accept a jurisdictional shift for eight currently-incarcerated California prison inmates." *See* Kernan Letter, Mot. Ex. C, ECF No. 2104-1. According to Mr. Yandell, this letter shows "the CDCR [] explicitly partnered with the USAO to force these defendants out of CDCR and into BOP custody." Mot. at 9. On its face, the letter indicates the CDCR agreed that the eight inmates – including the three defendants currently in trial -- are "extremely dangerous prisoners" and made a request to federal authorities based on that assessment. Nothing in the letter suggests a formal partnership existed, or shows the CDCR acted or agreed to act on the federal government's behalf as its lead investigative agent. *Contra Price*, 566 F.3d at 903 (finding a *Brady* violation where the federal prosecutor "failed in his 'duty to learn' the results of the investigation he directed his lead investigative agent to perform").

Because nothing in the record before the court supports the conclusion the CDCR acted as the federal government's agent, let alone its lead investigative agent, *see Etienne*, 2018 WL 6305614, at *2, the government in this case cannot be deemed to have access to CDCR documents generally; therefore it cannot be compelled to produce materials within the CDCR's exclusive possession, *see Santiago*, 46 F.3d at 894; *United States v. Corbett*, No. 19-00107, 2023 WL 1930642, at *2 (E.D. Cal. Feb. 10, 2023) (noting government does not have "constructive possession of *all* CDCR materials" (emphasis in original)); *cf. Buchanan v. Beard*, No. 10-0423, 2013 WL 2390435, at *17 (S.D. Cal. May 29, 2013) (no evidence prosecutor possessed CDCR records given that inmate records cannot be released to any agency or person outside of CDCR without court order). As the court observed in *Etienne*, the defense is not left without recourse "to exercise its own discovery rights and engage in its own investigation." 2018 WL 6305614, at *3. It can seek to obtain CDCR documents through subpoenas, as it has done successfully in this very case. *See, e.g.*, Mot. at 9.

3

Finally, Mr. Yandell's reliance on *Fort v. United States*, 472 F.3d 1106 (9th Cir. 2007), is misplaced. In *Fort*, the Ninth Circuit found reports created by San Francisco police officers were discoverable under Federal Rule of Criminal Procedure 16(a)(1)(E) but protected from disclosure under Rule 16(a)(2). 472 F.3d at 1110, 1119–20. Furthermore, the appeal in *Fort* did not relate to the government's disclosure obligations under *Brady*, *id.* at 1110, and, unlike here, it was undisputed the written police reports at issue in *Fort* were in the federal prosecutor's actual possession, custody or control. *Id.* Here, the government unequivocally states without rebuttal, it "is not aware of any such undisclosed evidence in its, or CDCR's, possession, custody, or control." Opp'n at 8, ECF No. 2137.

For the reasons set forth above, Mr. Yandell's motion is **denied**, and the motion to continue, ECF No. 2132, which relied on the motion to compel, is **denied as moot**.

IT IS SO ORDERED.

DATED: April 17, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE