UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiffs, | ORDER |
| v. | |
| Ronald Yandell and William Sylvester, | |
| Defendants. | |

For the reasons in this order, the motions for judgment of acquittal and for a new trial by defendants Ronald Yandell and William Sylvester are **denied**.

**I.   BACKGROUND**

The government alleged the many defendants in this case are or were among the members and associates of the California Aryan Brotherhood prison gang. This court held a trial on the charges against Yandell, Sylvester and their codefendant, Daniel Troxell, earlier this year. *See* Mins., ECF Nos. 1912, 2314. The jury found those defendants guilty of each of the charges in the superseding indictment:

- All three were found guilty of conspiracy to conduct a racketeering enterprise in violation of 18 U.S.C. § 1962(d). The jury found each of them agreed and understood the conspiracy would include murder and conspiracy to murder.

/////

1

- Yandell also was found guilty of five counts of conspiracy to commit murder in aid of racketeering and one count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a).
- Sylvester also was found guilty of one count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a).
- Yandell and Sylvester also were found guilty of multiple counts related to the distribution of heroin and methamphetamine in violation of 21 U.S.C. §§ 841 and 846.

Sylvester and Yandell each moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 after the government presented its case in chief, and each renewed that motion following the verdict.[1] *See generally* Sylvester Mot., ECF No. 2373; Yandell Mot., ECF No. 2377. Yandell also seeks a new trial under Rule 33. *See* Yandell Mot. at 4–5. Sylvester did not join that request or independently request a new trial. *See* Sylvester Mot. at 1 (citing and discussing Rule 29 only); Joinder, ECF No. 2424 (referring specifically and solely to motion for judgment of acquittal). Briefing is complete. *See generally* Opp'n, ECF No. 2392; Yandell Reply, ECF No. 2413. The court held a hearing on August 21, 2024. Jason Hitt, Ross Pearson and David Spencer appeared for the government. Steven Kalar and Sean McClelland appeared for Yandell. Ashley Vasquez appeared for Sylvester.

**II.    RULE 29**

A criminal defendant may obtain a judgment of acquittal under Rule 29 by showing "the evidence is insufficient to sustain a verdict." Fed. R. Crim. P. 29(a). "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). The court views the evidence offered at trial "in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). The court "may not usurp the role of the finder of fact by considering how it would have resolved the

---

[1] Troxell also has moved to dismiss under Rule 29, but his motion is proceeding on a different schedule. *See generally* Troxell Mot., ECF No. 2378; Min. Orders, ECF Nos. 2426, 2436, 2438.

2

conflicts, made the inferences, or considered the evidence at trial." *Id.* "Rather, when 'faced with a record of historical facts that supports conflicting inferences' a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). The court must then "determine whether [the] evidence, so viewed, is adequate to allow 'any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319) (other alterations and emphasis omitted). "This second step protects against rare occasions in which 'a properly instructed jury may convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 317) (alterations omitted). But "a reviewing court may not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' only whether '*any*' rational trier of fact could have made that finding." *Id.* (quoting *Jackson*, 443 U.S. at 319) (emphases in original).

### A.     Sylvester

The court begins with Sylvester's motion. He challenges his conviction for distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) on August 11, 2016. *See* Sylvester Mot. at 2; Superseding Indictment ¶ 51. He contends the government did not prove the substance seized from him that day contained methamphetamine. *See* Sylvester Mot. at 2. Yandell joins that motion. *See* Yandell Mot. at 13. The court finds he has standing to do so based on his charge and conviction for participating in the same distribution conduct. *See* Superseding Indictment ¶ 51; Verdict at 4, ECF No. 2317.

The evidence permitted the jury to conclude the substance contained methamphetamine beyond a reasonable doubt. First, Samuel Keeton, a co-conspirator, explained at trial how he followed Sylvester's instructions to meet a drug source (Jeanna Quesenberry), a lawyer (Kevin MacNamara) and a paralegal (Kristin Demar) at a hotel. *See* Trial Tr. Day 18 (Mar. 25, 2024) at 135–36, 138–41. Keeton then hid what he believed was methamphetamine in MacNamara's wheelchair and drove MacNamara and Demar to the state prison in Sacramento for an attorney visit with Sylvester. *See id.* at 141, 150–53. Demar also testified at trial. She explained how she

3

1    passed methamphetamine and other contraband to Sylvester during the visit, *see* Trial Tr. Day 12
2    (Mar. 11, 2024) at 78–83, and she referred during her testimony to a video of that visit, which
3    prison investigators captured secretly on a surveillance camera, *see id.* at 78–84 (discussing Gov't
4    Exs. 241, 242, 244, 245, 246).

5    After the visit, the DEA secretly recorded a phone call between Yandell, Keeton and
6    Travis Burhop, another defendant in this action, based on the court's authorization of a wiretap.
7    On the call, the three spoke about how much methamphetamine Demar had passed to Sylvester
8    during the visit. *See* Trial Tr. Day 18 (Mar. 25, 2024) at 147–48, 156–57 (discussing Gov't Ex.
9    225). A prison investigator also testified at trial. He explained how officers at the prison got a tip
10   that someone would be attempting to smuggle methamphetamine during a visit with Sylvester,
11   and he explained how officers secretly recorded the video of that visit. *See* Trial Tr. Day 11
12   (Mar. 7, 2024) at 130–32. The investigator further testified that after the visit, Sylvester admitted
13   he had concealed contraband within his body, which the officers obtained. *Id.* at 132–35. The
14   contraband looked like methamphetamine to the officer, so he performed a field test, and the test
15   was positive for methamphetamine. *See id.* at 134–36. He showed a picture of the positive test to
16   the jury. *See id.* at 136–37, 140 (discussing Gov't Ex. 254).

17   Sylvester argues the field test was not enough to prove conclusively that the substance
18   was methamphetamine, *see* Sylvester Mot. at 2–3, and he contends a California trial court has
19   found similar field tests are not reliable, *see id.* at 4–5 (citing Statement of Decision & Order,
20   *People v. Chacon*, No. JCF36904 (Cal. Super. Ct. Imperial Cnty. Apr. 24, 2018)). Sylvester's
21   counsel also emphasized at hearing that expert witnesses who testified during the government's
22   case in chief confirmed they would not rely on a field test of the same type. It could be that a
23   field test would not suffice in and of itself, but it is not necessary to decide whether that is so
24   here. The government offered much more than just the field test, as summarized in the previous
25   paragraph. The jury heard and weighed that evidence, including the opinions of the expert
26   witnesses who testified during the government's case in chief. As noted above, this court may
27   not second-guess the jury's findings. *See Jackson*, 443 U.S. at 326.
28   /////

Sylvester's counsel also noted at the hearing on Sylvester's motion that Keeton and Demar, who testified at trial, did not claim to have packaged any drugs, but rather that they understood only from the context and the actions of others that the contraband included drugs. The jury heard that testimony as well. At this stage, the court must view the evidence "in the light most favorable to the prosecution" and "must presume . . . that the trier of fact resolved . . . conflicts in favor of the prosecution." *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 326).

The court denies Sylvester's motion.

**B.     Yandell**

Yandell challenges his convictions for conspiracy to commit murder in aid of racketeering on counts 2 through 6. In those counts, the superseding indictment alleged Yandell conspired with others to commit murder in violation of 18 U.S.C. § 1959, sometimes cited as the VICAR statute, and sections 182, 187 and 189 of the California Penal Code. *See, e.g.*, Superseding Indictment ¶¶ 30, 41. Section 182 of the state Penal Code punishes conspiracies to commit other crimes, section 187 defines murder, and section 189 separates murders in the first and second degrees. As for § 1959, the government must prove four things to obtain a conviction: (1) there was a "criminal organization," (2) that organization was a "racketeering enterprise," (3) the defendant committed the "violent crime" charged in the indictment, and (4) the defendant's purpose in committing that crime was to gain entrance to the enterprise or to maintain or increase his position within it. *United States v. Banks*, 514 F.3d 959, 964 (9th Cir. 2008) (quoting *United States v. Bracy*, 67 F.3d 1421, 1429 (1995)). The Ninth Circuit's model jury instructions on § 1959(a) implement these elements by instructing jurors to decide whether the defendant conspired to commit murder and did so to gain entrance to or to maintain or increase his position within a racketeering enterprise. *See* Ninth Circuit Model Criminal Jury Instruction 18.8 (2022 ed. updated June 2024). This court's final jury instructions in this case followed the model instruction. *See* Final Jury Instr. No. 40, ECF No. 2298. The court also gave the jury specific instructions about the elements of a conspiracy to commit murder, which were derived from California law and the parties' respective proposals. *See id.* No. 36.

Yandell does not take issue with the requirements in the first two elements listed above. If the trial record is viewed in the light most favorable to the prosecution, then a rational jury could conclude beyond a reasonable doubt that the Aryan Brotherhood was a "criminal organization" and "racketing enterprise." Nor does Yandell address the fourth element, i.e., that he was acting to increase or maintain his position within the Aryan Brotherhood. A rational fact-finder could conclude on the trial record that Yandell was doing so. He focuses on the third element: proof of a conspiracy to commit murder in violation of California Penal Code sections 182, 187 and 189. He contends the government failed to prove he committed an "overt act" identified in the superseding indictment, as required by California law. *See* Yandell Mot. at 6–8. As the parties confirmed at hearing, the superseding indictment does not identify any specific overt acts.

The government disagrees it was required to plead or prove any particular overt act. *See* Opp'n at 15–17. At the root of this disagreement is its position that federal law, not state law, defines what the government must plead and prove when it charges a defendant with an attempt or a conspiracy under § 1959(a). *See id.* at 15. To be clear, the government agrees the object of a charged conspiracy can be a creature of state law, such as murder in violation of California law, but it argues federal law controls when it comes to deciding what is a conspiracy and what is not. *See id.* And federal law, the government contends, demands no proof of a particular overt act, or any overt act at all. *See id.* at 16. In any event, the government argues this dispute is beside the point, as the court in fact instructed the jury it could reach a guilty verdict only if it found an overt act. *See* Opp'n at 17–18. Finally, the government contends the evidence permitted the jury to find members of the several murder conspiracies undertook several overt acts. *See, e.g., id.* at 18–20.

The parties' competing positions are best understood when analyzed in four interrelated parts.

        **1.**    **Pleading Standards**

The first part of the dispute relates to what the government must plead in an indictment. As noted, Yandell contends the government must include specific allegations about specific overt acts in an indictment. He cites no case in which a federal court has required the government to

6

follow state-law pleading rules. His arguments rely instead on California courts' interpretations of California law. *See, e.g.*, Yandell Mot. at 7 n.1 (citing *People v. Fenenbock*, 46 Cal. App. 4th 1688 (1996) and *Feagles v. Superior Court*, 11 Cal. App. 3d 735 (1970)). Yandell does not cite any cases in which a federal court has required the government to identify specific overt acts in its indictment if it charges the defendant with a violation of § 1959 and alleges there was a conspiracy to commit a state-law crime.

Yandell does cite a First Circuit decision at several points, *United States v. Muñoz-Martinez*, 79 F.4th 44 (1st Cir. 2023), but that decision did not hold the government must comply with state pleading standards and did not address pleading standards, VICAR charges or overt acts at all. Rather, it was focused on evidentiary issues, the racketeering statute and predicate acts, such as 18 U.S.C. § 1962(c). *See* 79 F.4th at 50. In *Muñoz-Martinez*, there were two predicate acts of racketeering in dispute: an extortion and an extortion conspiracy in violation of Puerto Rico law. *See id.* at 51. Unlike Yandell, the defendant in that case did not contend the government was required to identify any overt acts in the indictment. Nor did he contest the jury instructions or verdict form on appeal. In fact, all agreed, the government included, the conviction would stand only if the evidence showed the defendant had "compel[led] another person to deliver property" under Puerto Rico law. *See id.* at 51–52. The court resolved no disputes about conspiracies or attempts. Applying the logic of the First Circuit's opinion to this case, it is clear the government was required to prove the murders that were the object of the conspiracies charged in this case would have violated California's criminal prohibition against murder—not that the government was required to follow California pleading rules.

Yandell's arguments about what the government must allege in an indictment do not support the court's granting his motion.

**2.      Federal or State Law**

The second aspect of the parties' dispute is a disagreement over whether the government was required to prove Yandell violated California conspiracy law or federal conspiracy law. Yandell argues the conspiracy was charged under state law and so must be proven under state

/////

7

1  law; as summarized above, the government contends the conspiracy's existence is a question of
2  federal law.
3        The Ninth Circuit has "permitted jury instructions using general federal definitions," and
4  it has held that district courts are not required to instruct the jury under state law when the
5  government alleges the defendant committed a violent crime in aid of racketeering.  *United States*
6  *v. Adkins*, 883 F.3d 1207, 1210–11 (9th Cir. 2018) (citing *United States v. Joseph*, 465 F. App'x
7  690, 696 (9th Cir. 2012) (unpublished)).  The circuit could not have reached that conclusion if, as
8  Yandell contends, the government must always prove the elements of a California-law conspiracy
9  crime every time it alleges a defendant conspired to commit a violent crime in aid of racketeering.
10       That said, the Ninth Circuit also has followed the Second Circuit's persuasive reasoning in
11 *United States v. Carrillo* and *United States v. Pimentel* that, "in certain circumstances," district
12 courts "should instruct on the state definition or otherwise risk prejudice to the defendant,"
13 despite the theoretical propriety of a purely federal instruction.  *Adkins*, 883 F.3d at 1210–11
14 (citing *United States v. Carrillo*, 229 F.3d 177, 185 (2d Cir. 2000) and *United States v. Pimentel*,
15 346 F.3d 285, 303–04 (2d Cir. 2003)).  *Adkins* is a representative example of the potential
16 prejudice.  The defendant requested a jury instruction based on the Hawaii Penal Code, which
17 referenced self-defense in its definition of the word "knowingly."  *See id.* at 1209.  The district
18 court used the federal definition, which did not refer to self-defense.  *See id.* at 1209–10.  The
19 Court of Appeals held the district court had deprived the defendant of an instruction about self-
20 defense in error, but the error was harmless, as self-defense was not at issue: the defendant and
21 five other men had attacked their victim without provocation while he was watching television.
22 *See id.* at 1211.  Other federal courts of appeals have held similarly, relying in part on *Adkins*,
23 *Carrillo* and similar decisions, and have, in various cases, required the government either to prove
24 both (a) the elements of the state-law crimes it alleges in support of a racketeering or VICAR
25 charge, or (b) to give jury instructions based on state-law defenses, as in *Adkins*.  *See, e.g.*,
26 *Muñoz-Martinez*, 79 F.4th at 51–56 (citing *Carrillo*, 229 F.3d at 184–85, and applying Puerto
27 Rico law on the elements of extortion); *United States v. Savage*, 970 F.3d 217, 274 (3d Cir. 2020)
28 (citing *Carrillo*, 229 F.3d at 184–85 and *Adkins*, 883 F.3d at 1211, but finding Pennsylvania law

and "generic" federal law of transferred intent "essentially the same"); *cf. Carrillo*, 229 F.3d at 185–86 (expressing doubts about viability of circuit precedent holding government was not required to prove overt acts but declining to revisit that precedent).

The possibility of prejudice akin to that in *Adkins*, *Carrillo* and similar cases informed this court's instruction to the jury that the government could "prove a conspiracy to commit murder" only if it proved, among other things, that "one of the persons [in the conspiracy] committed at least one overt act to accomplish the killing." Final Jury Instr. No. 36; *see also* Trial Tr. Day 26 (Apr. 8, 2024) at 37–42 (considering arguments on *Carrillo* and similar authorities); Trial Tr. Day 31 (Apr. 18, 2024) at 29–33 (hearing related arguments on jury instructions for overt acts). The court's instructions defined an "overt act" as "an act by one or more of the members of the conspiracy that is done to help accomplish the agreed upon crime" and that happened "after the defendant has agreed to commit the crime." Final Jury Instr. No. 36. The court's jury instructions also clarified an overt act "must be more than the act of agreeing or planning to commit the crime, but it does not have to be a criminal act itself." *Id.* And "[t]o decide whether the defendant committed this overt act," the court instructed the jury to "consider all of the evidence presented about the overt act." *Id.* Because the court gave these instructions, it is not necessary to consider further whether federal common law, federal statutory law, state law or some combination applies to the government's conspiracy allegations.[2]

---

[2] If the court did reach this question, it could be difficult to answer. If it is true, as the Circuit appears to have held in *Joseph* and confirmed in *Adkins*, that § 1959(a) does not define "assault" by reference to the state law, and that the government can prove an "assault" under federal common law, then it is unclear why district courts must sometimes give jury instructions about the state law of assault. *See Carrillo*, 229 F.3d at 183–86 (recognizing similar inconsistency within Second Circuit's precedents but declining to resolve it because "the need to prove an overt act as an element of conspiracy to murder had no practical effect"); *Pimentel*, 346 F.3d at 303–05 (reasoning similarly).

It is also unclear what the federal law requires when it comes to conspiracies and overt acts. The VICAR statute does not expressly require proof of an overt act, as does, for example, the federal statute on conspiracy to commit murder. *Compare* 18 U.S.C. § 1959(a) *with id.* § 1117. Does this mean the government can prove a conspiracy in violation of § 1959 without proof of an overt act? *Cf. United States v. Shabani*, 513 U.S. 10, 13 (1994) (noting absence of overt act requirement in 21 U.S.C. § 846, conspiracy to violate Controlled Substances Act). Or does the overt-act requirement in § 1117 mean the "generic" or "general" federal law of conspiracy to murder requires proof of an overt act, and thus also § 1959? *See Carrillo*, 229 F.3d

9

Yandell's arguments in this respect also do not support granting his motion.

### 3. Jury Instructions and Verdict Form

Yandell and the government also disagree whether the jury instructions and verdict form were appropriate. There is no dispute, however, that the court instructed the jury about overt acts, as noted above. Final Jury Instr. No. 36. Yandell's point is not that the jury was under the mistaken impression that it could vote to convict despite the government's failure to prove an overt act, but rather that the government did not prove any specific overt act or acts that it had previously identified in the superseding indictment. Yandell does not cite authority showing a particular verdict form or special findings were mandatory.

Yandell relies primarily on the theory that the government must prove the "elements" of the state-law crimes in question. Yandell Mot. at 6; Yandell Reply at 5–6. A specific overt act is not an "element" of a conspiracy charge under California law. *See People v. Russo*, 25 Cal. 4th 1124, 1134 (2001). To be sure, "the requirement of an overt act is an element of the crime of conspiracy in the sense that the prosecution must prove it to a unanimous jury's satisfaction beyond a reasonable doubt." *Id.* "But that element consists of *an* overt act, not a *specific* overt act." *Id.* (emphases in original). "Disagreement as to who the coconspirators were or who did an overt act, or exactly what that act was, does not invalidate a conspiracy conviction, as long as a unanimous jury is convinced beyond a reasonable doubt that a conspirator did commit some overt act in furtherance of the conspiracy." *Id.* at 1135. As the government points out in opposition, the Ninth Circuit has held similarly that "so long as jurors in a federal criminal trial unanimously agree that the Government has proven each element of a conspiracy, they need not unanimously agree on the particular overt act that was committed in furtherance of the agreed-upon conspiracy." Opp'n at 16 (quoting *United States v. Gonzalez*, 786 F.3d 714, 718–79 (2015)). California courts have reasoned similarly. *See Russo*, 25 Cal. 4th at 1131–36 ("[T]he jury need not agree on a specific overt act as long as it unanimously finds beyond a reasonable doubt that

---

at 185–86 & n.4 (observing both state and federal law on conspiracy to murder require proof of an overt act and citing § 1117).

 Fundamentally, though, any inconsistency within the Ninth Circuit's precedent is for that court to consider and resolve, not this one.

some conspirator committed an overt act in furtherance of the conspiracy."); *People v. Lopez*, 20 Cal. App. 4th 897, 904 (1993) ("Since the jury need not be instructed they must unanimously agree on which overt act(s) the defendant committed, it follows a jury is not required to return a special verdict expressly finding the defendant committed any particular overt act."). If jurors can disagree which overt acts the government proved beyond a reasonable doubt, then a conspiracy conviction cannot be called into question simply because the jury instructions or verdict form did not identify particular overt acts.

In reply, Yandell argues *Gonzalez* is "irrelevant." Yandell Reply at 5. That is because, as he explains his position, he "is not claiming that the jury failed to unanimously agree on how he committed a crime via one overt act or another," but rather "that the government failed to prove a necessary element of the offense: the government did not prove *any* pled-and-proven overt acts." *Id.* (emphasis in original). First, as noted, the California Supreme Court has held that a specific overt act is not an "element" of a conspiracy charge. *Russo*, 25 Cal. 4th at 1134. Second, this criticism mirrors Yandell's attack on the indictment, i.e., the first aspect of the dispute, discussed above: whether the government must plead specific overt acts under state law. As explained above, Yandell has not shown the government must comply with California's pleading rules, so he cannot rely on those pleading rules to make successful arguments about what the jury instructions or verdict form must include.

Yandell's argument that the jury instructions and verdict form in this case were faulty does not support granting his motion.

### 4. Sufficiency of Evidence and Requirements of California Law

Taking stock, then, the court has found (1) the government was not required to comply with California pleading rules, (2) it complied with *Adkins*, *Carrillo* and other similar cases by instructing the jury to convict only if it found beyond a reasonable doubt that at least one member of each charged conspiracy committed an overt act under California law, and (3) it did not err in declining to list overt acts in the jury instructions and verdict form. The remaining aspect of the parties' dispute relates to California law, i.e., what that law actually required the government to prove.

11

"[A]t common law the offense of conspiracy was complete when the unlawful agreement was made; no overt act in furtherance of such conspiracy needed to be alleged or proved." *People v. Von Villas*, 11 Cal. App. 4th 175, 243 (1992). In California, however, "a conviction for conspiracy requires proof that at least one of the conspirators committed an overt act in furtherance of the conspiracy." *Russo*, 25 Cal. 4th at 1128; *see also* Cal. Pen. Code § 184. "One purpose of the overt act requirement is to provide *a locus penitentiae*—an opportunity to repent—so that any of the conspirators may reconsider and abandon the agreement before taking steps to further it, and thereby avoid punishment for the conspiracy." *Russo*, 25 Cal. 4th at 1131. Another purpose is to ensure people are not punished merely for their thoughts, as "evil thoughts alone cannot constitute a criminal offense." *Id.* (quoting *People v. Olson*, 232 Cal. App. 2d 480, 489 (1965)).

California courts "have struggled through the years to formulate a definition for the term 'overt act,' and it has been said that no single definition can be adequate for all conspiracy cases." *People v. Zamora*, 18 Cal. 3d 538, 549 n.8 (1976). But in 1976, the California Supreme Court used a definition the Ninth Circuit had offered several years earlier, and that definition seems to have sufficed in most cases since: an overt act is "an outward act done in pursuance of the crime and in manifestation of an intent or design, looking toward the accomplishment of the crime." *Id.* (quoting *Chavez v. United States*, 275 F.2d 813, 817 (9th Cir. 1960)). California courts use the same definition today. *See, e.g.*, *People v. Johnson*, 57 Cal. 4th 250, 259 (2013); *People v. Cortez*, 24 Cal. App. 5th 807, 817–18 (2018). An act is "outward" under that definition when it is "tangible" and "manifest[s] a criminal intention." *Von Villas*, 11 Cal. App. 4th at 245. But the act need not "constitute the crime" that is the object of the conspiracy, nor an attempt to commit that crime. *Id.* at 244 (quoting *People v. Profit*, 183 Cal. App. 3d 849, 882 (1986)). Nor must the overt act itself be a crime, nor unlawful; it can be an act that in isolation would appear to be completely innocent. *See Fenenbock*, 46 Cal. App. 4th at 1708. Nor must the defendant be the one who committed that act, because "it is the agreement, not the overt act, which is punishable." *Johnson*, 57 Cal. 4th at 259 (quoting *People v. George*, 257 Cal. App. 2d 805, 808 (1968)).

/////

California courts have held that "discussions and arrangements among conspirators" can be overt acts. *Von Villas*, 11 Cal. App. 4th at 244–45. In *Von Villas*, the California Court of Appeal expressly rejected the argument that these kinds of discussions and arrangements are really just "part of the inception of the criminal agreement." *Id.* at 244. The "evil or corrupt agreement" at the "crux" of a criminal conspiracy "is not a tangible occurrence." *Id.* "[T]he specific time when a common illegal design comes into existence cannot, in most instances, be identified." *Id.* Rather, an agreement "is a continuous act," and a conspiracy is "a continuing crime." *Id.* So when conspirators make arrangements, discuss the criminal act, and prepare for it, "they have ventured beyond a mere criminal intention," and those arrangements, discussions, and plans are overt acts. *Id.* at 245. In short, "words can be an act in furtherance" of a conspiracy. *Kim v. Superior Ct.*, 136 Cal. App. 4th 937, 945 (2006). In *Von Villas*, the trial court permitted the prosecution to introduce evidence about the conspirators' efforts to solicit additional co-conspirators, requests for information about the victim and the plan, payments to secure a co-conspirator's participation, and phone calls about how the conspiracy would be carried out. 11 Cal. App. 4th at 245. The Court of Appeal agreed this evidence could prove the defendants committed overt acts. *See id.*

To be sure, there is some tension between the Court of Appeal's holding in *Von Villas* and the general rule that an overt act cannot be the agreement itself; as the Court of Appeal wrote in *Profit*, the overt act must go "beyond mere planning or agreement." 183 Cal. App. 3d at 882. What is "mere planning," on the one hand, and what is a "discussion" or an "arrangement" on the other? The state's supreme court has not taken up the question, and no California court has disagreed with the holding in *Von Villas*. To the contrary, the state's appellate courts have

/////

/////

/////

/////

/////

/////

13

continued to rely on *Von Villas* and its reasoning for many years.[3] Other federal courts have interpreted the state's law similarly.[4]

What remains, then, is to decide whether the evidence presented at trial, viewed in the light most favorable to the prosecution, satisfied the requirements identified above: could a rational jury find beyond a reasonable doubt that Yandell was part of each alleged conspiracy to murder in aid of racketeering and that at least one conspirator undertook at least one overt act in each conspiracy? The evidence presented at trial satisfied this requirement. It permitted the jury to find as follows:

- Count 2, Conspiracy to Murder Kenneth Johnson: Yandell and Sylvester secured Troxell's permission to move forward with the conspiracy to murder Kenneth Johnson and ensured others would not attempt to thwart the murder by spreading rumors about Johnson. *See* Gov't Exs. 44, 44A, 117, 117A, 117.2, 117.2A; Trial Tr. Day 13 (Mar. 12, 2024) at 110.
- Count 3, Conspiracy to Murder James Mickey: Yandell and Troxell believed the intended victim, James Mickey, another member of the Aryan Brotherhood, had not abided by the gang's rules, such as by failing to pay money to the gang's leadership and by not exacting revenge against one of the gang's enemies when he had a chance, which was their justification for directing his murder. *See* Gov't Exs. 119, 119A. Yandell and Troxell spoke about their plan as it was underway. *See* Gov't Exs. 120, 12A. They solicited Burhop's participation, *see, e.g.*, Trial Tr. Day 13 (Mar. 12, 2024) at 131, and spoke with him about who would commit the

---

[3] *See People v. Guyton*, No. B267187, 2017 WL 1908211, at *5–6 (Cal. Ct. App. May 10, 2017) (unpublished); *People v. Green*, No. B256776, 2016 WL 6746625, at *20 (Cal. Ct. App. Nov. 15, 2016) (unpublished); *People v. Casey*, No. G037067, 2007 WL 2770855, at *4 (Cal. Ct. App. Sept. 24, 2007) (unpublished); *People v. Salomon*, No. F044183, 2005 WL 2650939, at *9–10 (Cal. Ct. App. Oct. 18, 2005) (unpublished); *People v. Sagastume*, No. G031102, 2004 WL 1468752, at *8 (Cal. Ct. App. June 30, 2004) (unpublished).

[4] *See, e.g.*, *United States v. Gonzalez*, 612 F. App'x 433, 435–36 (9th Cir. 2015) (unpublished); *Green v. Montgomery*, No. 18-06443, 2020 WL 11929878, at *38 (C.D. Cal. Oct. 16, 2020), *report and recommendation adopted*, 2021 WL 4863166 (C.D. Cal. Oct. 14, 2021), *aff'd*, No. 21-56166, 2023 WL 3737116 (9th Cir. May 31, 2023) (unpublished), *cert. denied*, 144 S. Ct. 434 (2023) (Mem.).

murder and when, *see* Gov't Exs. 118, 118A, 120, 120A; Trial Tr. Day 13 (Mar. 12, 2024) at 135–36. Yandell and Burhop also spoke about how members of the Aryan Brotherhood could later obstruct investigations into the murder by "clear[ing] their phones out." *See* Trial Tr. Day 13 (Mar. 12, 2024) at 135.

- Count 4, Conspiracy to Murder Paul Diaz: Yandell spoke with Jake Corbett, a codefendant, about who could commit this murder. Gov't Exs. 124, 124A. Yandell also obtained Troxell's permission to make Corbett a full member of the Aryan Brotherhood if Corbett successfully killed Diaz, then made that offer to Corbett. Gov't Exs. 125.

- Count 5, Conspiracy to Murder Michel Trippe: Yandell solicited Elliot Grizzle, Donald Mazza, Matt Hall, and Keeton to participate in the conspiracy to murder Michael Trippe and spoke with them about how to find Trippe and why he had been targeted. *See* Gov't Exs. 127, 127A, 128, 128A, 130, 130A; Trial Tr. Day 10 (Mar. 6, 2024) at 55–57, 111, 126–27, 152–65, 168, 173–74; Trial Tr. Day 11 (Mar. 7, 2024) at 10–15, 23–43.

- Count 6, Conspiracy to Murder Doug Maynard: Yandell spread rumors about Maynard to ensure other members and associates of the Aryan Brotherhood would not stand in the way of his murder, and he gave specific instructions and justifications for the murder to Pat Brady, another member of the Aryan Brotherhood with better access to Maynard. *See* Gov't Exs. 100, 100A, 143.1, 143.1A.

Yandell contends otherwise, relying primarily on the Court of Appeals' decision in *Profit*, discussed above. *See* 183 Cal. App. 3d 849. He emphasizes that court's observation that overt acts must go "beyond mere planning or agreement." *See, e.g.*, Yandell Reply at 7–8 (quoting 183 Cal. App. 3d at 882). As explained above, California courts have held for many years that discussions and arrangements can be overt acts, most prominently in *Von Villas*, 11 Cal. App. 4th at 243, which was decided after *Profit*. And in *Von Villas*, the Court of Appeal relied on *Profit*

/////

without noting any potential conflict between the holdings in each case. *See id.* at 244 (citing 183 Cal. App. 3d at 882).

A closer look at the reasoning in *Profit* also confirms it does not support Yandell's position. In that case, the issue was not the sufficiency of the evidence or a conviction, but rather probable cause and the Fourth Amendment: had officers unconstitutionally detained the defendants? *See* 183 Cal. App. 3d at 860–61. The answer was no. The detention was "reasonable" under the Fourth Amendment because "a person of ordinary care and prudence" would have strongly suspected the defendants were part of a drug trafficking conspiracy. *See id.* at 880–84. The court's observation about "mere planning or agreement" is followed by no citations or supportive reasoning, and the court's decision did not turn on the distinction between "mere planning or agreement" and true "overt acts." *See id.* In short, *Profit* sheds much less light on the relevant state law than *Von Villas* and the other decisions cited above.

Similar problems complicate Yandell's arguments based on the Court of Appeal's decision in *People v. Powers-Monachello*, 189 Cal. App. 4th 400 (2010). That case involved another alleged drug trafficking conspiracy. *See id.* at 403. The court was applying the "corpus delicti" rule, i.e., that the prosecution cannot satisfy its burden to prove the "body of the crime" by citing only "the extrajudicial statements, confessions, or admissions of the defendants." *Id.* at 406 (quoting *People v. Miranda*, 161 Cal. App. 4th 98, 107 (2008)). Officers had not observed any sales. *See id.* at 418. All they had—aside from "extrajudicial" statements—was that they had seen the defendants in the same place where two boxes with unknown contents changed hands. *See id.* There was no evidence of a criminal agreement, let alone an overt act. *See id.* at 411–12. So again, as in *Profit*—and unlike *Von Villas*—the case did not turn on the distinction between "mere agreement" and "overt act."

Yandell does cite two decisions that help to explain the difference between an agreement itself and an overt act, but they each support the government's position, not his. First, in *United States v. Gonzalez*, the same case discussed above, the circuit issued an unpublished memorandum disposition concurrently with its published opinion. *See* 612 F. App'x 433. One of the issues the panel addressed in its unpublished memorandum was whether several recorded

16

statements by the conspirators were evidence of an "overt act" necessary to prove a conspiracy under California law. *See id.* at 435–36. In the calls, the conspirators had spoken about their intended victims, how to find them, who would kill them and when. *See id.* The Circuit concluded these statements were "internal discussions and arrangements" under *Von Villas* and affirmed the defendants' VICAR convictions. *See id.* at 437 (citing 11 Cal. App. 4th at 244). The statements on these calls cannot meaningfully be distinguished from the many similar statements the defendants made in this case about who would commit the murders, where, why and when.

Second, in *People v. Sconce*, the Court of Appeal reversed the trial court's decision to set aside a criminal information based on the defendant's alleged withdrawal from the alleged murder conspiracy. *See generally* 228 Cal. App. 3d 693 (1991). The defendant's potential withdrawal could not have insulated him from conspiracy liability because the criminal conspiracy had already been formed. *See id.* at 696, 702–03. The court rejected the defendant's arguments that "overt acts must constitute decisive steps toward the commission of the crime" and that he had merely discussed and investigated the potential murder rather than undertaking any overt acts. *Id.* at 703 (quotation marks omitted). There had been overt acts: at a meeting in a restaurant, the defendant had identified the intended victim for the man who would commit the murder. *See id.* at 697. The defendant had, in short, explained who and where the victim was and had suggested how the murder could be accomplished, as the conspirators discussed over the phone in this case.

For these reasons, the court finds a rational trier of fact could have found beyond a reasonable doubt that at least one conspirator committed at least one overt act in furtherance of each murder conspiracy in counts 2 through 6.

Finally, beyond overt acts, Yandell also argues two of the charged conspiracies never actually became conspiracies in the first place. He argues Donald Mazza and Travis Burhop both testified they did not want to murder Michael Trippe and James Mickey, respectively. *See* Yandell Mot. at 12–13. He takes their testimony to mean the government could not have proven Mazza and Burhop had the requisite intent to murder, and thus that no murder conspiracy was ever proven. *See id.*; *see also* Yandell Reply at 8–9.

/////

This argument also falls short of demonstrating Yandell is entitled to a judgment of acquittal. The court instructed the jury it could convict only if the members of the alleged conspiracies "had an agreement and intent to commit murder." Final Jury Instr. No. 36. The government offered evidence that could show Mazza and Burhop were reluctant to complete the alleged murders, strongly preferred not to, and intended to avoid murder if possible, but understood nonetheless they would have to go through with the murder if all else failed. *See* Opp'n at 23 (citing trial transcript). The government also advocated this interpretation of the evidence pointedly in its closing argument. *See* Trial Tr. Day 32 (Apr. 22, 2024) at 81; Trial Tr. Day 33 (Apr. 23, 2024) at 113. Courts have long recognized that this type of pressure—to continue, to go along, not to question—is one reason why conspiracies are dangerous, including in cases Yandell cites. *See Sconce*, 228 Cal. App. 3d at 700 ("[T]he moral support of the group is seen as strengthening the perseverance of each member of the conspiracy, thereby acting to discourage any reevaluation of the decision to commit the offense which a single offender might undertake." (quoting *Zamora*, 18 Cal. 3d at 555–56)). For this and other reasons, a conspiracy is "a distinct evil." *Salinas v. United States*, 522 U.S. 52, 65 (1997). A rational fact finder could agree with the government on this record that Mazza and Burhop had the necessary intent. As noted above, the court must at this stage "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved such conflicts in favor of the prosecution." *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 326).

For these reasons, the court denies Yandell's Rule 29 motion for judgment of acquittal.

**III. RULE 33**

Yandell, but not Sylvester, also moves for a new trial under Federal Rule of Criminal Procedure 33. The court may grant such a motion "if the interest of justice so requires." *See* Fed. R. Crim. P. 33(a). As a comparison of this language with the narrower terms of Rule 29 shows, "[a] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id.*

(quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).  But a new trial is appropriate only in exceptional cases, when "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred."  *Id.* (quoting *Lincoln*, 630 F.2d at 1319).

The court perceives no such "miscarriage of justice" in this case.  The evidence did not weigh against the verdict; it supported the verdict, and amply.  Among other things, the government presented extensive credible testimony by Yandell's co-conspirators and his own secretly recorded words to establish each element of the charges against him.

## IV.   CONCLUSION

Beyond the arguments addressed above, Yandell and Sylvester preserve others they made throughout the trial.  *See, e.g.*, Yandell Mot. at 13.  They do not offer any reasons for this court to revisit its previous decisions, and the court declines to do so on its own initiative.  The court **denies** the motions for judgment of acquittal and new trial.

This order resolves ECF Nos. 2373 and 2377.

IT IS SO ORDERED.

DATED:  November 12, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE